UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――――――――――

NICHOLAS DAYTER,

                              Plaintiff,

v.                                                      6:19-cv-0477
                                                        (TJM/TWD)
DAVID CAPUTO, et al.,

                              Defendants.

―――――――――――――――――――――――――――――――――

APPEARANCES:

NICHOLAS DAYTER
Plaintiff, *pro se*
18-A-3400
Collins Correctional Facility
P.O. Box 340
Collins, NY 13440

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

    The Clerk has sent to the Court for review a complaint filed by *pro se* Plaintiff Nicholas

Dayter asserting claims under 42 U.S.C. § 1983 arising out of his December 4, 2017, arrest and

subsequent prosecution.  (Dkt. No. 1.)  Plaintiff, who is presently confined at Collins

Correctional Facility, has not paid the required filing fee and seeks leave to proceed *in forma*

*pauperis* ("IFP Application").  (Dkt. Nos. 2, 4.)  Named as Defendants are David Caputo, Police

Officer; Craig Sleurs, Police Officer; J.E. Cross, Detective; the Bethlehem Police Department;

and Judge Ryan Donovan, Criminal Court Judge, Bethlehem City Court.  (Dkt. No. 1.)

## I.    IFP APPLICATION

    "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court

without prepayment of the filing fee that would ordinarily be charged."  *Cash v. Bernstein*, No.

09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent,

incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently

pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate

accounts." *Id*. (citing § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review of Plaintiff's IFP Application (Dkt. No. 2), the Court finds Plaintiff has

demonstrated sufficient economic need to proceed *in forma pauperis*. Plaintiff has also filed the

inmate authorization form required in this District. (Dkt. No. 3.) Therefore, Plaintiff's IFP

Application is granted.[1] (Dkt. No. 2.)

## II.    LEGAL STANDARDS FOR INITIAL REVIEW

Having found Plaintiff meets the financial criteria for commencing this action *in forma*

*pauperis*, and because he seeks relief from a governmental entity or an officer or employee of a

governmental entity, the sufficiency of the allegations set forth in his complaint must be

considered in light of 28 U.S.C. §§ 1915(e) and 1915A.

Section 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall

dismiss the case at any time if the court determines that . . . the action  . . . (i) is frivolous or

malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief

against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

Similarly, § 1915A directs that a court must review any "complaint in a civil action in

which a prisoner seeks redress from a governmental entity or officer or employee of a

governmental entity" and must "identify cognizable claims or dismiss the complaint, or any

---

[1]  The total cost for filing a civil action in this Court is $400.00, consisting of the civil filing fee of $350.00, 28 U.S.C. § 1914(a), and an administrative fee of $50.00. Although an inmate who is granted *in forma pauperis* status is not required to pay the $50.00 administrative fee, he is required to pay, over time, the full amount of the $350.00 filing fee regardless of the outcome of the action. 28 U.S.C. § 1915(b)(3).

portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief can be granted; or . . . seeks monetary relief against a person who is immune from such relief."  28 U.S.C. § 1915A(b).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and quotation marks omitted).  Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed.  *See, e.g.*, *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation."  *Id.*

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Additionally, when reviewing a complaint, courts are guided by the pleading requirements of the Federal Rules of Civil Procedure. Under Rule 8, a pleading shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this rule "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of *res judicata* is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (emphasis and citation omitted). Under Rule 10, "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). The purpose of this rule is to facilitate a cogent framing of the issues presented and permit defendants to properly respond to the allegations of a complaint. *Laspisa v. Citifinancial Does 1 to 20*, 269 F. Supp. 3d 11, 13 (N.D.N.Y. 2017); *Dabney v. Sawyer*, No. 11-CV-0273 (LEK/RFT), 2012 WL 3241571, at *1 (N.D.N.Y. July 17, 2012).[2]

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185,

---

[2] The Court will provide Plaintiff with copies of unpublished decisions in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76, 76 (2d Cir. 2009) (per curium).

191 (2d Cir. 2008) (citation omitted).  A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and quotation marks omitted).  An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III.    COMPLAINT

On December 4, 2017, at approximately 8:00 a.m., Police Officers Caputo and Sleurs responded to Plaintiff's 911 call "that [he] was a victim of" and, when they arrived, placed him under arrest and took photographs.  (Dkt. No. 1 at 4.[3])  Plaintiff claims he was brought to the police station where he was assaulted, falsely arrested, and detained.  *Id.*  Caputo and Sleurs "punched and kicked" Plaintiff "all over" his body and "beat" him up for fifteen minutes straight.  *Id.*  As a result, Plaintiff suffered from bruising and swelling.  *Id.*

Plaintiff claims Detective Cross "tampered with evidence and got rid of evidence and did a[n] illegal search and seizure of [his] property."  *Id.*  Cross also "planted fake evidence to prosecute [Plaintiff], which [he is] now serving a 2 to 4 years in prison." *Id.*[4]  Plaintiff claims Judge Donovan "falsely detained [him] with bogus charges, and convicted and falsely charged and confined me, while officer Caputo and officer Sleurs violates several of [his] rights."  *Id.*  Plaintiff avers he can prove "it all" with "evidence" in his "discovery."  *Id.*

---

[3]  Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

[4]  According to the publicly available website maintained by the New York State Department of Corrections and Community Supervision, Plaintiff was received into custody on September 6, 2018, and he is serving an indeterminate sentence of two to four years for criminal contempt in the first degree, a Class E felony.  *See* http://nysdoccslookup.doccs.ny.gov (DIN 18A3400) (last visited June 3, 2019).

Based on the foregoing, Plaintiff asserts claims against Defendants Caputo and Sleurs for excessive force, assault, failure to protect, violation of due process, false arrest, false imprisonment, slander, and defamation of character. *Id*. at 6. Plaintiff brings claims against Defendant Cross for tampering with evidence, illegal search and seizure, false arrest, false imprisonment, slander, defamation of character, and filing a false report. *Id*. Plaintiff asserts claims against Judge Donovan for false imprisonment, slander, and defamation of character. *Id*. Plaintiff seeks unspecified monetary damages. *Id*. For a complete statement, reference is made to the complaint.[5]

## IV.   ANALYSIS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990). "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

To state a viable claim under Section 1983, a plaintiff must allege that the defendant, while acting under color of state law, deprived him of a right, privilege or immunity secured by the Constitution or by the laws of the United States. *See* 42 U.S.C. § 1983. Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under Section 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing M*offitt v.*

---

[5] Plaintiff further claims that while he was a pretrial detainee at Albany County Correctional Facility based on the "bogus" charges, Assistant District Attorney Ariel R. Fallon contacted the facility and "ordered" a sergeant and two officers to assault Plaintiff. (Dkt. No. 1 at 5.) The Court takes judicial notice that these allegations are part of separate lawsuit filed in this District on March 5, 2019, entitled *Nicholas Dayter v. Ariel Fallo, et. al.*, No. 9:19-cv-0301 (LEK/ATB).

*Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)).

### A.    Claims Against Defendant Judge Donovan

It is well-settled judges are absolutely immune from suit for damages for judicial acts performed in their judicial capacities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). Absolute immunity protects judges for their judicial acts, even when such acts "are alleged to have been done maliciously or corruptly." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation[.]" *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). This is true however erroneous an act may have been and however injurious its consequences were to the plaintiff. *Id.*

Here, Plaintiff claims Judge Donovan[6] "falsely detained" him on "bogus charges, and convicted and falsely charged and confined me." *Id.* Plaintiff's allegations against Judge Donovan clearly relate to actions that are judicial in nature and, therefore, he is entitled to judicial immunity. Consequently, the Court recommends that all claims against Judge Donovan be dismissed with prejudice.

### B.    Claims Against Defendant Bethlehem Police Department

It is unclear from the complaint what, if any, claims are alleged against the Bethlehem Police Department. Plaintiff identifies the Bethlehem Police Department as a Defendant in the

---

[6] The Court takes judicial notice that the Honorable Ryan T. Donovan, Town Justice, has presided over the criminal, small claims, and traffic matters in the Town of Bethlehem since 2006. *See* https://www.townofbethlehem.org/744/TownJustice-RyanDonovan (last visited June 3, 2019).

caption of his complaint, yet makes no factual allegations against this Defendant in the body of the complaint.[7] (Dkt. No. 1 at 1.)  However, "[a] police department cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (dismissing claims against county sheriff's department) (citations omitted); *see also Jackson v. Cty. of Nassau*, 07-CV-245, 2010 WL 335581, at *5 (E.D.N.Y. Jan. 22, 2010) ("Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued."); *see, e.g.*, *La Grande v. Town of Bethlehem Police Dep't*, No. 1:08-CV-0738 (LEK/DRH), 2009 WL 2868231, at *2 (N.D.N.Y. Sept. 1, 2009) ("Since the Bethlehem Police Department cannot be sued pursuant to 42 U.S.C. § 1983, [the plaintiff's] [c]omplaint is dismissed as against the Town of Bethlehem Police Department."); *Jenkins v. Liadka*, No. 5:10-CV-1223 (GTS/DEP), 2012 WL 4052286, at *5 (N.D.N.Y. Sept. 13, 2012) ("Because the Syracuse Police Department is merely an administrative arm of the City of Syracuse, it is not a proper defendant.").

Therefore, the Court recommends dismissing all claims against the Bethlehem Police Department with prejudice.  However, in deference to Plaintiff's *pro se* status, the Court recommends that Plaintiff be provided with an opportunity to amend his complaint to clarify claims, if any, he intended to allege against the Town of Bethlehem.[8]

---

[7]  *See also Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc.*, 665 F. Supp. 2d 239, 251 (S.D.N.Y. 2009) ("When a complaint names defendants in the caption but makes no substantive allegations against them in the body of the pleading, the complaint does not state a claim against these defendants.").

[8]  The Second Circuit has directed district courts to grant leave to *pro se* litigants to amend their complaints to name the municipality in which a police department sits as the real party in interest when a case is dismissed against a police department on the grounds that it is not an entity capable of being sued.  *See Morris v. New York City Police Dep't*, 59 F. App'x 421, 422-23 (2d Cir. 2003) (summary order) (directing the district court to permit amendment of the complaint to

C.    **Claims Against Defendants Caputo and Sleurs**

While Plaintiff's complaint is not a model of clarity, construed liberally, Plaintiff asserts

claims against Defendants Caputo and Sleurs for excessive force, failure to protect, assault,

violation of due process, false arrest, false imprisonment, slander, and defamation of character.

*Id*. at 6.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court of the United States

created a jurisdictional prerequisite to civil suits brought under 42 U.S.C. § 1983:

> [I]n order to recover damages for allegedly unconstitutional
> conviction or imprisonment, or for other harm caused by actions
> whose unlawfulness would render a conviction or sentence invalid,
> a § 1983 plaintiff must prove that the conviction or sentence has
> been reversed on direct appeal, expunged by executive order,
> declared invalid by a state tribunal authorized to make such a
> determination, or called into question by a federal court's issuance
> of a writ of habeas corpus.  A claim for damages bearing that
> relationship to a conviction or sentence that has *not* been so
> invalidated is not cognizant under § 1983.

512 U.S. at 486-87 (emphasis in original); *see also Peterson v. Todd*, No. 5:12-CV-1371

(MAD/DEP), 2013 WL 2487253, at *4 (N.D.N.Y. June 7, 2013) ("A claim for damages relating

to a conviction that has not been so invalidated is not cognizable under Section 1983.") (citation

and quotation marks omitted).

Thus, under *Heck* and its progeny, a "§ 1983 action is barred (absent prior invalidation)

no matter the relief sought (damages or equitable relief) . . . *if* success in that action would

necessarily demonstrate the invalidity of confinement or its duration."  *Wilkinson v. Dotson*, 544

U.S. 74, 81-82 (2005) (emphasis in original).  If a plaintiff whose success would necessarily

demonstrate the invalidity of the confinement or its duration does not satisfy *Heck's* "favorable

---

name the City of New York as a defendant when the suit was dismissed against the New York
City Police Department on the grounds it was not a suable entity).

termination rule," he must seek relief through the federal habeas corpus statute rather than through § 1983. *Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir. 2006) ("[T]he purpose of the *Heck* favorable termination requirement is to prevent prisoners from using § 1983 to vitiate collaterally a judicial or administrative decision that affected the overall length of confinement, and that punishments related to their term of imprisonment, or the procedures that led to them . . . must be attacked through a habeas petition.").

*Heck*, however, does not require dismissal of any claim whose adjudication in favor of the plaintiff would not necessarily invalidate his conviction or sentence. *See Jackson v. Suffolk Cty. Homicide Bureau*, 135 F.3d 254, 256-57 (2d Cir. 1998) (reversing dismissal of excessive force claim pursuant to *Heck* because a finding that excessive force had in fact been used would not necessarily require the invalidation of the conviction); *see, e.g.*, *Delaney v. City of Albany*, No. 1:18-CV-1193 (DNH/CFH), 2019 WL 1486836, at *4 (N.D.N.Y. Apr. 4, 2019) (finding the plaintiff's assertion that he was subjected to excessive force during the arrest was not barred by *Heck* as it "would not implicate his judgments of conviction"); *report recommendation adopted by* 2019 WL 1922286 (N.D.N.Y. Apr. 30, 2019) (

### 1. False Arrest, False Imprisonment, Defamation, Slander, and Violation of Due Process

Here, as currently pled, Plaintiff's claims against Defendants Caputo and Sleurs sounding in false arrest, false imprisonment, defamation, slander, and violation of due process strike at the heart of the apparent conviction Plaintiff received as a result of the events in question. Were Plaintiff to succeed on any of theory espoused above, he would necessarily call into question the validity of his underlying conviction and sentence. As such, all of these claims are barred because he has failed to show that a conviction or sentence has been overturned. *See Duamutef v. Morris*, 956 F. Supp. 1112, 1115-18 (S.D.N.Y. 1997) (dismissing § 1983 claims of malicious

prosecution, false arrest, perjury, retaliation, and civil rights conspiracy under *Heck* where the plaintiff's underlying conviction had not been overturned); *Rivera v. City of Yonkers*, 470 F. Supp. 2d 402, 408 (S.D.N.Y. 2007) (dismissing plaintiff's false arrest, false imprisonment, and malicious prosecution claims as barred under *Heck*); *Delaney v. City of Albany*, 2019 WL 1486836, at *4 (dismissing the plaintiff's false imprisonment, false arrest, and defamation claims without prejudice as barred by *Heck*); *Dorsey v. Regan*, No. 6:14-CV-23 (TJM/CFH), 2014 WL 1338415, at *1 (N.D.N.Y. Apr. 2, 2014) (dismissing claims for false arrest and false imprisonment without prejudice as barred by *Heck*); *Lane v. Papadimitrious*, No. 6:10-CV-647 (NAM/ATB), 2010 WL 2803468, at *1 (N.D.N.Y. July 14, 2010) (finding plaintiff's "claims in the nature of perjury, slander, evidence tampering, conspiracy to bring unfounded criminal charges against him, and false imprisonment necessarily implicate the validity of his conviction and thus are barred under *Heck* until such time as the conviction may be vacated or otherwise invalidated.").

Accordingly, the Court recommends that Plaintiff's claims against Defendants Caputo and Sleurs for false arrest, false imprisonment, defamation, slander, and violation of due process be dismissed without prejudice as barred by *Heck*.

### 2.    Excessive Force and Failure to Protect

"[C]laims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen [are] analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" *Graham v. Connor*, 490 U.S. 386, 395 (1989). The standard governing excessive force is "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397 (citations omitted). "[T]he Second Circuit

has held that even minor injuries, including scrapes and bruises, can support an excessive-force claim." *Matthews v. City of New York*, 889 F. Supp. 2d 418, 442 (E.D.N.Y. 2012).

Additionally, liability under § 1983 may attach to a police officer for failing to intervene in or prevent an instance of excessive force if "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean–Laurent v. Wilkinson*, 540 F.Supp.2d 501, 512 (S.D.N.Y. 2008) (citations omitted); see also *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.").

Here, Plaintiff claims he was brought to the police station where Defendants Caputo and Sleurs "punched and kicked" him "all over" his body and "beat" him up for fifteen minutes straight. *Id*. As a result, Plaintiff suffered from bruising and swelling. *Id*. Thus, at this early stage in the litigation, Plaintiff has adequately "pleaded factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

Therefore, the Court recommends that Plaintiff's excessive force and failure to protect claims against Defendants Caputo and Sleurs be found to survive initial review and require a response. In so recommending, no opinion is expressed as to whether these claims can withstand a properly filed dispositive motion judgment.

### 3.    Assault

Plaintiff claims Defendants Caputo and Sleurs assaulted him.  (Dkt. No. 1 at 6.)  To the extent that Plaintiff asserts this claim under 42 U.S.C. § 1983, it is duplicative of his excessive force claim and must be dismissed for failure to state a claim upon which relief may be granted. *See Raymond v. Bunch*, 136 F. Supp. 2d 71, 81 (N.D.N.Y. 2001).  To the extent this claim is asserted under New York law, claims for intentional torts are governed by a one-year statute of limitations.  N.Y. C.P.L.R. § 215(3); *see also Ashjari v. Nynex Corp.*, 182 F.3d 898 (2d Cir. 1999) ("Under N.Y. C.P.L.R. § 215(3), claims of assault and battery . . . must be brought within one year from the date the claim accrued.").  Although the statute of limitations is an affirmative defense, where it is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on 28 U.S.C. § 1915(e)(2)(B) review.  *See Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (holding that a complaint can be dismissed on initial review based on a defense that appears on the face of the complaint). However, a district court typically should not dismiss a claim as time-barred without providing a *pro se* plaintiff with "notice and opportunity to be heard" as to whether there might be a meritorious tolling argument or other reason why the complaint might be considered.  *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007).

Therefore, the Court recommends dismissing Plaintiff's assault claims against Defendants Caputo and Sleurs with leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2)(ii) and 1915A(b)(1).

**D.      Claims Against Defendant Cross**

Construed liberally, Plaintiff asserts claims against Defendant Cross for false arrest, false imprisonment, illegal search and seizure, malicious prosecution, slander, and defamation.  (Dkt. No. 1 at 4, 6.)  *Id.*

**1.      False Arrest, False Imprisonment, Malicious Prosecution, Slander, Defamation, Violation of Due Process**

For the same reasons discussed above, the Court finds Plaintiff's claims against Defendant Cross for false arrest, false imprisonment, malicious prosecution, slander, and defamation are barred by *Heck*.  *See Morris*, 956 F. Supp. at 1115-18 (dismissing § 1983 claims of malicious prosecution, false arrest, perjury, retaliation, and civil rights conspiracy under *Heck* where the plaintiff's underlying conviction had not been overturned).  Consequently, the Court recommends that Plaintiff's claims against Defendant Cross for false arrest, false imprisonment, malicious prosecution, slander, and defamation be dismissed without prejudice as barred by *Heck*.

**2.      Illegal Search and Seizure**

"A 'search' in the context of the Fourth Amendment occurs when the police intrude upon a person's reasonable expectation of privacy or if the police otherwise trespass upon one's person, house, papers, or effects for the purpose of acquiring information."  *Jennings v. Decker*, 359 F. Supp. 3d 196, 207-08 (N.D.N.Y. 2019) (citations omitted).  "In narrow circumstances, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction" as long as the suit "would not necessarily imply that the plaintiff's conviction was unlawful."  *Corely v. Vance*, No. 15 Civ. 1800 (KPF), 2015 WL 4164377, at *4 (S.D.N.Y. June 22, 2015) (citing *Heck*, 512 U.S. at 487 n. 7).

To determine if a § 1983 claim alleging an unlawful search would necessarily imply the invalidity of his conviction, the Court must "ascertain whether plaintiff could have been convicted even if the . . . evidence [from the allegedly illegal search were] suppressed[.]"  *Id.* (citations omitted).  Because Plaintiff's allegation that Defendant Cross conducted an "illegal search and seizure" is conclusory and unsupported by any factual enhancement, the Court finds this claim fails to state a claim upon which relief may be granted.  *See* 28 U.S.C. §§ 1915(e)(2)(ii) and 1915A(b)(1).  Additionally, as currently pled, the Court is unable to discern whether *Heck* also bars this claim.

Therefore, the Court recommends that Plaintiff's illegal search and seizure claim against Defendant Cross be dismissed without prejudice and with leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2)(ii) and 1915A(b)(1).

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**;[9] and it is further

**RECOMMENDED** that the Clerk be directed to provide the Superintendent of the facility that Plaintiff has designated as his current location with a copy of Plaintiff's inmate authorization form (Dkt. No. 3), and notify that official that Plaintiff has filed this action and is required to pay to the Northern District of New York the entire statutory filing fee of $350 in installments, over time, pursuant to 28 U.S.C. § 1915; and it is further

---

[9]  Plaintiff is advised that although the application to proceed *in forma pauperis* has been granted, he will still be required to pay any fees he incurs in this action, including copying fees and witness fees.

**RECOMMENDED** that Plaintiff's claims against Defendant Judge Donovan be **dismissed with prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(iii) and 1915A(b)(2); and it is further

**RECOMMENDED** that Plaintiff's claims against Defendant Bethlehem Police Department **be dismissed with prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(ii) and 1915A(b)(1); and it is further

**RECOMMENDED** that Plaintiff be provided with an opportunity to amend his complaint to clarify claims, if any, he intended to allege against the Town of Bethlehem; and it is further

**RECOMMENDED** that Plaintiff's excessive force and failure to protect claims against Defendants Caputo and Sleurs **survive initial review and require a response**; and it is further

**RECOMMENDED** that Plaintiff's assault claims against Defendants Caputo and Sleurs be **dismissed without prejudice and with leave to amend** pursuant to 28 U.S.C. §§ 1915(e)(2)(ii) and 1915A(b)(1); and it is further

**RECOMMENDED** that Plaintiff's illegal search and seizure claim against Defendant Cross be **dismissed without prejudice and with leave to amend** pursuant to 28 U.S.C. §§ 1915(e)(2)(ii) and 1915A(b)(1); and it is further

**RECOMMENDED** that Plaintiff's remaining claims for false arrest, false imprisonment, malicious prosecution, defamation, slander, and violation of due process be **dismissed without prejudice** as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); and it is further

**RECOMMENDED** that in the event the District Court allows Plaintiff to file an amended complaint, he be instructed that any amended complaint be a complete pleading that supersedes his original complaint in all respects (and does not incorporate by reference any

portion of his original complaint); and that he not attempt to reassert any claim that has been

dismissed with prejudice and/or without leave to amend by the District Court.  The Court further

recommends that Plaintiff be directed to comply in all respects with Rules 8(a) and 10(b) of the

Federal Rules of Civil Procedure, which require, *inter alia*, that the amended complaint contain a

short and plain statement of each claim showing that Plaintiff is entitled to relief, and that he

state his claims in numbered paragraphs, each limited as far as practical to a single set of

circumstances; and it is hereby

ORDERED that the Clerk serve a copy of this Order and Report-Recommendation on

Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the

Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.[10]  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 87 (2d Cir. 1993)

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: June 3, 2019
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[10]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,

v.

BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION* [1]

[1]    At the time the action was originally filed, the Honorable Leonard B. Sand, United States District Judge, granted plaintiff's application for *in forma pauperis* status based on plaintiff's *ex parte* submission (Docket Item 1). Although the present application seeking to revoke plaintiff's *in forma pauperis* status is non-dispositive, I address it by way of a report and recommendation to eliminate any appearance of a conflict between the decision of a district judge and that of a magistrate judge.

PITMAN, United States Magistrate Judge.

**\*1** TO THE HONORABLE BARBARA S. JONES, United States District Judge,

I. *Introduction*

By notice of motion dated March 4, 2010 (Docket Item 11), defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke plaintiff's *in forma pauperis* ("IFP") status on the ground that plaintiff has previously had at least three Section 1983 actions dismissed as frivolous, malicious or failing to state a claim upon which relief could be granted, and has not shown that he is in imminent danger of serious physical injury. Defendant further seeks an order directing that the action be dismissed unless plaintiff pays the full filing fee within thirty (30) days. For the reasons set forth below, I respectfully recommend that defendant's motion be granted.

II. *Facts*

Plaintiff, a sentenced inmate in the custody of the New York State Department of Correctional Services, commenced this action on or about January 12, 2009 by submitting his complaint to the Court's Pro Se office. Plaintiff alleges, in pertinent part, that he has "a non-healing ulcer that is gane green [*sic* ]" and that defendant Bernstein "did not want to treat the ulcer right" (Complaint, dated March 3, 3009 (Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants—Dr. Bernstein and Dr. Finkelstein. The action was dismissed as to Dr. Finkelstein because the complaint contained no allegations whatsoever concerning Dr. Finkelstein (Order dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr. Bernstein—filed the current motion. Plaintiff failed to submit a response. Accordingly, on August 20, 2010, I issued an Order advising plaintiff that if he wished to oppose the motion, he must submit his opposition by September 15, 2010 and that after that date I would consider the motion fully submitted and ripe for decision (Order dated August 20, 2010 (Docket Item 15)). The only submission plaintiff has made in response to my Order is a multi-part form issued by the New York State Department of Correctional Services entitled "Disbursement or Refund Request." [2] By this form, plaintiff appears to request that the New York State Department of Correctional Services pay the filing fee for this action. The form is marked "Denied."

[2]    Plaintiff sent this form directly to my chambers, and it has not been docketed by the Clerk of the Court. The form will be docketed at the time this Report and Recommendation is issued.

III. *Analysis*

28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged. Although an indigent, incarcerated individual need not prepay the filing fee at the time at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v. City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent abuse of the judicial system by inmates, paragraph (g) of this provision denies

incarcerated individuals the right to proceed without prepayment of the filing fee if they have repeatedly filed meritless actions, unless such an individual shows that he or she is in imminent danger of serious physical injury. *See Ortiz v. McBride,* 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> **\*2** In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

- In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson[3] v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief

United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at \*1–\*2.

3      It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

- In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM) (DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had been dismissed on the merits. 2008 WL 3836387 at \*1, \*7.

  - In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM) (RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at \*1–\*2.

• Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

**\*3** As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009). [4]

[4]  Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the *Scoggy* action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci [a]list before the gane green [*sic* ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." *Merriweather v. Reynolds,* 586 F.Supp.2d 548, 552 (D.S.C.2008), *citing Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) *and White v.*

*Colorado,* 157 F.3d 1226, 1231–32 (10th Cir.1998); *see also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury. [5]

[5]   Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

> Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

*Nelson v. Scoggy, supra,* 2009 WL 5216955 at *4.

Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

### IV. *Conclusion*

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's *in forma pauperis* status should, therfore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

### V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS *WILL* RESULT IN A WAIVER OF OBJECTIONS AND *WILL* PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 5185047

---

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 3241571
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Bartram Yihni DABNEY, Plaintiff,

v.

Donald SAWYER, Executive Director, Marcy
Mental Health Hospital; Joann Waldron, Chief
of Omh Satellite, Clinton Correctional Facility;

Dr. Berggen, [1] Psychiatrist, Clinton Correctional
Facility; Dr. Lee, Medical Director, Clinton
Correctional Facility; Dr. Farooki, Dentist;

Sharon Lockridge, [2] Omh Therapist; Savage, Omh
Therapist, Clinton Correctional Facility; Ron
Dumont, Nurse, Clinton Correctional Facility; C.O.
Beeshaw, Correctional Officer, Clinton Correctional
Facility; C.O. Foley, Correctional Officer, Clinton

Correctional Facility; Dr. Batter, [3] Psychiatrist,
Great Meadow Correctional Facility; J. Nocera,
Assistant Inspector General, Department of
Correctional Services; V. Donahue, Social Worker,
Great Meadow Correctional Facility, Defendants.

[1] The correct spelling of this Defendant's name
is "Bergen." See Dkt. No. 25. Service has been
accomplished on this Defendant and counsel clearly
appeared on his behalf, yet, perhaps by simple
oversight, his name is omitted from the Notice of
Motion filed by Defendants' counsel. Dkt. No. 27.

[2] According to the Defendants' counsel, this
Defendant's correct name was "Sara Loughran," but
she is now known as "Sara Nephew." Dkt. No. 16.

[3] The correct spelling of this Defendant's name
is "Battu." Although it appears from the docket
that the request for acknowledgment of service
on this Defendant was returned unexecuted, Dkt.
No. 30, several appearances have been made
by Defendants' counsel on behalf of this party.
For example, on October 11, 2011, counsel for
Defendants requested an extension of time to
respond to the Complaint on behalf of this and other
Defendants. Dkt. No. 16. And, on April 30, 2012,
a notice of counsel substitution was filed on behalf
of all Defendants, without exception. Dkt. No.
28. Finally, the pending Motion to Dismiss, while

curiously missing the name of Defendant Bergen,
see supra note 1, specifically lists Defendant Battu
as joining the move for dismissal, again without
exception. In light of these appearances by counsel,
the Court considers any service objection that may
have been raised on behalf of Defendant Battu has
been waived.

Civ. No. 9:11–CV–273 (LEK/RFT).
|
July 17, 2012.

**Attorneys and Law Firms**

Bartram Yihni Dabney, Dannemora, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General of the
State of New York, Charles J. Quackenbush, Esq.,
Assistant Attorney General, of Counsel, Albany, NY, for
Defendants.

### REPORT–RECOMMENDATION and ORDER

RANDOLPH F. TREECE, United States Magistrate
Judge.

**\*1** *Pro se* Plaintiff Bartram Yihni Dabney initiated this
action with the filing of a civil rights Complaint. Dkt.
No. 1, Compl. By his Complaint, Dabney asserts claims
pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 arising
out of his confinement at Great Meadow Correctional
Facility and Clinton Correctional Facility. He claims that
as retaliation for a pending litigation he had commenced
against eighteen prison officials, the Defendants used
excessive force against him and further denied him
medical and mental health care. He also asserts that he
was discriminated against because of his race and was
subjected to cruel and unusual conditions of confinement.
*See generally* Compl.

At the time this action was filed, there were two
named Plaintiffs, Bartram Yihni Dabney and Rashawn
Simpson. However, Mr. Simpson, having failed to sign
the Complaint or provide the filing fee, was subsequently
terminated from the action. *See* Dkt. No. 5, Order, dated
Aug. 18, 2011 (providing Mr. Simpson with thirty days to
comply or else be terminated from the action). Presently
pending is Defendants' Motion to Dismiss the Complaint,
which is opposed by Dabney. Dkt. Nos. 27, Defs.' Mot. to
Dismiss, & 32, Pl.'s Resp. Although Defendants noticed

as the Motion was brought pursuant to Federal Rules of Civil Procedure 8, 10, and 12(b)(6), there is no substantive argument included in the terse five-paged Memorandum of Law that addresses the purported inefficacies of the claims alleged by Dabney. Instead, the Defendants' entire argument for dismissal is based upon Plaintiff's alleged failure to comport his Complaint to the formal pleading standards set forth in Rules 8 and 10. Dkt. No. 27–1, Mem. of Law, at p. 1 ("The Complaint fails to contain a short and plain statement of plaintiff's claims showing that he is entitled to relief and engenders confusion by failing to list averments in separately numbered paragraphs consisting as much as is practicable of a single set of circumstances."). According to Defendants, they are simply unable to respond, and indeed it would pose too much of a burden to respond, "where the factual and legal allegations remain so unclear and are presented in such rambling, unnumbered, protracted paragraphs." *Id.* at p. 3.

Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a clam for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* FED. R. CIV. P. 8(a) (2). The purpose of this Rule "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz,* 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y.1995) (other citations omitted)).

Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part, that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." FED. R. CIV. P. 10(b). The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading .... " *Sandler v. Capanna,* 1992 WL 392597, at *3 (E.D.Pa. Dec. 17, 1992) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1323 at 735 (1990)).

*2 A complaint that fails to comply with these Rules presents too heavy of a burden for the defendants in shaping a comprehensive defense, provides no meaningful basis for the court to assess the sufficiency of plaintiff's claims, and may properly be dismissed by the Court.

*Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996). "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligble that its true substance, if any, is well disguised." *Hudson v. Artuz,* 1998 WL 832708, at *2 (citation omitted). In those cases in which the court dismisses a *pro se* complaint for failure to comply with these Rules, it should afford the plaintiff leave to amend the complaint to state a claim that is on its face nonfrivolous. *See Simmons II v. Abruzzo,* 49 F.3d 83, 86–87 (2d Cir.1995).

The Complaint filed by Dabney consists of two seemingly severable or distinct parts. First, there is a fourteen-page typed *pro forma* Complaint identical to those typically used by inmates who sue for relief pursuant to 42 U.S.C. § 1983. *See* Dkt. No. 1. In this document, the paragraphs are pre-numbered. Pre-numbered paragraph six contains the facts underlying the civil claims asserted by Dabney. This section spans six pages and is broken down into four "Issues." Compl. at pp. 7–12. These six pages are written in narrative form and the separate sub-paragraphs are not numbered. The last page of this portion of the document, which would normally bear the signature of the plaintiff pursuant to Federal Rule of Civil Procedure 11, is unsigned. *Id.* at p. 14. The second portion of the Complaint is, substantively, an exact replica of the typed portion, with three major distinctions: 1) it is entirely handwritten, 2) each paragraph throughout the *entire* twenty handwritten pages is sequentially numbered, and 3) it bears the notarized signature of Plaintiff Dabney on the final page. Dkt. No. 1–1.

As noted above, Plaintiff Dabney is proceeding *pro se,* and is therefore entitled to leniency when it comes to pleading standards. Essentially, he is not to be held to the same pleading standards as that imposed on a licensed attorney. *Haines v. Kerner,* 404 U.S. 519, 520–21 (1972); *see also Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). Furthermore, as Dabney points out in his Opposition, this Complaint has already survived the District Court's initial review wherein the pleading is reviewed, not necessarily on the merits, but at the very least for its conformity to the pleading requirements of Rules 8 and 10. *See* Dkt. No. 32 at p. 4; *see also* Dkt. No. 5 (directing service of the Complaint). In short, Dabney's pleading, though not a model of clarity, contains a short and plain statement of the claims asserted and has separately numbered paragraphs wherein facts are asserted to support the

2012 WL 3241571

claims raised therein. There may be instances where more than one fact is raised in a single paragraph, and certainly there are instances of commentary not necessarily related to the issues apparently at hand. But this is nothing new in the realm of prisoner litigation wherein the majority of inmates represent themselves in federal court.

**\*3** In light of the handwritten portion of the Complaint, we find Defendants' arguments regarding the onus placed on them to respond thereby justifying dismissal to be wholly without merit. While both the typed version and handwritten version constitute the entire Complaint, we concede that answering the typed version could prove somewhat challenging for Defendants. Therefore, we would recommend that Defendants only be directed to answer the handwritten version of the Complaint and may use the typed version as a means of reference should any portion of the handwritten paragraphs prove indecipherable. Thus, we would recommend **denying** Defendants' Motion for Dismissal based upon Rules 8 and 10.

Insofar as Defendants assert they also move for dismissal pursuant to Rule 12(b)(6), such request should be **denied** because they failed to make any substantive argument in support of the notion that Plaintiff's claims are not plausible. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 & 697 (2009)* ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). This Court will not infer any legal argument on behalf of Defendants, who are represented by counsel, where none have been proffered.

**WHEREFORE,** it is hereby

**RECOMMENDED,** that Defendants' Motion to Dismiss (Dkt. No. 27) be denied and Defendants be directed to respond only to the handwritten portion of the Complaint (Dkt. No. 1–1); and it is further

**ORDERED,** that the Clerk of the Court update the Docket Report so that the names of the following Defendants are corrected: Defendant Berggen's name should be spelled "Bergen"; Defendant Sharon Lockridge should be changed to Sara Nephew f/k/a Sara Loughran; and Defendant Batter's name should be spelled "Battu"; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report–Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs .,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72 & 6(a).

### All Citations

Not Reported in F.Supp.2d, 2012 WL 3241571

---

**End of Document**          © 2019 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag - Negative Treatment

Distinguished by Hogan v. County of Lewis, N.Y., N.D.N.Y., March 8, 2013

2010 WL 335581
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
E.D. New York.

Erwin JACKSON, Plaintiff,

v.

COUNTY OF NASSAU, Nassau County
Police Department, and Office of the Nassau
County District Attorney, Defendants.

No. 07-CV-245 (JFB)(AKT).
|
Jan. 22, 2010.

**Attorneys and Law Firms**

Erwin Jackson, pro se.

Ralph J. Reissman and Sara A. Wells of the Nassau County Attorney's Office, Mineola, NY, for defendants.

**MEMORANDUM AND ORDER**

JOSEPH F. BIANCO, District Judge.

**\*1** On January 17, 2007, pursuant to 42 U.S.C. § 1983, *pro se* plaintiff Erwin Jackson ("plaintiff" or "Jackson") brought this action against defendants County of Nassau ("the County"), Nassau County Police Department, and the Office of the Nassau County District Attorney alleging that defendants violated plaintiff's rights under the First, Fourth, and Fourteenth Amendments of the United States Constitution. Specifically, Jackson claims that his constitutional rights were violated during his pretrial proceedings when police officers allegedly withheld exculpatory evidence, made perjurous statements, and falsely verified felony complaints against plaintiff when they had no personal knowledge of the underlying facts. Jackson further contends that the County of Nassau has a policy of committing these constitutional violations. Jackson also alleges that the County of Nassau has

a policy of failing to investigate criminal complaints regarding these types of violations if they are filed by pretrial detainees or criminal defendants. The defendants now move, jointly, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, defendants' motion is granted.

**I. FACTS**

The Court has taken the facts set forth below from the parties' depositions, affidavits, and exhibits, and from the defendants' respective Rule 56.1 statements of facts. [1] Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party-here, the plaintiff. *See Capobianco v. City of New York,* 422 F.3d 47, 50 n. 1 (2d Cir.2001). Unless otherwise noted, where a party's 56.1 statement or deposition is cited, that fact is undisputed or the opposing party has pointed to no evidence in the record to contradict it. [2]

[1]     The Court notes that plaintiff failed to file and serve a response to defendant's Local Rule 56.1 Statement of Facts in violation of Local Civil Rule 56.1. Generally, a "plaintiff['s] failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." *Jessamy v. City of New Rochelle,* 292 F.Supp.2d 498, 504 (S.D.N.Y.2003) (quoting *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.,* 262 F.Supp.2d 134, 139 (S.D.N.Y.2003)). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 73 (2d Cir.2001) (citations omitted); *see also Gilani v. GNOC Corp.,* No. 04 Civ. 2935(ILG), 2006 WL 1120602, at \*2 (E.D.N.Y. Apr. 26, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). In plaintiff's opposition papers, he specifically identified those paragraphs of defendants' Rule 56.1 statement with which he agreed that there were no material disputed issues of fact. The Court, in its discretion, thus relies on those paragraphs as equivalent to plaintiff's Rule 56 .1 statement of facts for the purposes of this opinion. In the exercise of its broad discretion and given plaintiff's *pro se* status, the Court will also only deem admitted those facts in

defendant's Rule 56.1 statement that are supported by admissible evidence and not controverted by other admissible evidence in the record. *See Jessamy,* 292 F.Supp.2d at 504-05.

2       Because plaintiff is *pro se,* the Court has independently reviewed plaintiff's deposition testimony. Plaintiff's deposition contains no additional evidence other than plaintiff's speculation and conclusory allegations.

A. The Underlying Prosecution

On November 22, 2005, plaintiff Erwin Jackson was arrested by Nassau County police officers for attempted robbery of the Bank of America located in Baldwin, New York, on November 21, 2005. (Defs.' 56.1 Statement ¶ 4.) Plaintiff was brought to the Bellmore police station, where he was questioned about the November 21, 2005 robbery. (Deposition of Irwin Jackson, Defs.' Ex. E (hereinafter "Pl.'s Dep.") at 32-33.) At the station, Jackson was also questioned about other bank robberies. (*Id.* at 34-35.) Plaintiff was arrested and arraigned on November 23, 2005. He was charged for the November 21 robbery and four additional robberies that had occurred in Nassau County on November 13, 2005, October 1, 2005, September 2, 2005, and July 23, 2005. (*Id.* at 40-41; Defs.' 56.1 Statement ¶ 5.) Plaintiff was indicted by a grand jury on thirteen counts on December 19, 2005. (Pl.'s Dep. at 44-45.) In June 2006, a pretrial suppression hearing was held, at which Police Officer Joseph Hughes testified. (*Id.* at 45-46.) Plaintiff proceeded to trial on the charges and, on February 6, 2007, was found guilty on nine counts of Robbery in the First Degree (New York Penal Law 160.15) and one count of Conspiracy in the Fourth Degree (New York Penal Law 105.10). (*Id.* at 53-54.) On July 30, 2008, Jackson was sentenced to fifteen years for each of the nine counts of Robbery in the First Degree, plus one year and four months for Conspiracy in the Fourth Degree. (Defs.' 56.1 ¶ 8.) Jackson's minimum aggregate sentence was set at twenty-five years, eight months and sixteen days. (*Id.* ¶ 9.)

B. Officer Hughes

**\*2** By letter dated September 17, 2006, while a pretrial detainee, Jackson filed three criminal complaints against Police Officer Joseph Hughes with the Nassau County District Attorney's Criminal Complaint Unit. (*Id.* ¶ 10.)

The complaints were based on Officer Hughes's allegedly inconsistent testimony at a pretrial suppression hearing. Jackson alleges that while testifying before the Grand Jury in December 2005, Officer Hughes stated that he observed five black males fleeing a four-door Buick wearing face masks. During a subsequent pretrial hearing on July 10, 2006, plaintiff cross-examined Officer Hughes. At that hearing, Officer Hughes stated that only some of the males he observed were wearing face masks. The testimony at the July 10 pretrial hearing was as follows:

Q: This individual jumps out of the car. This is the individual that you pursued after?

A: Correct. * * *

Q: Did he have mask on? A: No mask.

Q: No mask. You testified in the grand jury that all five of the occupants of that car that fled had masks on?

A: I was incorrect about that. I stated that before.

Q: That information wasn't true?

A: It was incorrect. * * *

Q: You testified they all had masks on. Now, you're saying, you take the mask off one-

A: I believe in that statement. I was describing all the occupants. I said, they all had masks on. I was incorrect. I should have said, some had masks on.

(*Id.* ¶ 12 (citing Ex. AB at 485-86).)

Jackson also claims Officer Hughes made a "punishable false written statement" and committed the crime of "offering a false instrument for filing" by verifying and signing five felony complaints against plaintiff, although Officer Hughes had no personal knowledge of the information contained in those complaints and relied on information provided by other officers. (*Id.* ¶¶ 13-14.) According to Jackson, during the pretrial hearing and trial of his co-defendant Paul Henry, Officer Hughes testified that it was police procedure for officers to verify and swear to felony complaints even though they lacked knowledge of the underlying facts or crimes alleged therein. (Pl.'s Dep. at 61.) Jackson also alleges that Hughes testified to this at Jackson's own trial on cross-examination. (*Id.* at 61-62.)

On September 21, 2006, Assistant District Attorney ("ADA") Thurer transferred plaintiff's perjury complaint against Officer Hughes to ADA Barbara Kornblau, Chief of the Public Corruption Bureau. (*Id.* ¶ 15.) ADA Kornblau reviewed plaintiff's complaint against Officer Hughes. Because plaintiff's case was still pending and "the issues alleged by plaintiff all pertained to credibility," (Defs.' Ex. K ¶ 6), ADA Kornblau notified Daniel Looney, the ADA prosecuting plaintiff, and plaintiff's attorney, Jeffrey Groder, of plaintiff's claims. The District Attorney's Office later informed Jackson that it also forwarded the case to the Internal Affairs Bureau of the Nassau County Police Department for administrative action at their discretion. (Pl.'s Dep. at 56; Defs.' 56.1 ¶ 16.) After receiving plaintiff's complaint from the District Attorney's Office, the Nassau County Police Department's Internal Affairs Bureau "determined that plaintiff's complaint against Officer Hughes for perjury was unfounded, since plaintiff had been convicted in a jury trial on February 6, 2007." (Defs.' 56.1 ¶ 18.)

### C. Detective Comiskey

**\*3** Jackson also filed criminal complaints against Detective Joseph Comiskey with the Nassau County District Court. (Pl.'s Dep. at 58-59.) According to Jackson, Detective Comiskey committed "official misconduct" and perjury for allegedly failing to provide plaintiff with "exculpatory material" in July 2006 at a pretrial hearing, and for advising the court that he had turned over all of his notes when, according to Jackson, he had not done so. (Defs.' 56.1 ¶ 19.) ADA Steven L. Schwartz, Chief of the Nassau County District Attorney's District Court Bureau, investigated these two complaints against Detective Comiskey, and found the claims in them unfounded. (*Id.* ¶ 20.) Plaintiff was subsequently informed that the District Attorney's Office declined to prosecute these complaints. (*Id.*) These complaints were also reviewed by ADA Kornblau, who determined that Detective Comiskey's actions were not a crime. (*Id.* ¶ 22.) Subsequently, as she had done with the complaint against Officer Hughes, she forwarded the complaints to the Nassau County Police Department Internal Affairs Bureau. (*Id.* ¶ 22.) ADA Kornblau also sent a letter to Jeffrey Groder, plaintiff's trial counsel, informing him of plaintiff's allegations, since they pertained to an incident in which Groder was involved. (*Id.*)

### D. The Instant Complaint

Jackson alleges eleven causes of action against the County of Nassau and two of its administrative arms, the Nassau County District Attorney's Office and the Nassau County Police Department, arguing that these entities had unconstitutional policies, practices, and customs that infringed his constitutional rights. Jackson asserts three claims specifically against the County of Nassau. First, he alleges that the County had a policy of failing to discipline its employees for any alleged perjury or cover-ups with respect to evidence. (Compl. at 5; Pl.'s Dep. at 93.) Jackson's second cause of action claims that the County has a policy, practice, procedure and custom of failing to take steps to terminate the unconstitutional practices of "its legal subordinates," defendants Nassau County Police Department and the Nassau County District Attorney's Office. (Compl. at 5; Pl.'s Dep. at 93-94.) Jackson's third cause of action alleges that the County has failed to properly train and supervise its employees with regard to "the proper constitutional and statutory requirements in the exercise of their authority." (Compl. at 5; Pl.'s Dep. at 94.)

Jackson asserts four claims against the Nassau County Police Department. The fourth cause of action in Jackson's complaint alleges that the Nassau County Police Department has a policy that authorizes subordinates to falsely verify and file criminal felony complaints without "knowledge of or knowledge based upon belief" of the underlying facts. (Compl. at 5; Pl.'s Dep. at 95.) The fifth cause of action alleges that the Nassau County Police Department failed to properly train and supervise its employees in the processing of arrestees. (Compl. at 5-6.) Specifically, Jackson contends that, due to inadequate training, employees of the Nassau County Police Department do not realize "that they are not authorized to swear or fill out a felony complaint that they have absolutely no knowledge of." (Pl.'s Dep. at 96.) The sixth cause of action in Jackson's complaint claims that the Nassau County Police Department has an illegal practice or custom that condones and sanctions its employees who commit perjury, which is demonstrated by the fact that plaintiff, a pretrial criminal defendant, attempted to file criminal charges against the defendants' subordinates, but the defendants took no corrective actions. (*Id.* at 96-97; Compl. at 6.) Jackson's seventh cause of action alleges that the Nassau County Police Department, as a policy

maker, has a defective and illegal policy whereby it does not correct or punish wrongdoings, such as those alleged in causes of action numbers four, five, and six. (Compl. at 6; Pl.'s Dep. at 97-98.)

**\*4** Jackson asserts his four final claims against the Nassau County District Attorney's Office. Jackson's eighth cause of action alleges that the Nassau County District Attorney's Office has a history and practice of ignoring criminal defendants' and arrestees' complaints, ignoring evidence of police misconduct, and shielding police officers and other assistant district attorneys from prosecution. (Compl. at 6.) Jackson's ninth cause of action alleges that the Nassau County District Attorney's Office does not give "any credence to pretrial criminal defendants who seek to file and give any credence to pretrial criminal defendants that seek to commence criminal actions in the court against public officials." (*Id.* at 130.) Specifically, plaintiff contends that the Nassau County District Attorney's Office declines to investigate, arrest, and/or prosecute public officials when illegal conduct is alleged by pretrial or criminal defendants. (Compl. at 6-7.) Jackson's tenth cause of action alleges that the Nassau County District Attorney's Office has failed to punish the illegal practices and wrongdoings of their employees and the Nassau County Police Department. (Compl. at 7.) Jackson's eleventh and final cause of action contends that the Nassau County District Attorney's Office has a policy and procedure whereby the district court clerk does not submit or file any claims or complaints against a public official made by criminal defendants. (Compl. at 7.)

## II. PROCEDURAL HISTORY

Jackson filed the complaint in this action on January 17, 2007. The Court granted plaintiff leave to proceed *in forma pauperis* on January 31, 2007. Defendants filed an answer to the complaint on May 23, 2007. On March 14, 2008, plaintiff filed a motion to amend the complaint. This Court denied that motion on February 13, 2009. On May 15, 2009, defendants submitted their motion for summary judgment and provided *pro se* plaintiff with the notice required by Local Civil Rule 56.2. Defendant submitted supplemental papers to their motion on June 5, 2009. Plaintiff submitted opposition papers on May 28, 2009.[3] Defendants filed their reply to plaintiff's opposition on June 5, 2009. Plaintiff also submitted a

motion for sanctions against defendants on June 10, 2009. Defendants submitted their opposition to the motion for sanctions on June 11, 2009. This matter is fully submitted.

[3]     Due to delay, it appears that plaintiff's response was not filed with the Court until June 11, 2009.

## III. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.,* 434 F.3d 165, 170 (2d Cir.2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones,* 396 F.3d 53, 69 (2d Cir.2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir.2004); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

**\*5** Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.* ' " *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (emphasis in original)). As the Supreme Court stated in *Anderson,* "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth " 'concrete particulars'

" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir.1984) (quoting *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978)). Accordingly, it is insufficient for a party opposing summary judgment " 'merely to assert a conclusion without supplying supporting arguments or facts.' " *BellSouth Telecomms., Inc. v. W.R. Grace & Co.,* 77 F.3d 603, 615 (2d Cir.1996) (quoting *Research Automation Corp.,* 585 F.2d at 33).

Where the plaintiff is proceeding *pro se,* the Court must "construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest[s]." *Weixel v. Bd. of Educ. of the City of N.Y.,* 287 F.3d 138, 145-46 (2d Cir.2002) (alterations in original) (quoting *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000)). Though a *pro se* litigant's pleadings and other submissions are afforded wide latitude, a *pro se* party's conclusory assertions, completely unsupported by evidence, are not sufficient to defeat a motion for summary judgment. *Shah v. Kuwait Airways Corp.,* --- F.Supp.2d ----, No. 08 Civ. 7371(GEL), 2009 WL 2877604, at *2 (S.D.N.Y. Sept. 9, 2009) ("Even a *pro se* party, however, 'may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is not wholly fanciful.' " (quoting *Auguste v. N.Y. Presbyterian Med. Ctr.,* 593 F.Supp.2d 659, 663 (S.D.N.Y.2009))).

## IV. DISCUSSION

### A. Proper Defendants

Plaintiff alleges specific causes of action against the Nassau County Police Department and Nassau County District Attorney's Office as defendants. However, "under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *See Davis v. Lynbrook Police Dep't,* 224 F.Supp.2d 463, 477 (E.D.N.Y.2002) (dismissing claim against Lynbrook Police Department); *see also Hall v. City of White Plains,* 185 F.Supp.2d 293, 303 (S.D.N.Y.2002) ("Because plaintiff has named the City of White Plains as a defendant, any claims against the [White Plains Department of Public Safety] are redundant. WPDPS does not have its own legal identity, and therefore the claims against it are dismissed."); *Polite v. Town*

*of Clarkstown,* 60 F.Supp.2d 214, 216 (S.D.N.Y.1999) ("[M]unicipal departments in this State-such as the Clarkstown Police Department-are not amenable to suit, and no claims can lie directly against them."); *Wilson v. City of New York,* 800 F.Supp. 1098, 1101 (E.D.N.Y.1992) ("The court also dismisses the claims against the New York City Police Department, which cannot be sued independently because it is an agency of the City of New York." (citations omitted)). Plaintiff's allegations against the Police Department are more properly raised in claims against Nassau County, which plaintiff has also brought in his first, second, and third causes of action. Accordingly, the Nassau County Police Department is dismissed as a defendant.

**\*6** For the same reason, plaintiff cannot bring claims against the Nassau County District Attorney's Office. *See Conte v. County of Nassau,* No. 06-CV-4746 (JFB) (ETB), 2008 WL 905879, at *1 n. 2 (E.D .N.Y. Mar. 31, 2008) (dismissing Section 1983 claims against the Nassau County District Attorneys Office because the entity is an " 'administrative arm[ ]' of the same municipal entity-the County ... and thus lack[s] the capacity to be sued"). Plaintiff's allegations against the District Attorneys Office are more properly brought as claims against Nassau County. Plaintiff has brought substantially the same claims against the District Attorney's Office as he has brought against the County of Nassau. Accordingly, the Nassau Count District Attorney's Office is dismissed as a defendant in this case. [4] Because the plaintiff is proceeding *pro se,* the Court, in its discretion, does not dismiss plaintiff's fourth through eleventh causes of action in their entirety, but rather construes those claims, which are largely duplicative of causes of action one through three, as against the County of Nassau.

[4]    The Court further notes that it has previously denied plaintiff's attempt to amend his complaint to state claims against Lawrence Mulvey, the Commissioner of the Nassau County Police Department, and Kathleen Rice, the Nassau County District Attorney. *See Jackson v. County of Nassau,* No. 07-CV-0245 (JFB)(AKT), 2009 WL 393640 (E.D.N.Y. Feb. 13, 2009).

### B. Section 1983 Liability

As stated *supra,* Jackson has brought his claims pursuant to Section 1983. Section 1983 "is not itself a source of

substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."
*Baker v. McCollan*, 443 U.S. 137, 145 n. 3 (1979). [5] For claims under Section 1983, a plaintiff must prove that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir.1999) (citation omitted). Here, the parties do not dispute that defendants were acting under color of state law. The question presented, therefore, is whether defendants' conduct deprived Jackson of the rights he asserts.

[5]      Specifically, Section 1983 provides as follows:
         Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....
         42 U.S.C. § 1983.

Although *pro se* plaintiff alleges eleven separate causes of action against the County of Nassau and its administrative arms, at core, the claims alleged by plaintiff in his complaint are as follows: (1) the County of Nassau has a policy or practice of permitting its employees (or employees of its administrative arms) to commit perjury and a policy or practice of failing to discipline its employees who do commit perjury; (2) the County of Nassau has a policy or practice of permitting its police officers to falsely verify criminal complaints; and (3) the County of Nassau has a policy of not investigating, responding to, or prosecuting complaints or cross-criminal complaints of pretrial detainees and criminal defendants that allege crimes and misconduct against police officers and assistant district attorneys. (Plaintiff's Opposition (hereinafter "Opp.") at 14.)

Defendants argue that they are entitled to summary judgment on the grounds that Jackson has failed to provide any evidence that would raise a genuine issue of fact as to municipal liability for any of these claims. As set forth below, the Court agrees. First, plaintiff has failed to provide any evidence that there was an

underlying constitutional violation with respect to his arrest and conviction, which would be a necessary element of any municipal liability claim. In fact, under well-settled Supreme Court and Second Circuit precedent, plaintiff's valid conviction precludes him from litigating any of his claims in the instant case because success on such claims (that is, demonstrating his constitutional rights were violated in connection with the investigation and prosecution of his case) would necessarily implicate the unconstitutionality of his conviction. Second, plaintiff has provided absolutely no evidence of an unconstitutional policy or custom of the County of Nassau and, thus, his municipal liability claims against the County cannot survive summary judgment.

(1) Plaintiff Cannot Demonstrate
Violation of His Constitutional Rights

**\*7** To bring a successful Section 1983 claim, plaintiff must first demonstrate that he was injured as a result of a constitutional violation. In the instant case, plaintiff cannot do so. First, Supreme Court precedent prevents a prisoner, like Jackson, from bringing a Section 1983 claim where success on the claim necessarily would implicate the unconstitutionality of the prisoner's conviction or sentence. Second, even assuming this rule did not apply, plaintiff has presented no evidence of any constitutional violations relating to his conviction.

a. *Heck v. Humphrey*

As a threshold matter, although not explicitly raised by defendants, plaintiff's claims fail as a matter of law, by virtue of his conviction. Specifically, the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), entitles defendants to a decision in their favor as a matter of law with respect to these claims.

i. The *Heck* Rule

In *Heck v. Humphrey*, the Supreme Court "confronted the question of whether, given the overlap between § 1983 and the federal habeas corpus statute, a prisoner seeking civil damages may proceed with a § 1983 claim where success on the claim necessarily would implicate the unconstitutionality of the prisoner's conviction or

sentence." *Amaker v. Weiner,* 179 F.3d 48, 51 (2d Cir.1999) (citing *Heck,* 512 U.S. at 480-90). The Supreme Court in that case explained:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 486-87 (footnote omitted) (emphasis in original); *see also* *Wilkinson v. Dotson,* 544 U.S. 74, 81 (2005) ("Heck specifies that a prisoner cannot use § 1983 to obtain damages where success *would* necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence." (emphasis in original)).

Thus, pursuant to *Heck,* courts routinely dismiss claims brought under Section 1983 when such claims bear on the validity of an underlying conviction or sentence. *See, e.g., Guerrero v. Gates,* 442 F.3d 697, 703-04 (9th Cir.2006) (holding that Heck bars plaintiff's § 1983 claims of

wrongful arrest, malicious prosecution, and conspiracy); *Amaker,* 179 F.3d at 51-52 (holding that *Heck* applies to Section 1983 conspiracy); *Perez v. Cuomo,* No. 09 Civ. 1109(SLT), 2009 WL 1046137, at *7 (E.D.N.Y. Apr. 17, 2009) ("A § 1983 claim for the violation of the due process right to a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction.... Since plaintiff's conviction remains valid, plaintiff's claim for violation of his right to a fair trial is not cognizable under § 1983, and must be dismissed as to all defendants[.]") (internal quotation marks and citations omitted); *Younger v. City of N.Y.,* 480 F.Supp.2d 723, 730 (S.D.N.Y.2007) (holding that plaintiff's claims for false arrest/imprisonment and malicious prosecution were barred by his plea of guilty pursuant to *Heck); cf. Jovanovic v. City of N.Y.,* No. 04 Civ. 8437, 2006 WL 2411541, at * 12 (S.D.N.Y. Aug. 17, 2006) (applying *Heck* to a Section 1983 claim for denial of the right to a fair trial in the context of a statute of limitations issue).

### ii. Application

**\*8** Here, as stated *supra,* Jackson was convicted after a trial in state court of nine counts of Robbery in the First Degree and one count of Conspiracy in the Fourth Degree on July 30, 2008. It is apparent that Jackson is still incarcerated for this conviction and, to date, has been unsuccessful in challenging his conviction or has not even attempted to do so. Under these circumstances, the Supreme Court's holding in *Heck* precludes plaintiff from bringing claims in this Court under Section 1983 for municipal liability, because a plaintiff bringing such claims must demonstrate a constitutional violation in connection with his conviction, and a successful result in this case on any one of plaintiff's claims would bear on the validity of that underlying conviction.

Indeed, *Heck*' s application to the instant matter is straightforward. Plaintiff's complaint claims that he was "subsequently indicted based upon officer Hughes['s] 'inaccurate' testimony." (Compl.¶ 9.) Plaintiff also contends that during his pretrial hearings there was extensive "late disclosure of [exculpatory] material." (*Id.* ¶ 11.) Although it is true that not all claims brought under Section 1983 necessarily implicate the validity of the underlying conviction, in this case, plaintiff's assertions of perjury, withheld evidence, and falsely sworn documents during his trial by police officers do

necessarily implicate the validity of his conviction and are thus barred by the *Heck* rule. [6] *See, e.g., McCloud v. Jackson,* 4 F. App'x 7, 10 (2d Cir.2001) ("[Plaintiff] could not assert [municipal liability] claims under § 1983 against the county defendants for holding him in jail because any claim for money damages which, as here, necessarily imputes the invalidity of a conviction, is barred under *Heck v. Humphrey,* 512 U.S. 477, 484, 486-87 (1994), until such time as the conviction is vacated or otherwise invalidated."); *Channer v. Mitchell,* 43 F.3d 786, 787-88 (2d Cir.1994) (per curiam) (affirming *Heck*-based dismissal of claim that police officers committed perjury and coerced witnesses to identify plaintiff wrongfully); *Williams v. Schario,* 93 F.3d 527, 529 (8th Cir.1996) ("[A] judgment in Williams's favor on his damages claim that defendants engaged in malicious prosecution and presented perjured testimony would 'necessarily imply the invalidity of his conviction or sentence' " (quoting *Heck,* 512 U.S. at 487)); *Smithart v. Towery,* 79 F.3d 951, 952-53 (9th Cir.1996) (per curiam) (affirming *Heck*-based dismissal of § 1983 claim of conspiracy to "bring unfounded criminal charges" against plaintiff); *Jasper v. Fourth Court of Appeals,* No. 08 Civ. 7472(LAP), 2009 WL 1383529, at *1 (S.D.N.Y. May 18, 2009) ("The Court liberally construes this complaint as asserting that plaintiff was denied his constitutional right to a fair trial. [However, s]ince plaintiff's conviction remains valid, plaintiff's fair trial claim is not cognizable under § 1983, and it must be dismissed as to all defendants[.]"); *Perez,* 2009 WL 1046137, at *7 ("A § 1983 claim for the violation of the due process right to a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction.... Since plaintiff's conviction remains valid, plaintiff's claim for violation of his right to a fair trial is not cognizable under § 1983, and must be dismissed as to all defendants[ .]") (internal quotation marks and citations omitted); *Fernandez v.. Holzbach,* No. 3:04 Civ. 1664(RNC), 2007 WL 1467182, at *1 (D.Conn. May 15, 2007) (holding that plaintiff's allegations that his convictions were based on perjury and fabricated evidence pursuant to a conspiracy to violate his federal rights "necessarily impl[ied] that he was wrongly convicted" and could not be litigated "until he show[ed] that the convictions have been invalidated"); *Duamutef v. Morris,* 956 F.Supp. 1112, 1115-16 (S.D.N.Y.1997) (dismissing § 1983 claims for, *inter alia,* malicious prosecution, false arrest, and perjury during trial due to a failure to state a claim under *Heck* because of the valid underlying criminal conviction). Thus, in order to bring a cognizable

Section 1983 claim in this Court for the harms alleged, plaintiff must first establish the invalidity of his state court conviction.

[6]    With respect to plaintiff's claim that the County of Nassau has a policy of declining to investigate criminal complaints filed by pretrial detainees and criminal defendants, as discussed *infra,* plaintiff has failed to present any evidence that his claim was not investigated, whereas the County has presented substantial evidence demonstrating that plaintiff's claim was, in fact, investigated. Moreover, the prosecution of plaintiff's criminal complaints against Officer Hughes and Detective Comiskey would have implicated the validity of his underlying conviction, in contravention of the *Heck* rule. Accordingly, *Heck* can be construed to preclude all of plaintiff's Section 1983 claims.

*\*9* The fact that plaintiff is seeking to assert municipal liability claims against the County of Nassau, rather than against individual defendants, does not vitiate the application of the *Heck* rule to plaintiff's claims. To prevail against the County of Nassau in his Section 1983 action under any of these theories, a plaintiff must plead and prove: (1) there was an official municipal policy or custom; and (2) that policy or custom caused him to be subjected to a denial of a constitutional right. *See Monell v. Dep't Soc. Servs.,* 436 U.S. 658, 690-91 (1978). There must be a "direct causal link" between the alleged municipal action and the deprivation of the plaintiff's constitutional rights. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385 (1989); *Vippolis v. Vill. of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985); *see also Lynch v. Suffolk County Police Dep't,* No. 07-3684-cv, 2009 WL 3287565, at *2 (2d Cir. Oct. 14, 2009) ("In order to prevail on a claim against a municipality under *Monell,* a plaintiff must allege, among other things, that a 'municipal policy of some nature caused a constitutional tort.' " (citations omitted)). In the instant case, because the Court finds as a matter of law on summary judgment that *Heck v. Humphrey* prevents a finding that a constitutional violation was committed against plaintiff by any of the defendants, *see supra,* no *Monell* claim can lie against the County of Nassau pursuant to § 1983. [7] *See, e.g., Lynch,* 2009 WL 3287565, at *2 ("Insofar as plaintiff alleges that a municipal policy caused prosecutorial misconduct in the trial that led to his felony convictions, plaintiff's claim seeks to 'recover damages for [an] allegedly unconstitutional conviction

or imprisonment' and is barred by *Heck,* 51 U.S. at 486." (alteration in original)); *Segal v. City of N.Y.,* 459 F.3d 207, 219 (2d Cir.2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct."); *accord Vippolis,* 768 F.2d at 44 ("A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that the municipality was, in the language of the statute, the 'person who ... subjected, or cause[d][him] to be subjected,' to the deprivation of his constitutional rights." (citing 42 U.S.C. § 1983)); *see also Ewolski v. City of Brunswick,* 287 F.3d 492, 516 (6th Cir.2002) ("Having concluded that the Appellant has not shown a genuine issue of material fact as to any of the asserted constitutional claims, we therefore conclude that the district court correctly dismissed the Appellant's municipal liability claims.").

7    In any event, summary judgment would also be warranted in favor of the County of Nassau because, as discussed *infra,* plaintiff has failed to proffer any evidence of a policy, custom, or failure to train, that led to any alleged constitutional violation.

In sum, even accepting plaintiff's allegations as true and drawing all reasonable inferences in plaintiff's favor, the Court finds that plaintiff cannot successfully bring a claim because the *Heck* rule, as a matter of law, prevents plaintiff from demonstrating a violation of his constitutional rights, which is a necessary predicate to any municipal liability claim pursuant to Section 1983.

### b. No Evidence of Violation of
Plaintiff's Constitutional Rights

**\*10** Moreover, even assuming that the validity of plaintiff's underlying conviction was not implicated by his claim that the County of Nassau had a policy of ignoring criminal complaints filed by pretrial detainees and criminal defendants, he has presented no evidence to support his contention that the County did not investigate his claims. Thus, because there is no evidence from which a rational jury could find a violation of his constitutional rights, there is no predicate for his municipal liability claim.

The only forms of evidence offered by plaintiff on this issue are his bald assertions and the fact that the County did not prosecute Officer Hughes or Detective

Comiskey for their alleged misconduct in relation to plaintiff's trial. Plaintiff's exhibits consist merely of copies of the letters and complaints that he filed with Nassau County entities. Plaintiff presents no evidence to contradict the evidence put forth by defendants, which demonstrates that plaintiff's complaints were investigated. In two affidavits submitted by ADA Kornblau, former Bureau Chief of the District Attorney's Public Corruption Bureau, she asserts that she personally investigated plaintiff's complaints against the officers. (*See* Defs.' Exs. K, X.) According to ADA Kornblau's affidavit, upon investigating Jackson's complaints, "[it] was clear from the minutes that [Jackson's] criminal attorney raised the issue of the failure to turn over *Rosario* material to the trial court, which is the proper venue for such an allegation." (Defs.' Ex. K ¶ 4.) Subsequently, ADA Kornblau determined that the remainder of plaintiff's claims were unfounded, and declined to prosecute the matter. (*See id.* ¶ 4 ("Subsequent to reviewing Jackson's complaint and after determining that the [complaint] did not allege conduct which constituted a crime, I referred the matter to the Internal Affairs Bureau of the Nassau County Police Department ...."); *id.* ¶ 6 ("In view of the fact that the trial of this case was still pending, and the issues alleged by [Jackson] all pertained to credibility, I notified Daniel Looney, the Assistant District Attorney assigned to Jackson's prosecution, as well as defense counsel, Jeffrey Groder, of Jackson's claims. I also forwarded Jackson's complaint to the Internal Affairs Bureau of the Nassau County Police Department for whatever administrative action they deemed necessary.").) In a separate affidavit, ADA Steven L. Schwartz, Bureau Chief of the District Court Trial Bureau in the Nassau County District Attorney's Office, states that he personally investigated plaintiff's proposed accusatory instruments and found them to be unfounded; accordingly, they were not prosecuted. (Defs.' Ex. Q ¶ 9.) [8]

8    The Court further notes that in the absence of any evidence that the Nassau County District Attorney's Office failed to investigate Jackson's complaints, the decision not to prosecute those complaints is protected by prosecutorial immunity. *See, e.g., Fields v. Soloff,* 920 F.2d 1114, 1119 (2d Cir.1990) ("[U]nless a prosecutor proceeds in the clear absence of all jurisdiction, absolute immunity exists for those prosecutorial activities intimately associated with the judicial phase of the criminal process.... This protection extends to the decision to prosecute as well

as the decision not to prosecute." (internal quotations and citations omitted)).

Here, as in *Staley v. Grady,* 371 F.Supp.2d 411 (S.D.N.Y.2005), "[s]imply because defendants disagreed with plaintiff as to the merits of the proposed [complaint] and chose not to prosecute the same, does not give rise to an equal protection violation." *Id.* at 417. Here, too, the Nassau County District Attorney's Office received Jackson's criminal complaints, reviewed and investigated them, and declined to prosecute them based upon the conclusion that the complaints were without merit. (*See* Defs.' Exs. K, Q.)

**\*11** In short, due to plaintiff's inability to set forth any evidence from which a rational jury could find a deprivation of his constitutional rights, plaintiff's *Monell* claims against the County of Nassau cannot survive summary judgment.

(2) Plaintiff Has Set Forth No
Evidence to Support a *Monell* Claim

Even assuming *arguendo* that plaintiff had put forth evidence to create a genuine issue of fact on whether his constitutional rights were violated, his municipal liability claims still cannot survive summary judgment because there is no evidence of a policy, practice or custom to support a finding by a rational jury of municipal liability under *Monell.*

i. Applicable Standard

Municipalities cannot be held vicariously liable for the actions of an employee under § 1983. *Monell,* 463 U.S. at 691 ("[A] municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."). Thus, "[a] municipality will not be held liable under Section 1983 unless the plaintiff can demonstrate that the allegedly unconstitutional action of an individual law enforcement official was taken pursuant to a policy or custom 'officially adopted and promulgated by that [municipality's] officers.' " *Abreu v. City of N.Y.,* No. 04-CV-1721 (JBW), 2006 U.S. Dist. LEXIS 6505, at \*11 (E.D.N.Y. Feb. 22, 2006) (quoting *Monell,* 436 U.S. at 690) (alteration in original). " '[M]unicipal liability under § 1983 attaches where-and only where-a deliberate choice

to follow a course of action is made from among various alternatives' by city policymakers ." *City of Canton,* 489 U.S. at 389 (quoting *Pembaur v. Cincinnati,* 475 U.S. 469, 483-84 (1986)). Thus, an individual's misconduct will not result in *respondeat superior* liability for his supervisors absent specific allegations that he acted pursuant to an official policy or custom. *Ricciuti v. N.Y.C. Transit Auth .,* 941 F.2d 119, 123 (2d Cir.1991). However, "[a] court may draw the inference of the existence of a policy or custom 'when a plaintiff presents evidence that a municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.' " *Caidor v. M & T Bank,* No. 05-CV-297 (FSJ), 2006 U.S. Dist. LEXIS 22980, at \*35-36 (N.D.N.Y. Mar. 27, 2006) (quoting *Grifin-Nolan v. Providence Wash. Ins. Co.,* No. 04-CV-1453 (FJS), 2005 U.S. Dist. LEXIS 12902, at \*10 (N.D.N.Y. June 20, 2005) (quotation omitted)). But, " 'the mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.' " *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995) (quoting *Dwares v. City of N.Y.,* 985 F.2d 94, 100 (2d Cir.1993)).

ii. Application

Even if plaintiff could prove that his constitutional rights were violated, whether at trial or by the subsequent failure to prosecute his criminal complaint for the actions by municipal actors at his trial, this is not sufficient to demonstrate a policy or custom by the County of Nassau. "[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Ricciuti,* 941 F.2d at 123; *see also Oklahoma City v. Tuttle,* 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *McAllister v. N.Y.C. Police Dep't,* 49 F.Supp.2d 688, 706 (S.D.N.Y.1999) (same); *Palmer v. City of Yonkers,* 22 F.Supp.2d 283, 290 (S.D.N.Y.1998) ("[T]he court will not infer the existence of a municipal policy from a single incident."). As discussed *supra,* " 'the mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending

to support, at least circumstantially, such an inference.' " *Zahra*, 48 F.3d at 685 (quoting *Dwares*, 985 F.2d at 100). [9]

[9]    Plaintiff contends that the persons who violated his constitutional rights were policymakers. (Opp. at 14 ("All of plaintiff's claims were made against the 'policy makers' and not against employees below the policy making level.").) First, as discussed *supra*, plaintiff's claims regarding alleged perjury, withholding of evidence, or falsely verified complaints relating to his trial are barred by *Heck.* In addition, however, plaintiff presents no evidence in support of this argument. Moreover, for purposes of plaintiff's causes of action regarding the failure to investigate his criminal complaints against those persons, plaintiff would need to allege that the persons who allegedly failed to investigate his accusations were policymakers. Plaintiff does not do so. Instead, he acknowledges that the policy maker is District Attorney Kathleen Rice, and the individuals who submitted the defendants' supporting affidavits-those who investigated plaintiff's allegations-are subordinates to the policy maker. (Opp. at 15.) For the reasons contained in our earlier opinion, this Court declines to add District Attorney Rice as a defendant in this action. *See Jackson,* 2009 WL 393640, at *3-5. In light of Jackson's repeated argument that the actions of the Nassau County District Attorney's Office's and Nassau County Police Department's actions were part of a policy, procedure, or custom, the Court interprets his complaint and opposition papers to argue municipal liability based only on a theory of municipal policy, procedure, or custom, and not on a theory of unconstitutional action by a policymaker.

**\*12** Plaintiff's complaint, statements at his deposition, and opposition papers to defendants' motion for summary judgment contain vague allegations regarding the existence of a policy or procedure by the County of Nassau of refusing to investigate criminal complaints of pretrial detainees and criminal defendants. (*E.g.,* Opp. at 5-6 ("Plaintiff also stated that he never received any response or letters of acknowledgment from either office though he wrote numerous letters inquiring about the status of his complaints and criminal charges."); Opp. at 6 ("The complaints were never investigated and plaintiff never received any response."); Opp. at 7 ("During the deposition plaintiff continuously testified to the fact that no one ever investigated nor responded to his complaints and grievances.").) These conclusory allegations as to the existence of a policy or custom are insufficient to

withstand summary judgment. *See Bishop v. Toys "R" Us-NY, LLC,* No. 04 Civ. 9403(PKC), 2009 WL 440434, at *4 (S.D.N.Y. Feb. 19, 2009) ("[P]roceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." (quoting *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1995)). Indeed, mere "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Id .* (citing *Matsushita,* 475 U.S. 574, 587 (1986)); Order, *McCray v. County of Nassau,* No. 06 CV 4982(SJF)(ARL) (E.D.N.Y. Sept. 22, 2008) ("Magistrate Judge Lindsay properly found that [p]laintiff had proffered no evidence to support his assertion that a custom, policy and/or practice, which precludes the consideration of criminal charges brought by an accused against police officers and assistant district attorneys, existed" when plaintiff merely asserted that a police officer was "aware of alleged police misconduct regarding Plaintiff's apprehension, [the] affidavits in support of County Defendants' summary judgment motion were not sufficiently detailed, and that there was no record of any investigation having been conducted by [County Defendants] in regards to the [complaints]"). Plaintiff has presented no actual evidence of a policy or custom whereby the County would decline to review the criminal complaints of pretrial detainees or criminal defendants.

The County of Nassau, however, has put forward extensive evidence regarding the policies that it has in place to review criminal complaints filed by all citizens. In two separate affidavits, ADA Kornblau affirms that the County does investigate criminal complaints against police officers and ADAs-including those made by pretrial and criminal defendants: "[M]any of the [District Attorney's Public Corruptions Bureau's] cases are referred from members of the public, including direct complaints of police misconduct that the Bureau receives from defendants and/or their attorneys." (Defs.' Ex. X. ¶ 5.) Similarly, "[t]o facilitate the investigation into complaints by incarcerated individuals including pretrial detainees, the Public Corruption Bureau maintains a hotline in the Nassau County Correctional Center for the purpose of allowing inmates to file complaints directly with the Public Corruption Bureau, without having to have their complaints reviewed first by any other entity, agency, or person." (*Id.*) Moreover, ADA Kornblau's affidavit states

that "[e]ach criminal complaint is afforded individual attention and investigation ... [and if] after investigation, it is determined that a complaint is supported by credible evidence, the Nassau County District Attorney's Public Corruption Bureau will recommend prosecution, after which those cases will be prosecuted in criminal court." (*Id.* ¶¶ 6-7.)

**\*13** The County of Nassau has also submitted evidence that the system utilized by the Nassau County District Attorney's Office for examining criminal complaints filed by private citizens does not differentiate between complaints based on the individual who files the complaint. ADA Kornblau explains that:

> Complaints are retrieved from within the computerized complaint system in one of three ways: (1) a complainant's name; (2) a defendant's name; or, (3) a complaint number. Therefore, there is no way to retrieve criminal complaints made specifically by pretrial detainees from within the computer complaint system since complaints are placed into the system without complainant classification (e.g., civilian, pretrial detainee, police officer, etc.).

(*Id.* ¶ 8; *see also* Defs.' 56.1 ¶ 47; Defs.' Ex. W ¶ 11.) In plaintiff's opposition papers, he stated that he did not dispute these facts. (Opp. at 12.)

The County of Nassau also submitted an affidavit from ADA Warren Thurer, the Bureau Chief of the Nassau County Criminal Complaint Unit. According to ADA Thurer, "[s]pecifically with respect to allegations of an assistant district attorney's or police officer's criminal conduct, such allegations will be individually investigated and if appropriate, will be forwarded to the Public Corruption Bureau of the Nassau County District Attorney's Office." (Defs.' Ex. W ¶ 10; *see also* Defs' Ex. Q ¶ 10 ("There is no policy, practice, or custom within the Nassau County District Attorney's Office that precludes the consideration, investigation, and/or acceptance of criminal cross-complaints brought by an

accused against police officers and/or assistant district attorneys based upon the status of the complainant as a pretrial detainee").) An affidavit provided by ADA Steven L. Schwartz, Bureau Chief of the District Court Trial Bureau in the Nassau County District Attorney's Office, states that:

> All proposed accusatory instruments are given individual attention and investigation. There is no distinction made for the status of the complainant and pretrial detainees are not treated any differently than other individuals proposing accusatory instruments to be filed. Each proposed accusatory instrument is investigated for possible criminalityand, if appropriate, any case may be forwarded and assigned to one of the investigative bureaus within the District Attorney's Office, or prosecuted within the District Attorney's District Court Bureau. If the allegations in a proposed accusatory instrument are determined to be unfounded, I send a letter to the Associate Court Clerk stating that the District Attorney's Office has declined to prosecute the matter.... Specifically, with respect to allegations of an assistant district attorney's or police officer's criminal conduct, such allegations are individually investigated and if appropriate, are forwarded to the Nassau County District Attorney's Office Public Corruption Bureau.

**\*14** (Defs.' Ex. Q ¶¶ 7-8.) Plaintiff has presented no evidence to contradict the information contained in these affidavits or to suggest otherwise.

Nor has plaintiff presented evidence of a policy or custom of committing perjury, withholding evidence, or falsely verifying criminal complaints. Plaintiff has merely asserted that "he can testify based upon personal

knowledge to the undisputed facts and that he has credible witnesses and documental evidence to support said factual claims." (Opp. at 11.) Plaintiff has not alleged with specificity other instances of perjury, withheld evidence, or falsified complaints, nor has he presented any other evidence of police officers' commission of perjury, withholding of evidence, or filing of falsely sworn complaints. The County of Nassau, by contrast, has put forward evidence regarding its arrest processing procedures and arrest records. (*See* Defs.' Ex. Z.) Nowhere in the County's arrest policies is false verification of criminal complaints, withholding of evidence, or perjury authorized. Furthermore, the "collective knowledge doctrine" or "fellow officer rule" permits arresting officers to rely upon other law enforcement officers' knowledge to justify probable cause to arrest. *See Savino v. City of New York,* 331 F.3d 63, 74 (2d Cir.2003) ( [F]or the purpose of determining whether an arresting officer had probable cause to arrest, 'where law enforcement authorities are cooperating in an investigation, ... the knowledge of one is presumed shared by all.' "); *Stokes v. City of New York,* No 05-CV-0007 (JFB)(MDG), 2007 U.S. Dist. LEXIS 32787, at *17 (E.D.N.Y. May 3, 2007) ("[U]nder the collective knowledge doctrine, defendant Buskey is permitted to rely on knowledge obtained by any other officers during the investigation"); *Phelps v. City of New York,* No. 04 CIV. 8570(DLC), 2006 U.S. Dist. LEXIS 42926, at *9-10 (S.D.N.Y. June 29, 2006) ("The rationale behind the [collective knowledge] doctrine is that in light of the complexity of modern police work, the arresting officer cannot always be aware of every aspect of an investigation; sometimes his authority to arrest a suspect is based on facts known only to his superiors or associates. Although the doctrine is typically used to establish probable cause for the purpose of admitting evidence at trial, it is equally applicable here. As the Supreme Court has recognized, police officers called upon to aid other officers in making an arrest are entitled to assume that the officers requesting aid have acted properly." (internal quotations and citations omitted)). Accordingly, it is not improper for an officer to verify a criminal complaint based upon facts learned from another officer and plaintiff has put forth no evidence of a policy, practice, or custom of Nassau County police officers falsifying information in criminal complaints or committing perjury.

Moreover, the County of Nassau has put forward an affidavit from a former Nassau County ADA, who

investigated and prosecuted a complaint against a Nassau County Police Officer in an unrelated matter that alleged that the officer had committed perjury by falsely testifying before the grand jury. (Defs.' Ex. Y ¶¶ 2-5.) That police officer was prosecuted and convicted of perjury in the third degree. (*Id.* ¶ 8.) In the face of this undisputed evidence of the County prosecuting perjury when it is uncovered, plaintiff has not identified any specific instances of police officers' commission of perjury that were not prosecuted.

**\*15** In sum, the undisputed facts demonstrate the following: (1) plaintiff's conviction prevents him from disputing any alleged constitutional violations relating to his trial; (2) defendants did investigate plaintiff's criminal complaints regarding Officer Hughes's and Detective Comiskey's alleged behavior; (3) defendants do have in place policies and procedures whereby criminal complaints filed by private citizens are investigated-even if those citizens are pretrial detainees or criminal defendants; and (4) the County of Nassau does not have a policy or procedure of permitting its employees to commit perjury, to falsely verify criminal complaints, or to withhold exculpatory evidence at trial. In short, plaintiff has failed to provide any factual support for his conclusory allegations that the defendants have engaged in unconstitutional policies or procedures. Accordingly, defendant's motion for summary judgment is granted.

### C. Motion for Sanctions

The Court has also reviewed plaintiff's motion for sanctions and, for the reasons stated throughout this opinion, finds plaintiff's claims to be without merit. Accordingly, plaintiff's motion for sanctions is also denied. *See S. E. C. v. Shainberg,* 316 F. App'x 1, 2 (2d Cir.2008).

### V. CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment in its entirety. Because the Court grants defendants' motion for summary judgment in its entirety, it also denies plaintiff's motion for sanctions against defendant.

Jackson v. County of Nassau, Not Reported in F.Supp.2d (2010)
Case 6:19-cv-00477-TJM-TWD     Document 5     Filed 06/04/19     Page 38 of 90
2010 WL 335581

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444-45 (1962).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 335581

---

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 2868231
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Quentin LA GRANDE, Plaintiff,

v.

TOWN OF BETHLEHEM POLICE
DEPARTMENT, et al., Defendants.

No. 1:08–CV–0738 (LEK/DRH).
|
Sept. 1, 2009.

**Attorneys and Law Firms**

Quentin La Grande, Albany, NY, pro se.

Nannette R. Kelleher, Bailey, Kelleher Law Firm, Albany, NY, for Defendants.

### *DECISION AND ORDER*

LAWRENCE E. KAHN, District Judge.

**\*1** Plaintiff *pro se* Quentin La Grande ("Plaintiff" or "La Grande") commenced the instant action against Defendants Robert Helligrass[1], Stephen Kraz[2] and the Town of Bethlehem Police Department (collectively, "Defendants") pursuant to 42 U.S.C. § 1983. Complaint (Dkt. No. 1). Presently before this Court is Defendants' Motion to dismiss (Dkt. No. 13) and Plaintiff's Motion for summary judgment (Dkt. No. 12). For the following reasons, Defendants' Motion to dismiss is granted and Plaintiff's Motion for summary judgment is denied.

[1]    Incorrectly named in the Complaint as "R.J. Helliergrass." *See generally* Complaint (Dkt. No. 1).

[2]    Incorrectly named in the Complaint as "William Craz." *See generally* Complaint.

## I. BACKGROUND

According to Plaintiff, "[o]n April 1, 2008 I was threaten by Patrol Officer William Craz. Patrol Officer called me a 'Nigger,' and also threaten to cause bodily harm to me. On April 2, 2008 I met with Seargent R.J. Helliergrass and was interogated, and racial harrassed. On or about April 5, 10, 15, May 6, 8, 10, 15, and June 6, 2008, I have been followed by the Bethlehem Police Department." Compl. at 2. Plaintiff's jurisdictional statement asserts that the Complaint is being brought pursuant to 42 U.S.C. § 1983. *Id.* at 1.

In lieu of filing an answer, on March 11, 2009, Defendants filed the Motion to dismiss presently before the Court. Mot. to Dismiss (Dkt. No. 13). Plaintiff also filed a Motion for summary judgment on February 24, 2009, which is now before the Court. Mot. for Sum. Judg. (Dkt. No. 12).

## II. DISCUSSION

### A. Defendants' Motion to Dismiss

**a. Standard of Review**

In order to withstand a motion to dismiss, "a [pleading] must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* ––– U.S. ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A party must plead with such factual detail so as to sufficiently " 'nudge [ ][its] claims ... across the line from conceivable to plausible.' " *Iqbal,* 129 S.Ct. at 1950 (quoting *Twombly,* 550 U.S. at 570). While stating a claim does not require the recitation of detailed factual allegations, it does, however, require facts sufficient to state a claim to relief that is *prima facie* plausible. *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 555). The Court must accept the allegations in the well-pleaded complaint as true, *Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), and draw all inferences in favor of the non-moving party. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1973); *Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 154 (2d Cir.2006); *King v. Am. Airlines, Inc.,* 284 F.3d 352, 356 (2d Cir.2002).

In assessing the legal sufficiency of the Complaint, the Court is mindful that La Grande is a *pro se* litigant and his submissions are subject to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). The Court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise

the strongest arguments they suggest.' " *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999); *see Hemphill v. New York,* 380 F.3d 680, 687 (2d Cir.2004) (" "It is well-established that 'when a plaintiff proceeds *pro se* the court is obligated to construe his pleadings liberally, particularly when they allege civil rights violations' ") (quoting *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004)). However, a plaintiff's *pro se* status "does not exempt [him] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck,* 710 F.2d 90, 92 (2d Cir.1983).

### b. Analysis

**\*2** Defendants move to dismiss Plaintiff's Complaint in its entirety pursuant to *Rules 12(b)(6) of the Federal Rules of Civil Procedure.* [3] Mot. to Dismiss (Dkt. No. 13) at 1. Defendants specifically argue that all causes of action against the Town of Bethlehem Police Department must be dismissed as it is not a legal entity subject to suit under 42 U.S.C. § 1983 and further that Plaintiff's entire Complaint should be dismissed for failing to state a cause of action. *Id.* at 4.

[3]     Defendants argue, alternatively, that Plaintiff's Complaint should be dismissed pursuant to 28 U.S.C. § 1915(e) and for failing to adhere to Rule 8(a) of the Federal Rules of Civil Procedure. The Court need not address these arguments as it is dismissing Plaintiff's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

### i. Town of Bethlehem Police Department

The Town of Bethlehem moves to dismiss Plaintiff's Complaint on the ground that it is not susceptible to suit under 42 U.S.C. § 1983. While a municipality may be susceptible to suit under 42 U.S.C. § 1983, a municipal police department is not. *See Walker v. Waterbury Police Dep't.,* 08–cv–959 (JG)(AKT), 2009 U.S. Dist. LEXIS 7933, at \*5, 2009 WL 261527 (E.D.N.Y. Feb. 4, 2009). "Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued." *Id.* (citing *Hall v. City of White Plains,* 185 F.Supp.2d 293, 303 (S.D.N.Y.2002)). Accordingly, claims asserted under 42 U.S.C. § 1983 will be dismissed against a municipality's police department. *See Walker,* 2009 U.S. Dist. LEXIS 7933, at \*5, 2009

WL 261527 (internal citation omitted); *see also Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999).

Here, Plaintiff has sued the Town of Bethlehem Police Department along with two individual officers of the department. *See generally* Compl. Plaintiff's Complaint asserts that it is brought pursuant to 42 U.S.C. § 1983 and does not provide any other basis for the claims. *Id.* at 1. Since the Bethlehem Police Department cannot be sued pursuant to 42 U.S.C. § 1983, Plaintiff's Complaint is dismissed as against the Town of Bethlehem Police Department.

Even assuming *arguendo* that Plaintiff's claims against the Town of Bethlehem Police Department can be construed as a claim against the Town of Bethlehem, Plaintiff's Complaint would still be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

In order to state a cause of action for municipal liability under 42 U.S.C. § 1983, "a plaintiff must allege that the municipality has adopted a custom or policy which is the moving force behind the [alleged constitutional violation]." *Zappala v. Albicelli,* 980 F.Supp. 635, 649 (N.D.N.Y.1997). A municipality cannot be held liable on the basis of *respondeat superior* and "a single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." *Campanaro v. City of Rome,* 999 F.Supp. 277, 281 (N.D.N.Y.1998); *see also Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993).

Plaintiff's Complaint is devoid of any allegations that the Town of Bethlehem had a policy or custom of violating constitutional rights, nor does plaintiff allege or even allude that the Town was deliberately indifferent to his constitutional rights. The complete failure to plead such warrants dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as the Complaint fails to state a cause of action for which relief can be granted under 42 U.S.C. § 1983. *See Campanaro,* 999 F.Supp. at 281; *Dwares,* 985 F.2d at 100.

### ii. Defendants Kraz and Helligrass

**\*3** La Grande's Complaint alleges that between April and June 2008, he was "racially harassed," "threatened" and "interrogated" by Defendants Kraz and Helligrass, two officers of the Bethlehem Police Department. Compl.

at 2. Specifically, La Grande alleges that on multiple occasions the officers addressed him with a racial epithet and followed him through town. *Id.* It is well settled in this Circuit that "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Murray v. Pataki,* No. 9:03–cv–1263, 2007 U.S. Dist. LEXIS 26959, at *22, 2007 WL 956941 (N.D.N.Y. Mar. 29, 2007) (Kahn, J.) (quoting *Gill v. Hoadley,* 261 F.Supp.2d 113, 129 (N.D.N.Y.2003)) (collecting cases). "[V]erbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Murray,* 2007 U.S. Dist. LEXIS, at * 22 (quoting *Moncrieffe v. Witbeck,* 2000 U.S. Dist. LEXIS, at *3, 2000 WL 949457 (N.D.N.Y. June 29, 2000)); *see also Zeno v. Cropper,* 650 F.Supp. 138, 141 (S.D.N.Y.1986) ("vile and abusive language ... no matter how abhorrent or reprehensible cannot form the basis for a § 1983 claim) (internal citation and quotation omitted). Further, "threats do not amount to violations of constitutional rights." *Murray,* 2007 U.S. Dist. LEXIS, at *23 (quoting *Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995)).

In this case, Plaintiff's claim for verbal harassment in the form of racial slurs and threats is not actionable under § 1983 and, therefore, fails to state a claim entitled to relief. Compl. at 2.

### B. Plaintiff's Motion for Summary Judgment

Even assuming *arguendo* that this Court did not grant Defendants' Motion to dismiss, Plaintiff's Motion for summary judgment would still be denied. Under the Local Rules, *"all* motions ... require a memorandum of law, supporting affidavit, and proof of service on all the parties." N.D.N.Y. L.R. 7.1(a) (emphasis added). "All memoranda of law shall contain a table of contents and, wherever possible, parallel citations." *Id.* at 7 .1(a)(1). Further "[a]ny motion for summary judgment shall contain a Statement of Material Facts ... *Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion." Id.* at 7 .1(a)(3) (emphasis in original).

Here, not only did the Plaintiff fail to submit a memoranda of law in support of his Motion for summary judgment and an affidavit but he also failed to submit a Statement of Material Facts. In fact, in his Motion for

summary judgment filed on February 24, 2009, Plaintiff explicitly stated, "I will provide this Court with a 'Law Memorandum' in support of my motion; such will contain applicable law, and case law. I will submit this to the Court on or before March 6, 2009." Mot. for Sum. Judg. at 1. To date, this Court has not received said memorandum of law. While this Court recognizes Plaintiff's *pro se* status, he has failed to comply with *all* of the Local Rules. *See Traguth v. Zuck,* 710 F.2d 90, 92 (2d Cir.1983) (a plaintiff's *pro se* status "does not exempt [him] from compliance with relevant rules of procedural and substantive law"). Accordingly, Plaintiff's Motion for summary judgment is denied for failing to comply with the relevant rules of procedure. *See, e.g.,* N.D.N.Y. L.R. 7.1(a), 7.1(a)(3).

### C. Amended Complaint

**\*4** Plaintiff also moves to amend his Complaint. Response (Dkt. No. 27). While *pro se* litigants are generally afforded wide latitude and an opportunity to amend, a District Court need not permit an amendment to a Complaint where it would be futile. *See Forman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (holding that although leave to amend should be freely given where justice so requires, a district court need not grant leave if amendment would be futile); *Acito v. Imcera Group, Inc.,* 47 F.3d 47, 55 (2d Cir.1995).

Here, Plaintiff's Complaint does not state any viable causes of action under 42 U.S.C. § 1983. Further, Plaintiffs Complaint does not state which, if any, of his constitutional rights were violated by Defendants nor does it plead any facts to establish municipal liability. Plaintiff's Complaint also does not plead any facts supporting his allegations that he was "racially harassed," "threatened" or "interrogated." Since, as the Court discussed above, none of the complained of actions provides the basis for a cognizable cause of action, leave to cure these defects would be futile. These deficiencies may have been excusable, albeit not cureable, had this Court not previously informed Plaintiff of the requirements for pleading a cause of action under 42 U.S.C. § 1983 against a municipality. *See La Grande v. Albany Police Dep't,* 1:07–CV–757 (Dkt. No. 4). [4] Given that leave to amend would be futile, this Court denies Plaintiff's request.

4    Notably, Plaintiff has also filed numerous Complaints in the Northern District, many of which include assertions of civil rights violations and racial

2009 WL 2868231

discrimination or harassment, wherein Plaintiff has been granted leave to amend his complaints. Plaintiff has filed eleven suits in the Northern District since 2000, including the instant matter. In fact, on May 12, 2008, Chief United States District Judge Norman A. Mordue entered an order enjoining Plaintiff from filing any further actions or pleadings in this district without the prior permission of the Chief Judge. Dkt. No. 6. This Order was entered based on a record of vexatious and frivolous pleadings previously filed by La Grande.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that Defendants' Motion to dismiss (Dkt. No. 13) is **GRANTED in its entirety;** and it is further

**ORDERED,** that Plaintiff's request to amend his Complaint (Dkt. No. 27) is **DENIED;** and it is further

**ORDERED,** that Plaintiff's Motion for summary judgment (Dkt. No. 12) is **DENIED in its entirety;** and it is further

**ORDERED,** that the Clerk serve a copy of this Decision and Order on all parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 2868231

---

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 4052286
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Sylvia JENKINS, Plaintiff,
v.
Mr. LIADKA, Syracuse Police Officer; Mr. Sands,
Syracuse Police Officer; John Doe, Syracuse Police
Officer; and Syracuse Police Dep't, Defendants.

No. 5:10–CV–1223 (GTS/DEP).
|
Sept. 13, 2012.

**Attorneys and Law Firms**

Sylvia Jenkins, Syracuse, NY, pro se.

Hon. Mary Anne Dougherty, Corporation Counsel for
City of Syracuse, Catherine Ena Carnrike, Esq., Assistant
Corporation Counsel, of Counsel, Syracuse, NY, for
Defendants.

*MEMORANDUM–DECISION and ORDER*

GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this *pro se* civil
rights action filed by Sylvia Jenkins ("Plaintiff") against
Mr. Liadka, Mr. Sands, John Doe, and Syracuse Police
Department ("Defendants"), is Defendants' motion to
dismiss Plaintiff's Complaint for insufficient service of
process pursuant to Fed.R.Civ.P. 12(b)(5) and/or for
failure to state a claim pursuant to Fed.R.Civ.P. 12(b)
(6). (Dkt. No. 13.) For the reasons set forth below,
Defendants' motion is granted in part and denied in part.

**I. RELEVANT BACKGROUND**

**A. Plaintiff's Complaint**
Generally, construed with the utmost of special
liberality, Plaintiff's Complaint asserts three claims
against Defendants arising from an investigatory stop
in September 2010, in Syracuse, New York: (1) a claim
that three Syracuse Police Officers unreasonably searched
her in violation of the Fourth Amendment; (2) a claim
that they unlawfully seized, and failed to return, her

personal property in violation of the Fourth, Fifth, and/
or Fourteenth Amendments; and (3) a claim that they
subjected her to excessive force in violation of the Fourth
Amendment. (*See generally* Dkt. No. 1 [Plf.'s Compl].)

Generally, in support of these claims, Plaintiff alleges as
follows: (1) on the evening of September 9, 2010, she
was stopped on Butternut Street in the City of Syracuse
by two officers, who questioned her regarding a call
they had received; (2) when she told the two police
officers that she did not know what they were talking
about and "attempted to go on about [her] business,"
the officers became "uptight, rude, [and] abnormal in
their conversations [and] behavior," and threatened her;
(3) the officers then proceeded to conduct a search of
"all [of Plaintiff and her] personal property," and, in
the process of doing so, twisted her arm and forced
her onto the front of their police vehicle; (4) a third
police officer arrived, and she was assaulted by all three
officers (hereinafter "Defendants"), who hit her on the
back and threw her onto the police vehicle; (5) following
the deprivation on September 9, 2010, Defendants denied
her a post-deprivation remedy through a combination of
threats, intimidation and/or nonresponsiveness; and (6)
Defendants took these actions against her intentionally
because they did not personally like her, given her previous
interactions with the Syracuse Police Department. (*Id.*)

Plaintiff further alleges that, as a result of this incident,
she suffered various injuries and losses, including (1) a
"tremendous setback in already trying to recover in an [sic]
grave overall manner of my life [and] lifestyle involving
officials internally [and] externally," (2) head and back
pain, and mental suffering, (3) loss of personal property,
and, (4) loss of employment. (*Id.*) As relief, Plaintiff
requests an award of twelve thousand dollars ($12,000) in
damages. (*Id.* at ¶ 6.)

Familiarity with the remaining factual allegations
supporting Plaintiff's three claims is assumed in this
Decision and Order, which is intended primarily for
review by the parties. (*See generally* Dkt. No. 1.)

**B. Defendants' Motion**
**\*2** On May 6, 2011, Defendants filed a motion to
dismiss. (Dkt. No. 13, Attach 2.) Generally, in support
of their motion, Defendants assert the following two
arguments: (1) because the Complaint was not served
within the time allowed by Fed.R.Civ.P. 4 or Local Rule

4.1 of the Local Rules of Practice for this Court, the Court lacks jurisdiction over Defendants in accordance with Fed.R.Civ.P. 4; and (2) the Complaint fails to state a claim upon which relief can be granted, because (a) the Complaint fails to identify what constitutional rights Plaintiff is attempting to vindicate, (b) even if the Complaint has sufficiently identified a constitutional violation, the Complaint fails to allege facts plausibly suggesting the personal involvement of the individual Defendants in any such constitutional violation, (c) the City of Syracuse Police Department does not have the legal capacity to be sued, (d) even if Plaintiff's Complaint can be liberally construed as attempting to assert a claim against the City of Syracuse, the Complaint fails to allege facts plausibly suggesting that the individual Defendants' actions the result of a city policy or custom sufficient to confer municipal liability upon the City, (e) the Fifth Amendment does not govern a plaintiff's deprivation-of-property claim against state actors, (f) the Complaint fails to allege facts plausibly suggesting that force was used or that if force was used it was excessive for purposes of a Fourth Amendment claim, and (g) based on Plaintiff's factual allegations, Defendants Liadka and Sands are protected from liability as a matter of law by the doctrine of qualified immunity. (*See generally* Dkt. No. 13, Attach. 2.)

On June 2, 2011, Plaintiff filed a response to Defendants' motion. Generally, Plaintiff's response, which is handwritten and three pages in length, states that she "definitely oppose[s] [Defendants'] request" for the dismissal of her Complaint. (*See generally* Dkt. No. 17.) However, Plaintiff's response does not address the legal arguments asserted by Defendants for the dismissal of Plaintiff's Complaint. (*Compare* Dkt. No. 17 *with* Dkt. No. 13, Attach. 2.) Although Plaintiff's response was submitted two days after the expiration of the response deadline, the Court has accepted it, out of an extension of special solicitude to her as a *pro se* civil rights litigant.

In addition, Plaintiff has filed three letters to the Court on the following dates: July 6, 2011, August 22, 2011, and January 13, 2012. (Dkt. No. 18–20.) Generally, these letters contain assertions that Plaintiff believes that the police are following her, treating her negatively, and responding unsatisfactorily to her telephone calls. (*Id.*) To the extent that these three letters are intended to constitute papers in opposition to Defendants' motion, the Court will

not consider them, because (1) they are not responsive to the motion, and/or (2) they were not submitted in a timely manner. Moreover, to the extent that these three letters are intended to constitute a request for relief, the Court will not consider them, because do not state the relief sought, state with particularity the grounds for seeking the order, and attach a memorandum of law and affidavit, as required by Fed.R.Civ.P. 7(b) and Local Rule 7.1 of the Local Rules of Practice for this Court.

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Motions to Dismiss for Insufficient Service of Process

**\*3** Rule 4(m) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court-on motion or its own after notice to the plaintiff-must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).

The Local Rules of Practice for this Court shorten the service requirements under Fed.R.Civ.P. 4. Specifically, Local Rule 4.1(b) requires "service of process upon all defendants within sixty (60) days of the filing of the complaint. This expedited service is necessary to ensure adequate time for pretrial discovery and motion practice. In no event shall service of process be completed after the time specified in Fed.R.Civ.P. 4." N.D.N.Y. L.R. 4.1(b).

### B. Legal Standard Governing Motions to Dismiss for Failure to State Claim

It has long been understood that a defendant may base a motion to dismiss for failure to state a claim upon which relief can be granted on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under

Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

Because such motions are often based on the first ground, a few words on that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n. 17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F.Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

**\*4** Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id .* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*[1]

[1]    It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F.Supp.2d 214 & n. 35 (explaining holding in *Erickson* ).

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works.

U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not show[n]-that the pleader is entitled to relief." *Iqbal,* 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* it "does not impose a probability requirement." *Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12.[2] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[3] Stated more simply, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28.

2      *See Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

3      *See Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

**\*5** Finally, a few words are appropriate regarding what documents are considered on a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). The court may consider the following documents without triggering the summary judgment standard: "(1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference into the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the complaint." *Planck v. Schenectady Cnty.,* 12–CV–0336, 2012 WL 1977972, at \*5 (N.D.N.Y. June 1, 2012) (Suddaby, J.). Moreover, "a pro se plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of [her] complaint-to the extent those papers are consistent with the allegations in the complaint." *Planck,* 2012 WL 1977972, at \*5.

### C. Legal Standard Governing Unopposed Motions

In this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b) (3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein...."); *Rusyniak v. Gensini,* 07–CV–0279, 2009 WL 3672105, at \*1, n. 1 (N.D.N.Y.Oct.30, 2009) (Suddaby, J.) (collecting cases); *Este–Green v. Astrue,* 09–CV–0722, 2009 WL 2473509, at \*2 & n. 3 (N.D.N.Y. Aug,7, 2009) (Suddaby, J.) (collecting cases).

### D. Legal Standards Governing Plaintiff's Claims

Because the Court has, in its Decision and Order of March 7, 2011, addressed the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not again recite, in their entirety, those legal standards in this Decision and Order, 9 which is

Jenkins v. Liadka, Not Reported in F.Supp.2d (2012)
Case 6:19-cv-00477-TJM-TWD    Document 5    Filed 06/04/19    Page 47 of 90
2012 WL 4052286

intended primarily for review by the parties. (*See generally* Dkt. No. 5 [Decision and Order].)

### E. Legal Standards Governing Defendants' Defenses

#### 1. Defense of Lack of Separate Identity

"Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality, and therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dept.,* 224 F.Supp.2d 463, 477 (E.D.N.Y.2002). "Pursuant to Fed.R.Civ.P. 17, New York governs the capacity of a police department to sue or be sued. In New York, police departments like the defendant, which are merely administrative arms of a municipal corporation, do not have a legal identity separate and apart from the town." *Loria v. Irondequoit* 775 F.Supp. 599, 606 (W.D.N.Y.1990). While a municipality can sue or be sued, the police department, which does not exist separate from that municipality, can not. *Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999).

#### 2. Defense of Limited Municipal Liability

**\*6** It is well established that "[a] municipality may not be held liable in a Section 1983 action for the conduct of a lower-echelon employee solely on the basis of *respondeat superior*." [4] "Rather, to establish municipal liability under § 1983 for unconstitutional acts by a municipality's employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy ." [5] "Thus, to hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to ... prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." [6]

[4]    *Powell v. Bucci,* 04–CV–1192, 2005 WL 3244193, at *5 (N.D.N.Y. Nov.30, 2005) (McAvoy, J.); *see also Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."); *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) ("[A] [municipality] may not be held for the actions of its employees or agents under a theory of *respondeat superior*." ).

[5]    *Powell,* 2005 WL 3244193, at *5; *Monell,* 436 U.S. at 690–691 ("[L]ocal governments ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."); *Batista,* 702 F.2d at 397 ("[M]unicipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to a governmental custom, policy, ordinance, regulation, or decision."); *Smith v. City of New York,* 290 F.Supp.2d 317, 321 (S.D.N.Y.2003) ("In order to establish the liability of [municipal] defendants in an action under § 1983 for unconstitutional acts by [its] employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy.").

[6]    *Batista,* 702 F.2d at 397, *accord, Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995), *McKeon v. Daley,* 101 F.Supp.2d 79, 92 (N.D.N.Y.2000) (Hurd, J.), *Merriman v. Town of Colonie, NY,* 934 F.Supp. 501, 508 (N.D.N.Y.1996) (Homer, M.J.); *Douglas v. Cnty. of Tompkins,* 90–CV–0841, 1995 WL 105993, at *12 (N.D.N.Y. March 2, 1995) (McCurn, J.), *Keyes v. Cnty. of Albany,* 594 F.Supp. 1147, 1156 (N.D.N.Y.1984) (Miner, J.).

With regard to the first element (the existence of a policy or custom), a "[p]laintiff may establish the 'policy, custom or practice' requirement by demonstrating: (1) a formal policy officially endorsed by the municipality ...; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question ...; (3) a practice so consistent and widespread that it constitutes a 'custom or usage' sufficient to impute constructive knowledge to the practice of policymaking officials ...; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to 'deliberate indifference' to the rights of those who come in contact with the municipal employees...." [7] With regard to the second element (causation), a plaintiff must show "a direct causal link" or "an affirmative link" between the municipal policy or custom and the alleged constitutional deprivation (i.e., that the policy or custom was the "moving force" behind the deprivation). [8]

[7]    *Dorsett–Felicelli, Inc.,* 371 F.Supp.2d 183, 194 (N.D.N.Y.2005) (Kahn, J.) (citing three Supreme Court cases for these four ways), *accord, Dunbar*

*v. Cnty. of Saratoga,* 358 F.Supp.2d 115, 133–134 (N.D.N.Y.2005) (Munson, J.); *see also Clayton v. City of Kingston,* 44 F.Supp.2d 177, 183 (N.D.N.Y.1999) (McAvoy, J.) (transposing order of second and third ways, and citing five more Supreme Court cases).

8    *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ("[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."); *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823, n. 8, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) ("The fact that municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between [for example] the training inadequacies alleged, and the particular constitutional violation at issue."); *Monell,* 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983. Since this case unquestionably involves official policy as the moving force of the constitutional violation [at issue] ... we must reverse the judgment below."); *Vippolis v. Village of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985) ("A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that ... an official policy or custom [was] the cause of the deprivation of constitutional rights.... [T]he plaintiff must establish a causal connection-an affirmative link-between the policy and the deprivation of his constitutional rights.") (internal quotation marks and citation omitted); *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiff's injury, *Monell* prohibits a finding of liability against the City."); *Powell,* 2005 WL 3244193, at *5 ("Ultimately, the plaintiff must demonstrate a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation.") [internal quotation marks and citation omitted].

### 3. Defense of Qualified Immunity

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800,

815 [1982] ). As a result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation confronted." *Sira v. Morton,* 380 F.3d 57, 68–69 (2d Cir.2004) [citations omitted], *accord, Higazy v. Templeton,* 505 F.3d 161, 169, n. 8 (2d Cir.2007) [citations omitted].

In determining the second issue (i.e., whether it would be clear to a reasonable official that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*7   *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991) [citations omitted], *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992). [9] "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton,* 505 F.3d 161, 169–70 (2d Cir.2007) [citations omitted]. [10] This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). [11] As the Supreme Court has explained,

9    *See also Pena v. DePrisco,* 432 F.3d 98, 115 (2d Cir.2005); *Clue v. Johnson,* 179 F.3d 57, 61 (2d Cir.1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir.1997); *Shechter v. Comptroller of City of New*

*York,* 79 F.3d 265, 271 (2d Cir.1996); *Rodriguez v. Phillips,* 66 F.3d 470, 476 (2d Cir.1995); *Prue v. City of Syracuse,* 26 F.3d 14, 17–18 (2d Cir.1994); *Calhoun v. New York State Division of Parole,* 999 F.2d 647, 654 (2d Cir.1993).

10    *See also Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.' ") [citation omitted]; *Davis v. Scherer,* 468 U.S. 183, 190, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

11    *See also Malsh v. Correctional Officer Austin,* 901 F.Supp. 757, 764 (S.D.N.Y.1995) [citing cases]; *Ramirez v. Holmes,* 921 F.Supp. 204, 211 (S.D.N.Y.1996).

[T]he qualified immunity defense ... provides ample protection to all but the plainly incompetent or those who knowingly violate the law.... Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

*Malley,* 475 U.S. at 341.[12]

12    *See also Hunter v. Bryant,* 502 U.S. 224, 299, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") [internal quotation marks and citation omitted].

## III. ANALYSIS

### A. Whether Plaintiff's Complaint Should Be Dismissed for Failure to Serve Process in Timely Manner

After carefully considering the matter, the Court must answer this question in the negative. By Defendants' own calculations, Plaintiff's Complaint was served on April 18, 2011–a mere 42 days after the Court granted Plaintiff's motion to proceed *in forma pauperis,* approved the filing of her Complaint, and directed the Clerk of the Court to issue summonses and forward them with the Complaint to the United States Marshal's Service, for service on Defendants. (Dkt. No. 5 [Decision and Order filed March 7, 2011].) Indeed, Defendants acknowledge that Plaintiff completed the Civil Summonses and USM285 form, and returned them to the Clerk's Office (so that the Clerk's Office could forward them to the U.S. Marshal's Service for service of Plaintiff's Complaint) less than eight days after receiving them from the Clerk's Office. (Dkt. No. 13, Attach. 1, at ¶¶ 6–7; Dkt. No. 13, Attach. 2, at 9 [attaching page "8" of Defs.' Memo. of Law]; *see also* Dkt. Nos. 6, 8.) After that point in time, service was largely if not entirely outside of Plaintiff's control.

Under the circumstances, the Court finds that good cause exists to extend the deadline for service by 42 days. The Court notes that a contrary conclusion (e.g., a conclusion that Plaintiff had to serve her Complaint by December 13, 2010 pursuant to Local Rule 4.1, or even February 11, 2011 pursuant to Fed.R.Civ.P. 4) would render meaningless the Court's directive to the Clerk of the Court, on March 5, 2011, to take sufficient action to enable the United States Marshal's Service to effect service for Plaintiff.

### B. Whether Plaintiff's Complaint Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted

### 1. Whether Plaintiff's Complaint Should Be Dismissed for Failing to Sufficiently Identify What Constitutional Rights She Is Attempting to Vindicate

**\*8**  After carefully considering the matter, the Court must answer this question in the negative. In construing the pleadings of a *pro se* civil rights litigant in this Circuit, a district court's imagination should be limited only by the plaintiff's factual allegations, not by the legal claims set out in his or her pleadings. *See Phillips v. Girdich,* 408 F.3d 124, 130 (2d Cir.2005) ("We leave it for the district court to determine what other claims, if any, Phillips has raised. In so doing, the court's imagination should be limited only by Phillips' factual allegations, not by the legal claims set out in his pleadings.").

Here, based on Plaintiff's (albeit scant and confused) factual allegations, the Court can imagine that she is

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.        7

attempting to assert the following three claims: (1) a claim of an unreasonable search under the Fourth Amendment; (2) a claim of an unlawful seizure of, and failure to return, her personal property under the Fourth, Fifth and/or Fourteenth Amendments; and (3) a claim of excessive force under the Fourth Amendment.

**2. Whether Plaintiff's Claims Against the Individual Defendants Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Their Personal Involvement in the Constitutional Violations Alleged**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 13 [attaching page "12" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. *See, supra,* Part III.C. of this Decision and Order.[13] Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, and finally, even when construed with the utmost of special liberality, the Complaint does not identify the precise location of the incident, which officers were responsible for violating her rights, how she suffered the head injury she alleges, what property was taken from her, and how Defendants frustrated her efforts to recover that property. *See Vogeler v. Colbath,* 04–CV–6071, 2005 U.S. Dist. LEXIS 44658, at *29, 2005 WL 2482549 (S.D.N.Y. Oct. 6, 2005) ("Plaintiffs must also allege ... the personal involvement of the Defendant in the actions underlying their claim.").[14]

[13]    Under the circumstances, the Court finds that Plaintiff had sufficient notice of the consequences of failing to respond to the arguments asserted in Defendants' motion. For example, on October 14, 2010, Plaintiff was given a courtesy copy of the District's *Pro Se* Handbook and a courtesy copy of the Local Rules of Practice for the Northern District of New York. (Dkt. No. 4.) In addition, on May 6, 2011, Defendants advised Plaintiff of her need to respond to their arguments. (Dkt. No. 15.) Also, Plaintiff had extensive experience as a *pro se* civil rights litigant in this District, before responding to

the motion in question. *See, infra,* Part III.D. of this Decision and Order.

[14]    Indeed, the Court notes that one of the officers that Plaintiff lists in her Complaint has not been identified. In a prior decision by the Court, Plaintiff was ordered to take reasonable steps to ascertain the identity of the unnamed officer, immediately notify the Court, amend her complaint to include the identity of the third Defendant, and also to have that officer served. (Dkt. No. 5, at 14.) Because Plaintiff has not done so, her alleged physical injuries remain attributable to an unidentified person.

For all of these alternative reasons, Plaintiff's claims against the individual Defendants are dismissed.

**3. Whether the Syracuse Police Department Should Be Dismissed as a Defendant**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach 2, at 13.) The Court would add only the following three brief points.

**\*9**  First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, and finally, "as Plaintiff has been told several times, under New York State law, departments, like the Onondaga County Sheriff's Department, that are merely administrative arms of a municipality, do not have a legal identity separate from the municipality and may not sue or be sued." *Jenkins v. Onondaga Cnty. Sheriff's Dep't,* 12–CV–0855, Report–Recommendation, at 5 (N.D.N.Y. filed June 28, 2012) (Baxter, J.) (citing *Hayes v. Cnty. of Sullivan,* 07–CV–0667, 2012 WL 1129373, at *24 [S.D.N.Y. March 30, 2012] ). Because the Syracuse Police Department is merely an administrative arm of the City of Syracuse, it is not a proper defendant in this case. The real party in interest is the City of Syracuse itself.

For all of these alternative reasons, the Syracuse Police Department dismissed as a Defendant.

**4. Whether, Even if the City of Syracuse Were Substituted for the Police Department, Plaintiff's**

### Claims Against the City Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Municipal Liability

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 14–15 [attaching pages "13" and "14" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, even when it is construed with the utmost of special liberality, Plaintiff's Complaint has not alleged facts plausibly suggesting a widespread policy or custom promulgated by the municipal policy maker necessary to hold the City liable for her injuries. As indicated above in Part II.E.2. of this Decision and Order, Plaintiff must allege facts plausibly suggesting that the municipality "has adopted a 'custom' or 'policy' which is the 'moving force' behind [the violation]." *Zappala v. Albicelli,* 980 F.Supp. 635, 639 (N.D.N.Y.1997) (Scullin, J.) (citing, *inter alia, Monell v. Dept. of Soc. Servs. of City of New York,* 436 U.S. 658, 689 [1978] ). However, Plaintiff has not alleged *any* official policy or custom adopted by the City of Syracuse or its Police Department,[15] let alone one responsible for the alleged injuries she received. Because *Monell* prohibits the finding of liability against a City when there is no causal connection between a municipal policy and a resulting injury, Syracuse City Police Department cannot be responsible for Plaintiff's alleged injuries. *Monell,* 436 U.S. at 692. As a result, the City of Syracuse cannot be maintained as a Defendant in this action, and Plaintiff's Section 1983 claims against it are dismissed.

[15]    In addition to not alleging facts plausibly suggesting the existence of a department-wide policy or custom, Plaintiff has not alleged facts plausibly suggesting that Officers Liadka, Sands, and the unnamed officer created or promulgated that policy, or even that they were final policymakers. "A municipal official that exercises discretion, whether it be in a constitutional or unconstitutional manner, in an area of which that official is not the final policymaker, cannot, by

itself, establish municipal liability." *Clayton v. City of Kingston,* 44 F.Supp.2d 177, 184 (N.D.N.Y.1999) (McAvoy, C.J.).

**\*10**  For all of these reasons, Plaintiff's claims against the City of Syracuse Police Department and/or the City of Syracuse are dismissed on this alternative ground.

### 5. Whether, in the Alternative, Plaintiff's Deprivation–of–Property Claim Should Be Dismissed to the Extent It Is Grounded on the Fifth Amendment

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 16–17 [attaching pages "15" and "16" of Defs.' Memo. of Law].) The Court would add only the following four brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, a takings claim is not ripe where a state remedy is potentially available. *Vandor Inc. v. Militello,* 301 F.3d 37, 39 (2d. Cir.2002). As the Supreme Court has explained,

> An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.

*Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Police are not required to provide the owner with notice for state-law remedies, which are "established by published, generally available state

statutes and case law." *City of W. Covina v. Perkins,* 525 U.S. 234, 240–241, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999). "Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures that are available to him. The City need not take other steps to inform him of his options." *City of W. Covina,* 525 U.S. at 241. Here, Plaintiff has not alleged facts plausibly suggesting that she attempted to recover her property in the proper manner (or even what property was taken). Fourth, and finally, Plaintiff does not allege facts suggesting that her property was taken for public use in an unconstitutional manner that would require her to be paid just compensation. Instead, Plaintiff alleges that, after she attempted to escape from their investigation and was restrained by officers, she was searched and had property taken from her.

For all of these alternative reasons, Plaintiff's deprivation-of-property claim is dismissed to the extent that it is grounded on the Fifth Amendment.

### 6. Whether, in the Alternative, Plaintiff's Excessive Force Claim Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Either that Force Was Used or that Any Such Force Was Excessive

 **\*11** After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 17–18 [attaching pages "16" and "17" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, as stated in the Court's Decision and Order of March 7, 2011, in evaluating a Fourth Amendment excessive-force claim, "courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." (Dkt. No. 5, at 13.) [16] Here, Plaintiff alleges the following facts, which could be construed as plausibly suggesting that, at the time the incident occurred, she had given Defendants probable cause to use the force at

issue against her: (1) Defendants were dispatched to that location regarding a problem; (2) Defendants specifically chose to question Plaintiff about the incident; (3) Plaintiff was attempting to get away from Defendant when they were attempting to question her; (4) she acted in such a way as to cause Defendants to become "worked up"; (5) it became necessary for a third unnamed officer to step in and assist Defendants Sands and Liadka in controlling Plaintiff. (Dkt. No. 1, at ¶ 4 & Attachment.) Simply stated, it is plausible, based on Plaintiff's factual allegations, that the amount of force used by the officers to pull her hands behind her back and detain her was necessary to keep her from getting away and "going about [her] business." (*Id.* at ¶ 4.) It is important to note that Plaintiff does not allege facts plausibly suggesting any physical injury other than vague "head & back pains." (*Id.* at ¶ 5.) [17]

[16]   More specifically, the standard governing constitutional excessive-force claims against government officials in "the course of making an arrest, investigatory stop, or other seizure" of a person is the Fourth Amendment's objective reasonableness standard. *Graham v. Connor,* 490 U.S. 386, 388, 391, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Pursuant to this standard, three elements must be objectively examined to determine whether excessive force was used for Fourth Amendment violations: "(1) the need for the application of force; (2) the relationship between that need and the amount of force that was used; and (3) the extent of the injury inflicted." *Graham,* 490 U.S. at 390, 397. It is essential to look at surrounding circumstances in each case, and analyze "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The "extent of intrusion on the suspect's rights" must be balanced against the "importance of governmental interests." *Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

[17]   More specifically, Plaintiff's Complaint does not allege facts plausibly suggesting that her injuries were significant, how long the pain lasted, or that medical treatment was necessary (or even sought) following the incident. *See Smith v. City of New York,* 04–CV–3286, 2010 U.S. Dist. LEXIS 88774, at \*27, 2010 WL 3397683 (S.D.N.Y. Aug. 27, 2010) ("Courts in this Circuit have consistently held that an injury is de minimis when it is temporary and/or minor in severity.") (collecting cases).

For all of these reasons, Plaintiff's excessive force claim is dismissed on this alternative ground.

### 7. Whether, in the Alternative, Plaintiff's Claims Against the Individual Defendants Should Be Dismissed Because, Based on the Factual Allegations of the Complaint, Defendants Are Protected from Liability as a Matter of Law by the Doctrine of Qualified Immunity

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 19–20 [attaching pages "18" and "19" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would the reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, as indicated above in Part I.E.3. of this Decision and Order, "[u]nder federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Jenkins v. City of New York,* 478 F.3d 76, 87 (2d Cir.2007) (internal quotations and other citations omitted). Here, based on Plaintiff's own factual allegations, it is plausible that police officers of reasonable competence could disagree as to whether Defendants' actions were unlawful (e.g., given their need to question her, and her attempt to flee the scene).

**\*12** For all of these reasons, Plaintiff's claims against the individual Defendants are dismissed on this alternative ground.

### C. Whether the Court Should Give Plaintiff an Opportunity to File an Amended Complaint Before Dismissing This Action

Generally, when a district court dismisses a *pro se* action, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank,* 171 F.3d 794, 796 (2d Cir.1999). However, an opportunity to amend is not required where the defects in the plaintiff's claims

are substantive rather than merely formal, such that any amendment would be futile. As the Second Circuit has explained, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (citations omitted), *accord, Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (denial not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990) ("[W]here ... there is no merit in the proposed amendments, leave to amend should be denied").

This rule applies even to *pro se* plaintiffs. *See, e.g., Cuoco,* 222 F.3d at 103; *Brown,* 1997 WL 599355, at \*1. As explained above in Part II.B. of this Decision and Order, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12; rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.

Here, the Court has some difficulty finding that the referenced defect in Plaintiff's Complaint is merely formal. Nor is the Court confident that granting Plaintiff an opportunity to amend her Complaint would be productive. The Court notes that the errors made by Plaintiff in this action were previously made by her, and not corrected, on many occasions. Plaintiff has been ordered numerous times to file amended complaints at risk of dismissal of her case. [18] Of the seven times an amended complaint was required, Plaintiff submitted an amended complaint only

2012 WL 4052286

three times. [19] Two of these were one page documents which did not state a claim upon which relief could be granted and were rejected by the Court, and the other did not correct the deficiencies of the original complaint. [20] Plaintiff did not comply with the Court's order to amend her complaint at all on four occasions. [21] In one case, Plaintiff was given an additional thirty day period to file her amended complaint after she failed to do so within the first 30 day period granted to her. *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006). Similarly, in a separate case, Plaintiff did not follow up on her original claim because she failed to appear for three hearings the Court rescheduled despite warnings of her need to comply with the Court Orders. *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005). All seven of these cases resulted in dismissal, most for failure to prosecute, failure to comply with Court Orders, or failure to state a claim. Five of Plaintiff's cases were not given leave to amend because granting such leniency would have been futile. [22]

[18]  *Jenkins v. Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan 17, 2006); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins v. Onondaga Sheriff's Dep't.,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Sheriff's Dep't.,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 12–CV–0855 (N.D.N.Y. filed May 23, 2012).

[19]  *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins v. Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan 17, 2006); *Jenkins v. Sheriff's Dep't.,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007).

[20]  *Id.*

[21]  *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Onondaga Sheriff's Dep't.,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 12–CV–0855 (N.D.N.Y. filed May 23, 2012)

[22]  *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v.*

*Mohawk Corr. Facility,* 06–CV–1167 (N.D.N.Y. filed Sept. 29, 2006); *Jenkins v. Sheriff's Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. USA,* 09–CV0603 (N.D.N.Y. filed May 11, 2009); *Jenkins v. Rice,* 11–CV–1037 (N.D.N.Y. filed Aug. 31, 2011).

**\*13** However, the Court is mindful of the special solicitude that should be afforded to *pro se* civil rights litigants. For these reasons, before the Court dismisses Plaintiff's action, the Court will afford her an opportunity to file an Amended Complaint correcting the above-described pleading defects within thirty (30) days from the date of the filing of this Decision and Order.

If Plaintiff submits an Amended Complaint, she is encouraged to describe the acts of misconduct alleged therein and identify each individual who participated in the misconduct. Moreover, Plaintiff is advised that her Amended Complaint must be a complete pleading that will replace and supersede her original Complaint in its entirety. Finally, Plaintiff is cautioned that, if she fails to file, in a timely fashion, an Amended Complaint that successfully states a claim upon which relief can be granted, her action will be dismissed with prejudice without further Order of the Court.

### D. Whether This Case Should Be Forwarded to the Chief Judge with a Recommendation that an Anti–Filing Injunction Order Be Issued Against Plaintiff

A review of Plaintiff's litigation history on Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service reveals that, before filing the current action on October 13, 2010, she filed thirteen *pro se* civil actions in this District alone-twelve of which have been dismissed and the thirteen of which is being considered for dismissal. [23] A review of Plaintiff's litigation history has caused the undersigned to believe that (1) Plaintiff lacks a good-faith expectation in prevailing in her lawsuits, (2) she is vexatious and indeed incorrigible when proceeding pro se, (3) she has caused needless expense to other parties and placed an unnecessary burden on the Court and its personnel, and (4) no lesser sanctions (e.g., such as dismissal or chastisement) would be adequate to protect the Court and other parties.

[23]  *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins Comm'r of Soc. Sec. Admin.,* 06–CV–0059

(N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. City of Syracuse,* 06–CV–1005 (N.D.N.Y. filed Aug. 21, 2006); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167 (N.D.N.Y. filed Sept. 29, 2006); *Jenkins v. City of Syracuse,* 07–CV–0930 (N.D.N.Y. filed Sept. 7, 2007); *Jenkins v. Sheriff's Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. USA,* 09–CV–0603 (N.D.N.Y. filed May 11, 2009); *Jenkins v. Rice,* 11–CV–1037 (N.D.N.Y. filed Aug. 31, 2011); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855 (N.D.N.Y filed May 23, 2012).

For example, eight of Plaintiff's actions have resulted in a dismissal for failure to state a claim or frivolousness, another has resulted in the pending recommendation of a dismissal on that ground, three others have resulted in a dismissal for lack of subject-matter jurisdiction, and another has resulted in a dismissal for failure to prosecute.[24]

[24] *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457, Decision and Order (N.D.N.Y. filed Apr. 25, 2006) (Scullin, J.); *Jenkins Comm'r of Soc. Sec. Admin.,* 06–CV–0059, Decision and Order (N.D.N.Y. filed March 29, 2007) (Hurd, J.); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060, Memorandum–Decision and Order (N.D.N.Y. filed April 14, 2006) (Scullin, J.); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621, Decision and Order (N.D.N.Y. filed July 5, 2006) (Kahn, J.); *Jenkins v. City of Syracuse,* 06–CV–1005, Order (N.D.N.Y. filed Oct. 5, 2006) (Mordue, C.J.); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092, Decision and Order, (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167, Decision and Order (N.D.N.Y. filed Oct. 12, 2006) (Mordue, C.J.); *Jenkins v. City of Syracuse,* 07–CV–0930, Decision and Order (N.D.N.Y. filed Oct. 7, 2007) (Mordue, C.J.); *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order (N.D.N.Y. filed Nov. 21, 2007) (Hurd, J.); *Jenkins v. Murphy,* 08–CV–0921, Order (N.D.N.Y. filed Oct. 14, 2008) (McCurn, J.); *Jenkins v. USA,* 09–CV–0603, Decision and Order (N.D.N.Y. filed May 28, 2009) (McAvoy, J.); *Jenkins v. Rice,* 11–CV–1037, Decision and Order (N.D.N.Y. filed Oct. 11, 2011) (Kahn, J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855,

Report–Recommendation (N.D.N.Y filed June 28, 2012) (Baxter, M.J.).

Moreover, Plaintiff has sued the Onondaga County Sheriff's Department four times.[25] As a result, she has been repeatedly instructed on the legal standard for suing a municipality. For example, on October 6, 2006, she was specifically informed of the need to establish a custom or policy which is the moving force behind a resulting injury. *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 06–CV–1092, Decision and Order, at 4 (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.). However, despite receiving that specific information, she has *repeatedly* continued to file improper claims against the Onondaga County Sheriff's Department.[26]

[25] *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Sheriff's Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855 (N.D.N.Y filed May 23, 2012).

[26] *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order at 3 (N.D.N.Y. filed Oct. 2, 2007) (Hurd, J.); *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order at 2 (N.D.N.Y. filed Nov. 21, 2007) (Hurd, J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV0855, Decision and Order, at 4–5 (N.D.N.Y filed May 24, 2012) (Baxter, M.J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855, Report–Recommendation, at 5–6 (N.D.N.Y filed June 28, 2012) (Baxter, M.J.); *see also, supra,* Part III.B.4. of this Decision and Order.

Finally, Plaintiff has repeatedly had to be ordered to comply with the Local Rules, and reminded that all factual allegations should be contained in the complaint itself, that paragraphs ought to be numbered, and that the individuals she alleges violated her rights must be identified. *See, e.g., Jenkins v. Dep't Corr. Servs.,* 06–CV–0621, Decision and Order (N.D.N.Y. filed July 5, 2006) (Kahn, J.); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092, Order (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.).

**\*14** Under such circumstances, a federal district court may impose reasonable filing restrictions on a *pro se* litigant in that particular court, pursuant to 28 U.S.C. § 1651(a) and its inherent authority to control and manage its own docket so as to prevent abuse in its proceedings. For example, a federal district court may,

after providing an appropriate opportunity to be heard, prohibit a vexatious litigant from filing, in that particular court, any action *pro se* (that is, without counsel), without prior leave of that court. *See Hong Mai Sa v. Doe,* 406 F.3d 155, 158 (2d Cir.2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system.") [internal quotations and citations omitted]; *In re Sassower,* 20 F.3d 42, 44 (2d Cir.1994) (where a *pro se* plaintiff has demonstrated a "clear pattern of abusing the litigation process by filing vexatious and frivolous complaints," a "leave to file" requirement may be instituted by the court as an appropriate sanction); *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998) ( "[T]he district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard."); *Azubuko v. Unknown Boston Police Officers,* 08–CV–0330, 2008 WL 1767067, at * 1 (N.D.N.Y. Apr.16, 2008) (McCurn, J.).

For all of these reasons, this case is forwarded to Chief United States District Judge Gary L. Sharpe with a recommendation that an Anti–Filing Injunction Order be issued against Plaintiff.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 13) is **GRANTED in part** and **DENIED in part;** and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is conditionally **DISMISSED;** and it is further

**ORDERED** that Plaintiff is permitted to file an Amended Complaint within **THIRTY (30) DAYS** of the filing date of this Order; and it is further

**ORDERED** that, *if Plaintiff fails to timely file an Amended Complaint, the Clerk shall enter judgment dismissing this action without further Order of this Court;* and it is further

**ORDERED** that, upon filing of the Amended Complaint, this file in this matter be returned to the Court for further review; and it is further

**ORDERED** that the Clerk of the Court is directed to forward this case to Chief United States District Judge Gary L. Sharpe with the recommendation of the undersigned that an AntiFiling Injunction Order be issued against Plaintiff.

*The Court hereby certifies, for purposes of 28 U.S.C. § 1915(a) (3), that any appeal taken from the Court's final judgment in this action would not be taken in good faith.*

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 4052286

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 2487253
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Carlos PETERSON, Plaintiff,
v.
Judge Donald E. TODD, and D.A.
William Fitzpatrick, Defendants.

No. 5:12−CV−1371 (MAD/DEP).
|
June 7, 2013.

**Attorneys and Law Firms**

Carlos Peterson, Dannemora, NY, pro se.

**MEMORANDUM–DECISION AND ORDER**

MAE A. D'AGOSTINO, District Judge.

### I. INTRODUCTION

**\*1** Plaintiff has brought a civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Todd and Fitzpatrick, the judge and district attorney, respectively, who presided and prosecuted over his criminal proceedings. Having reviewed the parties submissions, the Court finds that Plaintiff's case must be dismissed with prejudice because his conviction has not been independently vacated, or, alternatively, because both Defendants are entitled to absolute immunity.

### II. BACKGROUND

**A. Plaintiff's Complaint**
In a civil rights complaint dated September 7, 2012, Plaintiff *pro se* alleges that Defendants committed malicious prosecution and fraud. *See* Dkt. No. 1 at ¶ 7. Plaintiff does so while he remains confined in the Clinton Correction Facility, located in Dannemora, New York. *See* Dkt. No. 1 at ¶ 2. Specifically, Plaintiff alleges that Defendants did the following: (1) permitted the introduction of false testimony in order to deny motions to vacate his conviction; (2) made material,

discriminatory misstatements of the law; and (3) failed to disclose potential exculpatory evidence. *See id.* at 4. Plaintiff requests actual and punitive damages in the sum of $15,000,000.

In a Report, Recommendation and Order dated February 7, 2013, Magistrate Judge Peebles recommended that the Court dismiss with prejudice Plaintiff's claims against both Defendant Fitzpatrick and Defendant Todd pursuant to *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), or, alternatively, on the basis of prosecutorial and judicial immunity, respectively. *See* Dkt No. 7 at 9–15.

**B. Plaintiff's Objection to Magistrate Judge Peebles' Report, Recommendation and Order**
Plaintiff objects to Magistrate Judge Peebles' Order and Report–Recommendation. Firstly, Plaintiff claims that his original complaint against Defendant Todd had nothing to do with his criminal trial, which he says was presided over by Judge William D. Walsh, not Defendant Todd. *See* Dkt. No. 8 at 1. The fraud claims against Defendant Todd are apparently derived from Plaintiff's "at least 7 or 8440.10 motions in the hands of [J]udge Donald E. Todd and the D.A. office." *See id.* at 2. Plaintiff, therefore, objects to Magistrate Judge Peebles' reliance on *Heck* in his Report, Recommendation and Order.

Secondly, Plaintiff objects to Magistrate Judge Peebles' reliance on absolute immunity in his Order and Report–Recommendation. According to Plaintiff's objection, "[t]he [i]mmunity type of shield doesn't [i]mmune corrupt." *See id.*

### III. DISCUSSION

**A. Standard of Review**
When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a *"de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error.

*O'Diah v. Mawhir,* No. 9:08–CV–322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011)* (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1).

**\*2** A court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and the court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune to such relief." 28 U.S.C. § 1915A(b). This ability to dismiss a complaint *sua sponte* exists even in cases in which a prisoner has attempted to file his or her complaint *in forma pauperis. See Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990). It should be noted that "extreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond[.]" *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983).

A court should not dismiss a plaintiff's complaint if it states "enough facts to state a claim to relief that is plausible on its face." *Bell v. Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The court should accept all of a complaint's factual allegations as true, but the court is not bound to accept the complaint's legal conclusions. *See id.* (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show [n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed.R.Civ.P. 8(a) (2)).

Despite this recent tightening of the standard for pleading a claim, complaints by *pro se* parties continue to be accorded more deference than those filed by attorneys. *See Erickson v. Pardus,* 551 U.S. 89, 127, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). As such, *Twombly* and *Iqbal*

notwithstanding, this Court must continue to "construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Weixel v. Bd. of Educ.,* 287 F.3d 138, 146 (2d Cir.2002).

## B. Relief under 42 U.S.C. § 1983

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode,* 423 U.S. 362, 370–71, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) (quoting 42 U.S.C. § 1983). Not only must the conduct deprive the plaintiff of rights and privileges secured by the Constitution, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained. *See Brown v. Coughlin,* 758 F.Supp. 876, 881 (S.D.N.Y.1991) (citing *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481, *reh. denied,* 445 U.S. 920, 100 S.Ct. 1285, 63 L.Ed.2d 606 (1980)). As such, for a plaintiff to recover in a section 1983 action, he must establish a causal connection between the acts or omissions of each defendant and any injury or damages he suffered as a result of those acts or omissions. *See id.* (citing *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979)) (other citation omitted).

## C. Absolute Immunity

**\*3** Plaintiff's first objection, clarifying that his initial complaint was made about the proceedings surrounding his motion to vacate his conviction, rather than the conviction itself, is immaterial. Such an objection does not change the fact that Plaintiff is challenging his underlying conviction, which is the only fact Magistrate Judge Peebles needed to rely on when applying his absolute immunity analysis in his Order and Report–Recommendation. Plaintiff's objections to Magistrate Judge Peebles' reliance on Defendants' absolute immunity are not factual objections, but instead legal conclusions that absolute immunity does not apply in his case. These objections are without merit.

### 1. Judicial Immunity as Applied to Defendant Todd

Defendant Todd is a sitting Oswego County Court Judge who denied Plaintiff's C.P.L. § 440.10 motions to vacate his conviction. *See* Dkt. No. 1 at ¶ 3.

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." *Bliven v. Hunt,* 579 F.3d 204, 209 (2d Cir.2009) (citations omitted). This immunity is "from suit, not just from ultimate assessment of damages." *Mireles v. Waco,* 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (citation omitted). The 1996 Congressional amendments to § 1983 further barred injunctive relief and provided that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Federal Courts Improvement Act of 1996, Pub.L. No. 104–317, § 309(c), 110 Stat. 3847, 3853 (1996); *see also Montero v. Travis,* 171 F.3d 757 (2d Cir.1999). Therefore, a judge is immune from all forms of suit unless he has acted either beyond the judge's judicial capacity, or "in the complete absence of all jurisdiction." *Bobrowsky v. Yonkers Courthouse,* 777 F.Supp.2d 692, 711 (S.D.N.Y.2011) (citing *Mireles,* 502 U.S. at 11, 112 S.Ct. 286, 116 L.Ed.2d 9).

In determining whether or not the judge acted in the "clear absence of all jurisdiction," the judge's jurisdiction is to be construed broadly, "and the asserted immunity will only be overcome when the 'judge clearly lacks jurisdiction over the subject matter.' " *Bliven,* 579 F.3d at 209 (quoting *Maestri v. Jutkofsky,* 860 F.2d 50, 52 (2d Cir.1988)). "Whether a judge acted in a 'judicial capacity' depends on the 'nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity.' " *Ceparano v. Southampton Justice Court,* 404 Fed. Appx. 537, 539 (2d Cir.2011) (quoting *Stump v. Sparkman,* 435 U.S. 349, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)). "Further, if the judge is performing in his judicial capacity, the 'judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdiction." ' " *Ceparano,* 404 Fed. Appx. at 539 (quotation omitted). "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.' " *Bliven,* 579 F.3d at 209 (quotation and other citation omitted). While absolute judicial immunity does not bar claims for prospective injunctive relief, such relief is not available under § 1983 absent an allegation of a violation of a prior declaratory decree or that declaratory relief was unavailable. *See Montero v. Travis,* 171 F.3d 757, 761 (2d Cir.1999) (quotation omitted).

**\*4** In the present matter, Plaintiff's complaint alleges that Defendant Todd committed fraud while presiding as a judge over Plaintiff's motions to vacate his sentence. It is specifically because Defendant Todd performed these actions in his judicial capacity that Plaintiff has filed his complaint. Plaintiff has failed to allege that Defendant Todd was acting in the complete absence of jurisdiction or beyond his judicial capacity, nor could he. As such, the Court finds that Magistrate Judge Peebles correctly applied the absolute immunity standard to Plaintiff's claims against Defendant Todd.

### 2. Prosecutorial Immunity as Applied to Defendant Fitzpatrick

A prosecutor is entitled to absolute immunity for "performing prosecutorial activities that are 'intimately associated with the judicial phase of the criminal process.' " *Hill v. City of New York,* 45 F.3d 653, 660–61 (2d Cir.1995) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). "[G]enerally only (a) the prosecutor's decisions with regard to whether or not to institute a prosecution and (b) his performance of his litigation-related duties are given the shield of absolute immunity. Most other activities are characterized as administrative or investigative and, thus, merit less protection." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993) (citations and quotation marks omitted).

Since determining whether a prosecutor's conduct is properly categorized as prosecutorial, investigative, or administrative "may present [a] difficult question[ ]," *Imbler,* 424 U.S. at 431 n. 33, the Supreme Court has adopted a "functional approach" that looks at "the nature of the function performed," not the identity of the actor who performed it." *Forrester v. White,* 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1987). "The Second Circuit views the pre-litigation function that a prosecutor performs as having at least two aspects: '(1) the supervision and interaction with law enforcement agencies in acquiring evidence which might be used in a prosecution, and (2) the organization, evaluation, and marshalling of the evidence into a form that will enable the prosecutor to try a case, seek a warrant, indictment, or order.' " *Ying*

*Jing Gan,* 996 F.2d at 528 (quoting *Barbera v. Smith,* 836 F.2d 96, 100 (2d Cir.1987)) (emphasis removed).

"[T]he first category consists of actions that are of a police nature and are not entitled to absolute protection." *Barbera,* 836 F.2d at 100; *see also Burns v. Reed,* 500 U.S. 478, 493, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (holding that "advising the police in the investigative phase of a criminal case is [not] so intimately associated with the judicial phase of the criminal process that it qualifies for absolute immunity") (quotation marks and citation omitted). Generally, "[b]efore any legal proceeding has begun and before there is probable cause to arrest, it follows that a prosecutor receives only qualified immunity for his acts." *Hill,* 45 F.3d at 661 (citing *Barbera,* 836 F.2d at 100).

**\*5** The complaint against Defendant Fitzpatrick centers on Plaintiff's unsuccessful attempts to have his conviction vacated. These events are squarely within the judicial process, thereby entitling Defendant Fitzpatrick to absolute immunity from suit. In his objections to Magistrate Judge Peebles' Report, Recommendation and Order, Plaintiff argues that he submitted seven or eight motions to vacate and, despite the fact that the evidence showed that "the State of New York doesn't have a legit case," the motions were nevertheless denied. *See* Dkt. No. 8 at 2. Plaintiff's complaint and objections clearly deal with Defendant Fitzpatrick's decision to prosecute his case, the decision to oppose the motion to vacate his conviction, and Defendant Fitzpatrick's ultimate success in opposing the motion to vacate his conviction.

Based on the foregoing, the Court finds that Magistrate Judge Peebles correctly recommended that the Court should dismiss the claims against Defendant Fitzpatrick because of absolute prosecutorial immunity.

### D. *Heck v. Humphrey*

Unlike Plaintiff's objection that it would be immoral for the doctrine of absolute immunity to be applied in his situation, his objection to Magistrate Judge Peebles' *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), analysis alleges facts that, on their face, were not explicitly discussed in Magistrate Judge Peebles' Order and Report–Recommendation. But, despite Plaintiff's insistence that his complaint has nothing to do with the judge who presided over his trial, Judge William D. Walsh, his goal in this matter is to compel a successful N.Y.Crim.

Proc. § 440.10 motion to vacate his sentence. *See* Dkt. No. 8; Dkt. No. 1 at ¶ 6; *see also* N.Y.Crim. Proc. Law § 440.10 (Consol.2013). Plaintiff's claim must fail regardless of Defendant's identity because of the outcome which Plaintiff seeks.

In *Heck,* the Supreme Court held that,

> to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Heck,* 512 U.S. at 486–87; *see also Tavarez v. Reno,* 54 F.3d 109 (2d Cir.1995) (per curiam), ("*Heck* dictates that a cause of action seeking damages under § 1983 for an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated" (quoting *Stephenson v. Reno,* 28 F.3d 26, 27 (5th Cir.1994)) (internal quotation marks omitted). One of the Supreme Court's primary concerns in *Heck* was preventing opportunities that "would permit ... a collateral attack on [plaintiff's] conviction through the vehicle of a civil suit." *Heck,* 512 U.S. at 484 (citation omitted) (internal quotation marks omitted). The plaintiff in *Heck,* as in the present matter, requested only damages and not release from prison. *See* Dkt. No. 1 at ¶ 8; *see also Heck,* 512 U.S. at 479. Yet the Supreme Court made explicit that its holding applied even to prisoners seeking only damages without seeking any injunctive relief. *See Heck,* 512 U.S. at 482.

**\*6** Plaintiff's complaint alleges fraud and malicious prosecution by Defendants and does so in an attempt to demonstrate that his motions to vacate his criminal sentence have been unfairly denied. *See* Dkt. No. 1 at ¶ 6.

Under *Heck*, it does not matter that Plaintiff's motions to vacate his sentence have one degree of separation from the events of his original criminal trial before Judge William D. Walsh. Even though Plaintiff has filed his complaint against Defendant Todd, if he succeeds on his complaint, his conviction would be rendered invalid. This cannot be allowed unless Plaintiff's conviction has been vacated on some independent basis. Plaintiff does not allege any such independent basis in his complaint, *see* Dkt. No. 1 at ¶ 6, and as Magistrate Judge Peebles points out, his continued incarceration suggests no such independent basis has yet been found. *See* Dkt. No. 7 at 10. [1]

[1]    The Court has corroborated Magistrate Judge Peebles' search, *see* Dkt No. 7 at 2 n. 1, and confirmed that Plaintiff is still, in fact, incarcerated at Clinton Correctional Facility as of May 29, 2013, with a release date of no earlier than November 24, 2016. *See* Inmate Information, Inmate Population Information Search http://nysdoccslookup.doccs.ny.gov/ (last visited May 29, 2013).

Based on the foregoing, the Court finds that Magistrate Judge Peebles' correctly determined that *Heck v. Humphrey* precludes Plaintiff's claims.

**E. Whether to Permit Amendment**
When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citations omitted). Of course, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] cause of action is substantive" such that "better pleading will not cure it ." *Id.* (citation omitted).

Although a Court should generally grant a plaintiff proceeding *pro se* at least one opportunity to amend when dismissing a complaint for failure to state a claim, no such opportunity is required when it is clear that such an amendment would be futile, as is the case in the present matter. Since the underlying events of Plaintiff's motion to vacate his conviction are inextricably linked to a criminal conviction that has not been independently vacated, there is no set of facts by which *Heck v. Humphrey* would not bar Plaintiff's claim. Further, there is no set of facts

Plaintiff might plead that would avoid the bar of absolute immunity.

Based on the foregoing, the Court finds that Magistrate Judge Peebles correctly recommended that the Court should not grant Plaintiff leave to amend his complaint, since any amendment would be futile.

**IV. CONCLUSION**

After carefully considering Magistrate Judge Peebles' Report, Recommendation and Order, Plaintiff's objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Peebles' Report, Recommendation and Order is **ADOPTED in its entirety** for the reasons stated therein; and the Court further

**ORDERS** that all claims against Defendants Todd and Fitzpatrick are **DISMISSED with prejudice,** pursuant to 28 U.S.C. § 1915(e)(B)(iii) and 28 U.S.C. § 1915A(b)(2); and the Court further

**\*7 ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that, pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Memorandum–Decision and Order would not be taken in good faith; and, therefore, *in forma pauperis* status for purposes of appeal is **DENIED;** [2] and the Court further

[2]    *Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum–Decision and Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

*REPORT, RECOMMENDATION, and ORDER*

DAVID E. PEEBLES, United States Magistrate Judge.

Currently pending before me for review are a civil rights complaint and accompanying *in forma pauperis* ("IFP") application, both of which have been submitted for filing by *pro se* plaintiff Carlos Peterson. In his complaint, plaintiff asserts claims pursuant to 42 U.S.C. § 1983 against a sitting judge and a county district attorney, arising out of the criminal conviction that led to his current incarceration.

For the reasons set forth below, plaintiff's application for IFP status is denied, and I recommend that his complaint be dismissed in its entirety based on the fact that the asserted claims are precluded under *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and, alternatively, the defendants' entitlement to absolute immunity.

### I. *BACKGROUND*

Plaintiff is a New York State prison inmate currently confined in the Clinton Correctional Facility, located in Dannemora, New York. Complaint (Dkt. No. 1) at ¶ 2.[1] Generally speaking, plaintiff's complaint alleges that he was wrongfully convicted because defendants Judge Donald E. Todd and Onondaga County District Attorney William J. Fitzpatrick (1) permitted the introduction of false testimony and inadmissable evidence at trial; (2) made material misstatements of law in a discriminatory manner; and (3) failed to disclose potentially exculpatory evidence to him. *Id.* at ¶ 6. Additionally, plaintiff's complaint alleges that he was disparately treated, and that his conviction was improperly motivated. *Id.* As a result, plaintiff's complaint asserts claims of malicious prosecution and fraud against both defendants Todd and Fitzpatrick. *Id.* at ¶ 7. As relief, plaintiff seeks recovery of actual and punitive damages totalling $15 million. *Id.* at ¶ 8.

[1]   Although plaintiff's IFP application states that he is not incarcerated, New York State Department of Corrections and Community Supervision ("DOCCS") Inmate Information informs the court that plaintiff incarcerated at Clinton Correctional Facility as of February 4, 2013, with a release date of no earlier than November 24, 2016. Inmate Information, Inmate Population Information Search http://nysdoccslookup.doccs.ny.gov/ (last visited Feb. 4, 2013).

### II. *DISCUSSION*

### A. *Plaintiff's IFP Application*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $350, must ordinarily be paid. 28 U.S.C. §§ 1914(a). A court is authorized, however, to permit a litigant to proceed IFP if it is determined that he is unable to pay the required filing fee.[2] 28 U.S.C. § 1915(a)(1).

[2]   The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States,* 71 Fed. Cl. 366, 367 (Fed.Cl.2006); *see also Fridman v. City of New York,* 195 F.Supp.2d 534, 536 n. 1 (S.D.N.Y.2002).

When a prison inmate requests IFP status, his application must be accompanied by "a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6–month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined." 28 U.S.C. § 1915(a)(2). In accordance with the local rules of practice of this court, a prisoner may satisfy this requirement by submitting a completed, signed, and certified IFP application.[3] N.D.N.Y. L.R. 5.4(b)(1)(A). Local Rule 5.4 further provides that, if the prisoner fails to fully comply with the above-described requirements after being informed by court order of what is required, "the Court shall dismiss the action." N.D.N.Y. L.R. 5.4(b)(2)(A).[4]

[3]   A "certified" IFP application is one on which the certificate portion at the bottom of page two of the form IFP application has been completed and signed by an appropriate official at the plaintiff's prison facility. *See, e.g.,* Dkt. No. 2 at 2. The certificate portion of the IFP application requests information regarding funds and/or securities held on account to the inmate's credit over the preceding six months. *Id.*

[4]   It should be noted that Rule 41(b) of the Federal Rules of Civil Procedure permits a court, in its discretion, to dismiss an action based upon the failure of a plaintiff "to comply with these rules or a court

order." Fed.R.Civ.P. 41(b). It is well-settled that the term "these rules" in Fed.R.Civ.P. 41(b) refers not only to the Federal Rules of Civil Procedure, but also to the local rules of practice for this court. *Tylicki v. Ryan,* 244 F.R.D. 146, 147 (N.D.N.Y.2006) (Kahn, J.).

**\*8** In this instance, plaintiff has submitted an IFP application that does not include the required trust account certification. Dkt. No. 2 at 2. Accordingly, plaintiff's IFP application is denied as incomplete. *See, e.g., Resto v. Weissmane,* No. 08–CV–0340, 2008 WL 4021053, at \*3 (N.D.N.Y. Aug. 25, 2008) (Kahn, J., adopting on de novo review report and recommendation by Lowe, M.J.) (denying motion to proceed IFP in part on plaintiff's failure to complete certificate portion of form affidavit), *accord, Ramos v. Doe,* No. 97–CV–1074, 1997 WL 627549, at \*3 (N.D.N.Y. Oct. 9, 1997) (Pooler, J.).[5], [6]

[5]    Copies of all unreported decisions have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

[6]    In the event that this action is not dismissed, I recommend that the plaintiff be required, within thirty days of the date of filing of a decision and order permitting the action to proceed, to either (1) pay the required court filing fee of $350, or (2) submit a completed and certified IFP application. Upon the failure of plaintiff to comply with these orders, I will recommend that his complaint be dismissed without prejudice.

### B. *Sufficiency of Plaintiff's Complaint*

#### 1. *Standard of Review*

Ordinarily, the denial of plaintiff's IFP application would end the court's discussion, and plaintiff, in light of his *pro se* status, would likely be afforded an opportunity to either prepay the full filing fee, or submit a new, completed, and certified application for IFP. However, 28 U.S.C. § 1915 makes clear that, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). *See also Nelson v. Spitzer,*

No. 07–CV–1241, 2008 WL 268215, at \*1–2 (N.D.N.Y. Jan. 29, 2008) (McAvoy, J.) (denying motion to proceed IFP based on three-strikes rule, then analyzing complaint and dismissing it, pursuant to 28 U.S.C. § 1915(e), for failure to state a claim). Similarly, 28 U.S.C. § 1915A(b) directs a court to review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and the court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). *See also Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir.2007) ("We have found both sections [1915 and 1915A] applicable to prisoner proceedings *in forma pauperis."* ).[7] When applying these standards of review, in light of the leniency afforded to *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990), a court should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond[.]" *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983) (internal citations omitted).

[7]    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915e is appropriate to prevent abuses of the process of the court," *Nelson,* 2008 WL 268215, at \*1 n. 3, and "to discourage the filing of [baseless lawsuits], and [the] waste of judicial ... resources," *Neitzke,* 490 U.S. at 327.

When reviewing a complaint under 28 U.S.C. § 1915(e), the court looks to applicable requirements of the Federal Rules of Civil Procedure for guidance. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The purpose of Rule 8 " 'is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable.' " *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y.1995)

2013 WL 2487253

(McAvoy, C.J.) (quoting *Brown v. Califano,* 75 F.R.D. 497, 498 (D.D.C.1977)) (italics omitted).

**\*9** A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Although the court should construe the factual allegations in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

Here, plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983. *See also Myers v. Wollowitz,* No. 95–CV–0272, 1995 WL 236245, at \*2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) ("[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights."). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993).

### 2. Heck v. Humphrey

Plaintiff's malicious prosecution and fraud claims arise from alleged constitutional violations that occurred in connection with his criminal conviction. Complaint (Dkt. No. 1) at ¶ 6. In *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court held that,

to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Heck,* 512 U.S. at 486–87; *see also Estes v. Doe,* No. 97–CV–8133, 1999 WL 983886, at \*3 (S.D.N.Y. Oct.29, 1999) (quoting *Heck* ). "A claim for damages relating to a conviction that has not been so invalidated is not cognizable under Section 1983." *Estes,* 1999 WL 983886, at \*3.

Here, because plaintiff's complaint does not allege that he has successfully invalidated the conviction he seeks to challenge, and the fact of plaintiff's current incarceration suggests his conviction has not, in fact, been invalidated, his claims in this action are precluded. For this reason, I recommend that plaintiff's complaint be dismissed.

### 3. Absolute Immunity

**\*10** Plaintiff's complaint asserts claims against defendant Todd, a sitting Oswego County Court Judge, and defendant Fitzpatrick, the Onondaga County District Attorney, for conduct undertaken in furtherance of their official roles. Complaint (Dkt. No. 1) at ¶ 3. Both, however, are entitled to absolute immunity, warranting dismissal of plaintiff's claims against them on this alternative basis.

"It is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities." *DuQuin v. Kolbert,* 320 F.Supp.2d 39, 40–41 (W.D.N.Y.2004) (citing *Mireles v. Waco,* 502 U.S. 9, 10, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991)); *see also Young*

2013 WL 2487253

*v. Selsky,* 41 F.3d 47, 51 (2d Cir.1994). This is true however erroneous an act may have been, and however injurious its consequences were to the plaintiff. *Young,* 41 F.3d at 51. It should be noted, however, that "a judge is immune only for actions performed in his judicial capacity." *DuQuin,* 320 F.Supp.2d at 41.

It is equally well-established that "prosecutors are entitled to absolute immunity for that conduct 'intimately associated with the judicial phase of the criminal process.' " *Hill v. City of New York,* 45 F.3d 653, 660–61 (2d Cir.1995) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). "In determining whether absolute immunity obtains, we apply a 'functional approach,' looking at the function being performed rather than to the office or identity of the defendant." *Hill,* 45 F.3d at 660 (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 269, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993)); *see also Bernard v. County of Suffolk,* 356 F.3d 495, 504 (2d Cir.2004) ("The appropriate inquiry ... is not whether authorized acts are performed with a good or bad *motive,* but whether the *acts* at issue are beyond the prosecutor's authority."); *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir.1994) (finding that prosecutorial immunity protects prosecutors from liability under section 1983 "for virtually all acts, regardless of motivation, associated with his function as an advocate").

Applying these well-established principles to this case, it is clear that plaintiff's claims against defendants Todd and Fitzpatrick are subject to dismissal. The claims against both stem from plaintiff's criminal trial, during which, his complaint alleges, both defendants were complicit in the presentation of false testimony and inadmissible evidence, and made material misstatements of the law. Complaint (Dkt. No. 1) at ¶ 6. The complaint also alleges that the defendants failed to disclose potentially favorable evidence to the plaintiff. *Id.* Because these acts were conducted in furtherance of defendant Todd's judicial duties, and defendant Fitzpatrick's prosecutorial duties during the judicial phase of the criminal proceeding against plaintiff, both defendants are protected from suit by absolute immunity. *See, e.g., Stump v. Sparkman,* 435 U.S. 349, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) ( "The relevant cases demonstrate that the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.,* whether it is function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge

in his official capacity."); *Hill,* 45 F.3d at 661–62 ("As to [the prosecutor]'s failure to turn over [exculpatory] material, ... this omission occurred after the prosecutorial phase of the case had begun and therefore is protected as a discretionary advocacy function."); *Barrett v. U.S.,* 798 F.2d 565, 571–72 (2d Cir.1986) ("The absolute immunity accorded to government prosecutors encompasses not only their conduct of trials but all of their activities that can be fairly characterized as closely associated with the conduct of litigation or potential litigation[.]"); *Sheikh v. Foxman,* No. 12–CV–0442, 2012 1166439, at *1–2 (M.D.Fla. Mar. 26, 2012) (finding that "the allegedly wrongful acts by [the defendant-judge]," including his "refusal to admit certain evidence[,] ... were judicial acts within his authority as the presiding judge"); *Mesmer v. St. Mary's Cnty.,* No. 10–CV–1053, 2010 WL 1881772, at *2 (D.Md. May 7, 2010) ("Indeed, a decision about admission or exclusion of evidence is precisely the kind of decision a judge routinely makes during the course of judicial proceedings.").

### C. *Whether to Permit Amendment*

**\*11** Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend *at least* once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark,* 927 F.2d 698, 704–05 (2d Cir.1991); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires"); *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 796 (2d Cir.1999) (granting leave to amend is appropriate "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim."); *Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead granted where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). However, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993);

accord, *Brown v. Peters,* No. 95–CV–1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.").

In this instance, the deficiencies identified above are substantive in nature and extend beyond the mere sufficiency of plaintiff's complaint. Accordingly, I conclude that any amendment that could be offered by the plaintiff would be futile, and therefore recommend against granting him leave to amend.

III. *SUMMARY AND RECOMMENDATION*

Plaintiff's claims in this action, asserted against the sitting judge who presided over his criminal trial, and the district attorney who prosecuted the case against him, are precluded under *Heck v. Humphrey,* based upon plaintiff's failure to allege that his conviction has been invalidated, and additionally because both defendants are entitled to absolute immunity. It is therefore hereby

ORDERED, that plaintiff's *in forma pauperis* application (Dkt. No. 2), is DENIED, as incomplete; and it is further respectfully

RECOMMENDED, that plaintiff's claims against defendants Todd and Fitzpatrick be DISMISSED, without leave to replead, pursuant to 28 U .S.C. § 1915(e)(B)(iii) and 28 U.S.C. § 1915A(b)(2), and that the clerk be directed to enter judgment and close the action; and it is further

ORDERED, that the clerk of the court serve a copy of this report and recommendation on plaintiff, by regular mail; and it is further

*12 RECOMMENDED that the District Judge certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from the court's decision and order adopting this recommendation would not be taken in good faith, and therefore DENY any IFP application for purposes of an appeal. *Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 2487253

---

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 1486836
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Clarence DELANEY, Jr., Plaintiff,
v.
CITY OF ALBANY, et al., Defendants.

No. 1:18-CV-1193 (DNH/CFH)
|
Signed 04/04/2019

**Attorneys and Law Firms**

Clarence Delaney Jr., 17-A-0236, Fishkill Correctional
Facility, P.O. Box 1245, Beacon, New York 12508,
Plaintiff pro se.

**REPORT-RECOMMENDATION AND ORDER**

Christian F. Hummel, U.S. Magistrate Judge

**I. In Forma Pauperis Application**

 **\*1** The Clerk has sent to the Court an amended
complaint, together with an application to proceed in
forma pauperis ("IFP"), filed by plaintiff pro se Clarence
Delaney Jr. Dkt. Nos. 4, 8 ("Am. Compl."). After
reviewing plaintiff's IFP Application, the Court finds that
he may properly proceed IFP. See Dkt. No. 4. [1]

[1]    Plaintiff is advised that, despite his IFP status, he will
       still be required to pay any fees he incurs in this action,
       including copying fees and witness fees.

**II. Initial Review** [2]

[2]    Any unpublished decisions cited within this Report-
       Recommendation and Order have been provided to
       plaintiff pro se.

**A. Standard of Review**

Section 1915 of Title 28 of the United States Code directs
that, when a plaintiff seeks to proceed IFP, "the court shall
dismiss the case at any time if the court determines that ...

the action or appeal (i) is frivolous or malicious; (ii) fails to
state a claim on which relief may be granted; or (iii) seeks
monetary relief against a defendant who is immune from
such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's
responsibility to determine that a plaintiff may properly
maintain his or her complaint before permitting him or her
to proceed with the action.

Where, as here, the plaintiff proceeds pro se, "the court
must construe his [or her] submissions liberally and
interpret them to raise the strongest arguments that they
suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224
(2d Cir. 2014) (per curiam) (internal quotation marks
omitted); see also Hernandez v. Coughlin, 18 F.3d 133,
136 (2d Cir. 1994). However, this does not mean the Court
is required to accept unsupported allegations devoid of
sufficient facts or claims. Pleading guidelines are provided
in the Federal Rules of Civil Procedure ("Fed R. Civ.
P"). Specifically, Rule 8 provides that a pleading which
sets forth a clam for relief shall contain, inter alia, "a
short and plain statement of the claim showing that
the pleader is entitled to relief." See FED. R. CIV. P.
8(a)(2). "The purpose ... is to give fair notice of the
claim being asserted so as to permit the adverse party
the opportunity to file a responsive answer, prepare an
adequate defense and determine whether the doctrine of
res judicata is applicable." Flores v. Graphtex, 189 F.R.D.
54, 54 (N.D.N.Y. 1999) (internal quotation marks and
citations omitted). Rule 8 also requires the pleading to
include:

> (1) a short and plain statement of the grounds for the
> court's jurisdiction ...;
>
> (2) a short and plain statement of the claim showing that
> the pleader is entitled to relief; and
>
> (3) a demand for the relief sought....

FED. R. CIV. P. 8(a). Although "[n]o technical form
is required," the Federal Rules make clear that each
allegation contained in the pleading "must be simple,
concise, and direct." Id. at 8(d). Ultimately, the plaintiff
must plead "enough facts to state a claim to relief that is
plausible on its face." Bell Atlantic Corp. v. Twombly, 550
U.S. 544, 570 (2007).

A complaint that fails to comply with the pleading
requirements "presents far too a heavy burden in terms of
a defendant['s] duty to shape a comprehensive defense and

provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

### B. Plaintiff's Complaint

**\*2** Plaintiff seeks to bring this action pursuant to 42 U.S.C. § 1983 alleging that defendants the City of Albany and various members of the Albany City Police Department violated his constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments. See generally Am. Compl. Plaintiff contends that on August 9, 2018, Detective ("Det.") Adam Brace, Det. DiGiuseppe, and several other members of the Albany City Policy Department "ambushed" him with their guns drawn while he was walking in the City of Albany. Id. at 4. Det. DiGiuseppe "threw [plaintiff] hard against the patrol car and handcuffed [him] around and behind [his] back." Id. In applying the handcuffs, Det. DiGiuseppe injured plaintiff's right arm/elbow, which was already disabled due to a degenerative joint disease. Id. Plaintiff informed Det. DiGiuseppe that he was aggravating plaintiff's disability. Id. Plaintiff also contends that Det. DiGiuseppe "injur[ed his] back by slamming him on the patrol car." Id. at 6. Plaintiff alleges that Det. DiGiuseppe then emptied plaintiff's pockets, including over $ 170.00, and failed to return his possessions. Id. at 4.

Plaintiff alleges that he asked Det. Brace and Det. DiGiuseppe why he was being arrested, and Det. Brace informed him that power tools belonging to plaintiff's friend were stolen out of the friend's truck, and that they wanted to know where the tools were located. Am. Compl. at 5. Plaintiff contends that he was arrested for "two credit cards that [Det. DiGiuseppe] found[.]" Id. Plaintiff suggests that he has had prior negative interactions with Det. DiGiuseppe, and has previously filed complaints against him. Id. Plaintiff further contends that, in a written report to plaintiff's parole officer, Det. Brace lied to plaintiff's parole officer and stated that plaintiff

had been in possession of "makita drills that had been reported stolen." Id. Plaintiff contends that he suffered great physical pain and emotional distress as a result of the interaction. See id. at 4, 5.

### C. Analysis

Plaintiff purports to set forth claims of excessive force, false arrest/imprisonment, defamation, intentional infliction of emotional distress ("IIED"), and official misconduct. See generally Am. Compl. Section 1983 provides, in part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

42 U.S.C. § 1983. To set forth a cause of action under section 1983, a plaintiff must demonstrate that the alleged conduct was (1) "committed by a person acting under color of state law"; and (2) "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994) (internal quotation marks omitted) ). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992).

The Supreme Court of the United States has found that "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (citation and internal quotation marks omitted). Therefore, a plaintiff must establish that the defendant was either a state actor or a private party acting under color of state law. See Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 323 (2d Cir.

2002); see also United States v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 941 F.2d 1292, 1295-96 (2d Cir. 1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' "). A private party engages in state action when they are found to be a "willful participant in joint activity with the State or its agents." Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970) (citing United States v. Price, 383 U.S. 787, 794 (1966) ). "Conduct that is ostensibly private can be fairly attributed to the state only if there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." White v. Moylan, 554 F. Supp. 2d 263, 267 (D. Conn. 2008) (citation omitted).

### 1. Official Capacity Claims

**\*3** To the extent that plaintiff seeks to bring his claims against defendants Det. Brace, Det. DiGiuseppe, and the John Doe defendants in their official capacities, this District has held that " 'claims against municipal officers in their official capacities are really claims against the municipality and, thus, are redundant when the municipality is also named as a defendant.' " Wallikas v. Harder, 67 F. Supp. 2d 82, 83 (N.D.N.Y. Oct. 25, 1999) (citing Busby v. City of Orlando, 931 F.2d 764, 766 (11th Cir. 1991) ). This is because "[t]he real party in interest in an official capacity suit is the governmental entity and not the named official." Booker v. Bd. of Educ., Baldwinsville Cent. Sch. Dist., 238 F. Supp. 2d 469 (N.D.N.Y. 2002) (citing Union Pac. R.R. v. Vill. of S. Barrington, 598 F. Supp. 1285 (N.D. Ill. 1997) ). Moreover, this District has held that " 'claims against municipal officers in their official capacities are really claims against the municipality and, thus, are redundant when the municipality is also named as a defendant.' " Wallikas v. Harder, 67 F. Supp. 2d 82, 83 (1999) (citing Busby v. City of Orlando, 931 F.2d 764, 766 (11th Cir. 1991) ).

Because plaintiff appears to have commenced this action against the City of Albany and the individual defendants in their official capacities, it is recommended that plaintiff's Monell claims against the Det. Brace., Det. DiGiuseppe, and the John Doe defendants be dismissed

with prejudice. Insofar as plaintiff attempts to bring the remaining claims in his amended complaint against the individual defendants in their official capacities, it is recommended that such claims be dismissed with prejudice because "[n]either a state nor one of its agencies nor an official of that agency sued in his or her official capacity is a 'person' under § 1983." Spencer v. Doe, 139 F.3d 107, 111 (2d Cir. 1998) (citations omitted).

### 2. False Imprisonment and False Arrest

In Heck v. Humphrey, the Supreme Court of the United States created a jurisdictional prerequisite to civil suits brought under 42 U.S.C. § 1983:

> [i]n order to recover damages for harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance for a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizant under § 1983.

512 U.S. 477, 486-87 (1994) (emphasis in original).

In a February 13, 2019 letter to the Court, plaintiff stated that his "criminal case in Albany City/Police Court related to this case and the parties involved has been adjudicated and resolved/completed[.]" Dkt. No. 11 at 1. Plaintiff further stated that he "felt that [he] should let the Court know due to the fact that one of [his] causes of action is for false arrest/false imprisonment." Id. Although plaintiff appears to contend that the criminal case associated with this action has been resolved, he does not establish that a "conviction or sentence has been reversed ..., expunged ..., [or otherwise] declared invalid[.]" Heck, 512 U.S. at

486-87. Moreover, plaintiff's complaint and submissions are unclear as to the nature of the charges, if any, that were filed against him in connection with the incident in question. Plaintiff contends that he was arrested for charges unrelated to the reason for defendants' initial stop, but does not identify those charges. See Am. Compl. at 5. Plaintiff seems to suggest that he was arrested and potentially charged with possessing stolen credit cards and/or power tools, but the amended complaint is unclear as to the disposition of those charges. See id. Thus, the undersigned is unable to determine whether his causes of action for false arrest and false imprisonment fall squarely within the ambit of Heck because it is unclear whether plaintiff faced any conviction or sentence relating to the incident, whether any charges remain pending, or if they have been vacated, reversed, acquitted, or otherwise invalidated. Thus, the undersigned cannot ascertain whether, if plaintiff's false imprisonment and false arrest claims were to succeed, "he would necessarily call into question the validity of the conviction he is challenging in this action." Godley v. Onondaga Cnty., No. 6:16-CV-01419 (DNH/TWD), 2017 WL 2805162, at *5 (N.D.N.Y. Jan. 6, 2017) (citing Duamutef v. Morris, 956 F. Supp. 1112, 1115-18 (S.D.N.Y. 1997) (dismissing § 1983 claims of malicious prosecution, false arrest, perjury, retaliation, and civil rights conspiracy under Heck where the plaintiff's underlying conviction had not been overturned) ). "[B]ecause [p]laintiff has failed to show that his conviction has been overturned ... [,] his § 1983 claims [for false arrest and false imprisonment] are barred under Heck unless and until such time as [p]laintiff's conviction is overturned or his sentence is invalidated" or plaintiff otherwise demonstrates that his causes of action would not otherwise render his conviction invalid. Godley, 2017 WL 2805162, at *6. Accordingly, it is recommended that plaintiff's false imprisonment and false arrest causes of action be dismissed without prejudice and with opportunity to amend to specify any and all criminal charges brought against him in connection with the August 9, 2018 incident and whether a "conviction or sentence has been reversed ..., expunged ..., [or otherwise] declared invalid[.]" Heck, 512 U.S. at 486-87.

### 3. Defamation

**\*4** Plaintiff contends that Det. Brace "committed libel and slander by charges that was never committed by plaintiff." Am. Compl. at 7. Plaintiff further contends that

Det. DiGiuseppe "stated ... [that] plaintiff possessed stolen credit cards ... causing [ ] plaintiff to be arrested illegally." Id. Heck also applies to plaintiff's defamation claim. "Under New York law, '[d]efamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander.' " Kennedy v. City of New York, No. 12 CIV. 4166 KPF, 2015 WL 6442237, at *12 (S.D.N.Y. Oct. 23, 2015) (quoting Lan Sang v. Ming Hai, 951 F. Supp. 2d 504, 517 (S.D.N.Y. 2013) ). "Truth is an absolute defense to a civil defamation action." Beaver v. Franklin, No. 5:16-CV-1454 (BKS/ATB), 2016 WL 11265986, at *4 n.6 (N.D.N.Y. Dec. 16, 2016), report and recommendation adopted, 2017 WL 1378183 (N.D.N.Y. Apr. 14, 2017). Therefore, in order to sustain a cause of action for defamation, plaintiff must establish that the charges or statements made against him were false. See id. It is unclear as to what crimes plaintiff was charged with, whether plaintiff faced any conviction or sentence relating to the incident, whether any charges remain pending, or if any charges have been vacated, reversed, acquitted, or otherwise invalidated. Thus, truth of any alleged defamatory statement cannot be addressed until the status of any charges is known. It follows that the undersigned cannot assess whether, if plaintiff's defamation claim were to succeed, "he would necessarily call into question the validity of the conviction he is challenging in this action." Godley, 2017 WL 2805162, at *5. Moreover, the undersigned cannot surmise from the amended complaint if the alleged defamatory statement was published [3] to a third party, as required by New York law. See Beaver, 2016 WL 11265986, at *4 n.6. Accordingly, it is recommended that plaintiff's defamation cause of action be dismissed without prejudice and with opportunity to amend to specify (1) the charges brought against him and whether his "conviction or sentence has been reversed ..., expunged ..., [or otherwise] declared invalid"; and (2) whether the alleged defamatory statement was published to a third party. Heck, 512 U.S. at 486-87; see Beaver, 2016 WL 11265986, at *4 (noting that the Heck bar "would also apply to 'slander' and 'defamation of character.' ") (citing Xiang Li v. Shelhamer, No. 5:10-CV-801, 2012 WL 951550, at *4 (N.D.N.Y. Mar. 20, 2012) ) (concluding that the plaintiff's claims that the defendant defamed him through statements made in his criminal proceeding that resulted in his conviction are barred by Heck); Lane v. Papadimitrious, No. 6:10-CV-647, 2010 WL 2803468, at *1 (N.D.N.Y. July 14, 2010) (holding that the "plaintiff's claims in the nature of perjury[ and] slander ... necessarily implicate the validity of his conviction and are thus barred

under Heck [ ] until such time as the conviction may be vacated or otherwise invalidated.").

3    "Under New York defamation law, 'publication is a term of art.... A defamatory writing is not published if it is read by no one but the one defamed. Published it is, however, as soon as read by any one else.' " Albert v. Loksen, 239 F.3d 256, 269 (2d Cir. 2001) (quoting Ostrowe v. Lee, 256 N.Y. 36, 38 (1931) ). A cause of action for slander also requires publication to a third party. See Kennedy, 2015 WL 6442237, at *12 (" 'A cause of action for slander requires (i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) of and concerning' the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege.") (citation omitted).

### 4. Excessive Force

Plaintiff's assertion that Det. DiGiuseppe subjected him to excessive force during the arrest is not barred by Heck, as "it would not implicate his judgments of conviction." Palmenta v. Blank, No. 3:18-CV-1078 (SRU), 2018 WL 4516676, at *4 (D. Conn. Sept. 20, 2018) (citing Poventud v. City of New York, 750 F.3d 121, 132 (2d Cir. 2014) ). "To establish a Fourth Amendment excessive force claim, [a plaintiff] must show that the force used by the defendants was 'objectively unreasonable.' " Palmenta, 2018 WL 4516676, at *4 (citing Graham v. Connor, 490 U.S. 386, 397 (1989) ). [4] To the extent that plaintiff argues that defendants "ambushed" him at gunpoint and handcuffed him, Am Compl. at 4, defendants' actions of "merely drawing weapons when effectuating an arrest [do] not constitute excessive force as a matter of law." Dunkelberger v. Dunkelberger, No. 14-CV-3877 (KMK), 2015 WL 5730605, *15 (S.D.N.Y. Sept. 30, 2015) (citations omitted). [5] However, plaintiff further contends that Det. DiGiuseppe "injur[ed his] back by slamming him on the patrol car." Am. Compl. at 6. "[T]he Second Circuit has held that even minor injuries, including scrapes and bruises, can support an excessive-force claim." Matthews v. City of New York, 889 F. Supp. 2d 418, 442 (E.D.N.Y. 2012). Thus, at this early stage in the litigation, plaintiff has adequately "pleaded factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). Accordingly,

plaintiff's allegations are sufficient to establish a plausible Fourth Amendment claim, and it is recommended that plaintiff's Fourth Amendment excessive force claim be permitted to proceed. [6]

4    Although plaintiff purports to bring his excessive force claim under the Eighth Amendment,

    [t]he Eighth Amendment standard [for excessive force] "applies only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions;" i.e., during the post-conviction stages ... Whereas the substantive due process rights provided by the Fourteenth Amendment apply only in situations where the protections provided by the Fourth and Eighth Amendments are not applicable. County of Sacramento v. Lewis, 523 U.S. 833, 844-45, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Here, [p]laintiff complains of abuses that occurred during his arrest and are properly analyzed under the Fourth Amendment.

    Williams v. Falkowski, No. 9:11-CV-826 (GLS/ RFT), 2013 WL 5423703, at *4 (N.D.N.Y. Sept. 26, 2013) (internal citation omitted); Porath v. Bird, No. 9:11-CV-963 (GLS/CFH), 2013 WL 2418253, at *16 ("If excessive force was allegedly used before arraignment, the Fourth Amendment standards govern.") (citing Graham v. Connor, 490 U.S. 386, 394 (1989) ).

5    Insofar as plaintiff suggests that defendants approached him without reasonable suspicion or arrested him without probable cause, the undersigned notes that such claims would be barred by Heck unless plaintiff demonstrates that his criminal conviction was either overturned or otherwise expunged. See Heck, 512 U.S. at 486-87.

6    As plaintiff's amended complaint alleges only Det. DiGiuseppe's personal involvement in an incident of excessive force, plaintiff has properly pleaded a Fourth Amendment excessive force claim only as against Det. DiGiuseppe. See Am. Compl.

### 5. IIED

**\*5** Plaintiff contends that defendants caused him "emotional trauma" when they "ambushed" him and exacerbated his physical and mental health problems. Am. Compl. at 8. "Under New York law, [IIED] has four elements: (1) extreme and outrageous conduct; (2)

intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Thomas v. City of New York, No. 17-CV-6079, 2018 WL 5791965, at *12 (E.D.N.Y. Nov. 5, 2018) (quoting Restis v. Am. Coalition Against Nuclear Iran, Inc., 53 F. Supp. 3d 705, 729 (S.D.N.Y. 2014) ). Plaintiff states that since the incident and defendants' "unnecessary [use of] force, he has suffered depression, anxiety, posttraumatic stress disorder, and sleep problems." Am. Compl. at 7-8. As plaintiff has alleged a cognizable federal claim for excessive force that "form[s] part of the same case or controversy under Article III of the United States Constitution," the undersigned finds that plaintiff has sufficiently pleaded an IIED claim, and recommends that the Court exercise supplemental jurisdiction over this claim. Pace v. Waterbury Police Dep't, Civ. No. 3:17CV00426(DJS), 2017 WL 1362683, at *4 (D. Conn. Apr. 12, 2017) (quoting 28 U.S.C. § 1367(a) ) (internal quotation marks omitted).

### 6. Official Misconduct

Plaintiff argues that "defendants caused [his] constitutional rights to be violated by arbitrary action and unlawful conduct due to personal and retaliatory reasons." Am. Compl. at 8. He further contends that Det. DiGiuseppe lied and "extorted plaintiff for over $ 160.00 when he emptied plaintiff['s] pockets." Id.[7] Pursuant to New York Penal Law § 195.00,

[a] public servant is guilty of official misconduct when, with intent to obtain a benefit or deprive another person of a benefit:

1. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized; or

2. He knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office.

N.Y. Penal Law § 195.00.

[7]   Earlier in the amended complaint, plaintiff indicates that Det. DiGiuseppe may taken over $ 170.00. See Am. Compl. at 4.

The undersigned notes that "there is no private right of action to enforce either state or federal criminal statutes." Delany v. City of Albany, No. 1:18-CV-1259 (LEK/ATB), 2018 WL 5923901, at *5 (N.D.N.Y. Nov. 13, 2018), report and recommendation adopted in part, rejected in part sub nom. Delaney v. City of Albany, 2019 WL 125769 (N.D.N.Y. Jan. 7, 2019)[8] (citing Carvel v. Ross, No. 09-Civ. 722, 2011 WL 856283, at *11-12 (S.D.N.Y. Feb. 6, 2011) ). Therefore, to the extent plaintiff is seeking defendants' prosecution for official misconduct, this claim cannot proceed. As such, it is recommended that plaintiff's purported official misconduct claim be dismissed with prejudice.

[8]   Plaintiff filed a separate action in the Northern District of New York naming Det. DiGiuseppe and the City of Albany as defendants. See Delany, 2018 WL 5923901, at *1. However, the underlying facts in that action take place in May 2016. See id. at *2.

### 7. Municipal Liability

Plaintiff has named in the caption of the amended complaint defendant City of Albany. However, "a municipality cannot be held liable solely on a theory of respondeat superior." Anderson v. Cnty. of Nassau, 297 F. Supp. 2d 540, 546 (E.D.N.Y. 2004).

Pursuant to the standard for establishing municipality liability laid out in Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658 (1978), in order to set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012) (citing Monell, 436 U.S. 658); see also Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer.")[.] A municipality may be liable for deprivation of constitutional rights under § 1983 for policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. See City of Canton, Ohio v. Harris, 489 U.S. 378, 388-89

(1989). To establish causation, there must "at the very least be an affirmative link between the policy and the particular constitutional violation alleged." Oklahoma v. Tuttle, 471 U.S. 808, 823 (1985).

**\*6** Boyde v. New York, No. 5:16-CV-00555(LEK/ TWD), 2016 WL 3573133, at \*4 (N.D.N.Y. May 19, 2016). Thus, "in order to establish municipal liability, plaintiff must establish that an identified municipal policy was the 'moving force [behind] the constitutional violation.' " Plair v. City of New York, 789 F. Supp. 2d 459, 468 (S.D.N.Y. 2011) (quoting Monell, 436 U.S. at 694) (emphasis added).

Plaintiff's allegation that the City of Albany failed to train its police officers "due to defendants Det. Brace and DiGiuseppe and other members clearly violating established laws against its citizens specifically the plaintiff" is conclusory as he fails to allege an "affirmative link" between any custom or policy set forth by the City of Albany, and defendants' alleged violations of plaintiff's constitutional rights. See Boyde, 2016 WL 3573133, at \*4; Am. Compl. at 8. Accordingly, it is recommended that all claims against the City of Albany be dismissed without prejudice and with leave to amend to provide plaintiff an opportunity to identify a custom or policy set forth by the City of Albany and demonstrate an affirmative link between that policy and defendants' alleged constitutional violations. See Boyde, 2016 WL 3573133, at \*4.

### 8. John Doe Defendants

The undersigned observes that plaintiff has named four John Doe defendants: Police Officer John Doe 1, 2, 3, and 4. In the event that the District Judge permits this amended complaint to proceed, and should plaintiff wishes to pursue this claim against these John Doe defendants, he must take reasonable steps to ascertain their identities. Once he ascertains the John Doe defendants' identities, plaintiff may file a motion seeking the Court's permission to amend his pleadings to identify the John Doe defendants by name. Plaintiff is advised that failure to timely identify and serve [9] these currently unidentified defendants will result in this action being dismissed as against the John Doe defendants.

[9]    Service on defendants will not occur until the District Judge determines that a version of plaintiff's

complaint may proceed beyond the initial review stage.

### III. Motion to Appoint Counsel

In a separately-filed motion, plaintiff also seeks the appointment of counsel. Dkt. No. 7. Plaintiff indicates that he is "physically [and] mentally disabled and [does not] have the expertise" to litigate his "complex" claims. Id. at 1. It is well settled that "[a] party has no constitutionally guaranteed right to the assistance of counsel in a civil case." Leftridge v. Connecticut State Trooper Officer No. 1283, 640 F.3d 62, 68 (2d Cir. 2011) (citations omitted). In Terminate Control Corp. v. Horowitz, 28 F.3d 1335 (2d Cir. 1994), the Second Circuit reiterated the factors that a court must consider in ruling upon such a motion. In deciding whether to appoint counsel, the court should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider a number of other factors in making its determination. Id. at 1341 (quoting Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986) ); see also Leftridge, 640 F.3d at 69 (noting that a motion for appointment of counsel may be properly denied if the court "concludes that [the party's] chances of success are highly dubious.") (citations omitted).

**\*7** However, prior to evaluating a request for an appointment of counsel, the plaintiff must make a threshold showing that he is unable to obtain counsel through the private sector or public interest firms. See Cooper v. A. Sargenti Co., Inc., 877 F.2d 170, 173-74 (2d Cir. 1989) (quoting Hodge, 802 F.2d at 61). Although plaintiff contends that he has contacted seven different attorneys but has not received a response, he has not proffered evidence demonstrating that he contacted those attorneys or not-for-profit agencies in an effort to seek pro bono or low-cost counsel. See Dkt. No. 7 at 1-2.

Moreover, before counsel is assigned, it must be determined whether plaintiff's claims are likely to be of substance. See Terminate Control Corp., 28 F.3d at 1341. Until the District Judge reviews this Report-Recommendation and Order and determines whether plaintiff's complaint can proceed, must be dismissed, or whether he may be accorded an opportunity to amend, plaintiff's claims have not been determined to have merit. This case is at its earliest stages, and plaintiff has not

demonstrated that appointment of counsel is warranted at this time.

Accordingly, it is ordered that plaintiff's motion for counsel be denied without prejudice and with opportunity for plaintiff to renew his motion for appointment of counsel in the future demonstrates a change in his circumstances. The undersigned reminds plaintiff that any future motion for counsel must be accompanied by evidence of the efforts that plaintiff has taken to retain counsel on his own, either in the public or private sector. Financial need or status as an incarcerated person, without more, does not suffice for appointment of pro bono counsel in a civil action.

## IV. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's motion for in forma pauperis relief (Dkt. No. 4) be **GRANTED**; and it is

**RECOMMENDED**, that to the extent that plaintiff seeks to bring his claims against defendants Det. Brace, Det. DiGiuseppe, and the John Doe police officer defendants in their official capacities, these claims be dismissed with prejudice; and it is further

**RECOMMENDED**, that plaintiff's official misconduct claim be dismissed with prejudice; and it is further

**RECOMMENDED**, that plaintiff's false imprisonment, false arrest, and defamation claims insofar as they are brought against the individual defendants in their individual capacities, be dismissed without prejudice and with opportunity to amend to specify (1) the charges brought against him and whether his conviction or sentence has been declared invalid, or whether there are any charges pending arising out of the incident set forth in the Am. Compl.; and (2) whether the alleged defamatory statement was published to a third party; and it is further

**RECOMMENDED**, that plaintiff's Fourth Amendment excessive force and IIED claims against the individual defendants in their individual capacities proceed but that the summons and complaint not be issued and served until plaintiff has an opportunity to amend his complaint to cure the defects identified herein; and it is further

**RECOMMENDED**, that if the District Judge adopts this Report-Recommendation and Order, plaintiff be provided thirty (30) days from the date of any order adopting this Report-Recommendation and Order to file a second amended complaint limited to claims not otherwise dismissed with prejudice by this Court, [10] and should plaintiff decline to file a second amended complaint within that time, the Clerk return the case to the magistrate judge for service of the amended complaint with the unamended claims deemed stricken; and it is

[10]    Any second amended complaint must be a complete pleading and include all facts and claims not otherwise dismissed by the Court with prejudice. If accepted by the Court for filing, the second amended complaint will supersede and replace the amended complaint in its entirety; thus, the second amended complaint becomes the operative pleading and the amended complaint will no longer be considered. See *Dluhos v. Floating & Abandoned Vessel, Known as New York*, 162 F.3d 63, 68 (2d Cir. 1998) ("[I]t is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.") (citing *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ).

**\*8 ORDERED**, that plaintiff's Motion to Appoint Counsel (Dkt. No. 7) be **DENIED**, but the denial is without prejudice and with opportunity to renew such request in the future should plaintiff demonstrate a change in circumstances; and it is further

**ORDERED**, that if plaintiff files a second amended complaint within the time frame set forth herein, the Clerk of the Court is to return the case to the magistrate judge for review of the second amended complaint; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on plaintiff in accordance with Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v.

**Delaney v. City of Albany, Slip Copy (2019)**
Case 6:19-cv-00477-TJM-TWD    Document 5    Filed 06/04/19    Page 75 of 90
2019 WL 1486836

Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989) ); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72. [11]

[11] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed

to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).

**All Citations**

Slip Copy, 2019 WL 1486836

---

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 1922286
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Clarence DELANEY, Jr., Plaintiff,

v.

CITY OF ALBANY; Police Officer Brace, Detective
for the City of Albany/CIU; Police Officer
DiGiuseppe, Detective for the City of Albany/
CIU; Police Officer John Doe 1, Police Officer for
City of Albany; and Police Officer John Doe 2, 3, 4,
Police Officers for the City of Albany, Defendants.

1:18-CV-1193 (DNH/CFH)
|
Signed 04/30/2019

**Attorneys and Law Firms**

CLARENCE DELANEY, JR., Plaintiff pro se, 17-
A-0236, Fishkill Correctional Facility, P.O. Box 1245,
Beacon, NY 12508.

**DECISION and ORDER**

DAVID N. HURD, United States District Judge

**\*1** Pro se plaintiff Clarence Delaney, Jr. brought this civil
rights action pursuant to 42 U.S.C. § 1983. On April 4,
2019, the Honorable Christian F. Hummel, United States
Magistrate Judge, advised by Report-Recommendation
that some of plaintiff's claims be dismissed with prejudice,
some be dismissed without prejudice, some be permitted
to proceed, and that he be given an opportunity to file
a second amended complaint in accordance with the
directives outlined in the Report-Recommendation. No
objections to the Report-Recommendation have been
filed.

Based upon a careful review of the entire file and the
recommendations of the Magistrate Judge, the Report-
Recommendation is accepted in whole. See 28 U.S.C. §
636(b)(1).

Therefore, it is

ORDERED that

1. To the extent plaintiff seeks to bring claims against
defendants Det. Brace, Det. DiGiuseppe, and the John
Doe police officer defendants in their official capacities,
these claims are DISMISSED with prejudice;

2. Plaintiff's official misconduct claim is DISMISSED
with prejudice;

3. Plaintiff's false imprisonment, false arrest, and
defamation claims insofar as they are brought against
the individual defendants in their individual capacities
are DISMISSED without prejudice and with opportunity
to amend to specify (1) the charges brought against him
and whether his conviction or sentence has been declared
invalid, or whether there are any charges pending arising
out of the incident set forth in the amended complaint;
and (2) whether the alleged defamatory statement was
published to a third party;

4. Plaintiff's Fourth Amendment excessive force and IIED
claims against the individual defendants in their individual
capacities shall proceed but the summons and complaint
shall not be issued and served until plaintiff has an
opportunity to amend his complaint to cure the defects
identified;

5. Plaintiff is provided thirty (30) days from the date of this
Decision and Order to file a second amended complaint
limited to claims not otherwise dismissed with prejudice;

6. If plaintiff files a timely second amended complaint, it
be forwarded to the Magistrate Judge for review; and

7. If plaintiff fails to file a second amended complaint
within thirty (30) days of the date of this Decision and
Order, the Clerk return the case to the Magistrate Judge
for service of the amended complaint with the unamended
claims deemed stricken.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2019 WL 1922286

---

2014 WL 1338415
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kasaad DORSEY, Plaintiff,

v.

Detective John REGAN, and
Detective Ruecker, Defendants.

No. 6:14–CV–23.
|
Signed April 2, 2014.

**Attorneys and Law Firms**

Kasaad Dorsey, Marcy, NY, pro se.

#### DECISION and ORDER

THOMAS J. McAVOY, Senior District Judge.

**\*1** This *pro se* action, brought pursuant to 42 U.S.C. §
1983, was referred by this Court to the Hon. Christian F.
Hummel, United States Magistrate Judge, for a Report
and Recommendation pursuant to 28 U.S.C. § 636(b) and
Local Rule 72.3(c).

In his February 28, 2014, Report–Recommendation
and Order, Magistrate Judge Hummel recommends that
Plaintiff's claims for false arrest and false imprisonment
be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)
for failure to state a claim upon which relief may
be granted. Magistrate Judge Hummel recommends,
however, that the Court allow service of the Complaint
with respect to Plaintiff's allegations of excessive force
against the Defendants. No objections to the Report–
Recommendation and Order have been filed, and the time
to do so has expired.

After examining the record, this Court has determined
that the ReportRecommendation and Order is not subject
to attack for plain error or manifest injustice.

Accordingly, the Court ADOPTS the Report–
Recommendation and Order, dkt. # 10, for the reasons
stated therein. Therefore:

1. Plaintiff's claims for false arrest and false
imprisonment are hereby **DISMISSED;**

2. Plaintiff's claims alleging excessive force are accepted
for filing. Upon receipt from Plaintiff of the documents
required for service of process, the Clerk is directed
to issue summonses, together with copies of Dorsey's
complaint, and forward them to the United States
Marshal for service upon the Defendants. The Clerk is
also directed to forward a copy of the summons and
complaint in this action, by mail, to the corporation
counsel for the City of Albany, together with a copy
of the report and recommendation and any subsequent
order issued by this Court;

3. Plaintiff is advised that all pleadings, motions and
other documents related to this action must be filed with
the Clerk of the United States District Court, Northern
District of New York, Fifth Floor, James T. Foley
United States Courthouse, 445 Broadway, Room 509,
Albany New York 12207. Any documents sent by any
party to the Court or the Clerk must be accompanied
by a certificate showing that a true and correct copy
of that document was mailed to all opposing parties or
their counsel, and that Plaintiff must promptly notify
the clerk's office and all parties or counsel of any change
in this address. Failure to do so will result in dismissal
of this action; and

4. It is further **ORDERED** that a copy of this Decision
and Order be served on the parties in accordance with
the local rules.

IT IS SO ORDERED.

KASAAD DORSEY, Plaintiff,
v.

DETECTIVE JOHN REGAN, Badge # D204–2322, et
al., Defendants.

#### REPORT–RECOMMENDATION AND ORDER

CHRISTIAN F. HUMMEL, United States Magistrate
Judge.

The Clerk has sent to the Court a civil rights complaint
brought by *pro se* plaintiff Kasaad Dorsey ("Dorsey"),

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.                    1

pursuant to 42 U .S.C. § 1983. Compl. (Dkt. No. 2). Dorsey has not paid the filing fee and instead seeks permission to proceed with this matter *in forma pauperis* ("IFP"). Dkt. No. 6.

## I. DISCUSSION

### A. Application to Proceed IFP

**\*2** Dorsey has submitted an IFP Application. After reviewing the information provided therein, the Court finds that Dorsey may properly proceed with this matter IFP.

### B. Allegations Contained in the Complaint

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis,* "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action.

Dorsey brings this action pursuant to 42 U.S.C. § 1983. An action commenced pursuant to 42 U.S.C. § 1983 requires proof of the "deprivation of any right [ ], privilege[ ], or immunit[y] secured by the Constitution" or laws of the federal government. 42 U.S.C. § 1983; *see also German v. Fed. Home Loan Mortg. Corp.,* 885 F.Supp. 537, 573 (S.D.N.Y.1995) ("Section 1983 establishes a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States .") (quotations omitted).

Dorsey asserts that on October 1, 2013 at approximately 9:00 p.m., he was beaten and falsely arrested and imprisoned by defendants Detectives John Regan and Ruecker. Compl. at 2–3. Dorsey was in a Home Depot parking lot in Albany, New York, purchasing marijuana from a seller. Compl. at 3. When Dorsey returned to his vehicle, two black trucks approached, at which point

Dorsey and the seller began to run. *Id.* Dorsey states that while running, defendants tased him with a stun gun and hit him with an unmarked truck, causing him to fall to the ground. *Id.* When Dorsey was on the ground and handcuffed, defendant Regan punched Dorsey repeatedly in the face. *Id.* Dorsey asserts that the defendants' actions caused multiple injuries consisting of a swollen face, two black eyes, the removal of a taser prong, a chipped tooth, cuts to the inner lips, forehead, and right cheek bone, and lower back pain. *Id.* Dorsey was arrested for criminal sale of a controlled substance in the third degree. *Id.* at 5. Dorsey also asserts that he was indicted for assault in the second degree. *Id.* While unclear, it appears that Dorsey was convicted of one or both charges. *Id.* Dorsey seeks dismissal of the charge of assault in the second degree against him. *Id.* For a more complete statement of Dorsey's claims, reference is made to the complaint.

### i. False Arrest and Imprisonment

The Supreme Court has held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

**\*3** *Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Dorsey's claims regarding false arrest and imprisonment strike at the heart of the apparent conviction Dorsey received as a result of

the events in question. Moreover, Dorsey specifically requests the dismissal of a charge against him. Were Dorsey to succeed on any theory espoused above, he would necessarily call into question the validity of his underlying conviction and sentence. As such, all of these claims are barred because he has failed to show that a conviction or sentence has been overturned. *See Duamutef v. Morris,* 956 F.Supp. 1112, 1115–18 (S.D.N.Y.1997) (dismissing § 1983 claims of malicious prosecution, false arrest, perjury, retaliation, and civil rights conspiracy under *Heck* where the plaintiff's underlying conviction had not been overturned). Accordingly, such claims would be barred under *Heck* and dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) is recommended as Dorsey's complaint lacks an arguable basis in law.

### ii. Excessive Force

However, Dorsey's assertion that excessive force was used against him during his arrest would not be barred by *Heck*. Dorsey's complaint currently satisfies the plausibility standard outlined in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), which requires plaintiffs to "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citations omitted). Dorsey's contentions that (1) defendants both tased and hit him with a truck and (2) defendant Regan punched him repeatedly while he was handcuffed on the ground, all of which caused Dorsey to suffer multiple injuries, are sufficient to establish a plausible Fourth Amendment claim.

**WHEREFORE,** it is hereby

**ORDERED,** that Dorsey's Motion to Proceed *In Forma Pauperis* (Dkt. No. 6) is **GRANTED.** [1]

[1]    Plaintiff should note that although his *in Forma Pauperis* Application has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**RECOMMENDED,** that pursuant to the Court's review under 28 U.S .C. § 1915, Dorsey's claims of false arrest and false imprisonment be dismissed as barred by *Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); and it is further

**RECOMMENDED,** that the Court allow Dorsey's claims alleging excessive force in violation of the Fourth Amendment be accepted for filing and that, upon receipt from Dorsey of the documents required for service of process, the Clerk be directed to issue summonses, together with copies of Dorsey's complaint, and forward them to the United States Marshal for service upon the defendants, and that in addition the Clerk respectfully be directed to forward a copy of the summons and complaint in this action, by mail, to the corporation counsel for the City of Albany, together with a copy of this report and recommendation and any subsequent order issued by this Court; and it is further

**RECOMMENDED,** that Dorsey be advised that all pleadings, motions and other documents related to this action must be filed with the Clerk of the United States District Court, Northern District of New York, Fifth Floor, James T. Foley United States Courthouse, 445 Broadway, Room 509, Albany, New York 12207, and that any documents sent by any party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of that document was mailed to all opposing parties or their counsel, and that Dorsey must promptly notify the clerk's office and all parties or counsel of any change in this address, and that his failure to do so will result in dismissal of this action.

**\*4 NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within **FOURTEEN** days of service of this report. **FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is further **ORDERED** that a copy of this Report–Recommendation and Order be served on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: Feb. 28, 2014

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 1338415

2014 WL 1338415

---

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 2803468
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Rondula LANE, Plaintiff,

v.

Claire PAPADIMITRIOUS, Complainant; Kevin Beach, Chief of Rome Police Department; Jeffrey A. Race, Detective; James P. Boyer, Detective; Albert J. Ciccone, Patrolman; Patrick J. Marthage, Esq., First Assistant Public Defender; Barry M. Donalty, Acting Supreme Court Justice; and Laurie Lisi, Esq., Assistant District Attorney, Defendants.

No. 6:10–CV–647 (NAM/ATB).
|
July 14, 2010.

**Attorneys and Law Firms**

Rondula I. Lane, Rome, NY, pro se.

**MEMORANDUM–DECISION AND ORDER**

Hon. NORMAN A. MORDUE, Chief Judge.

**\*1** In this *pro se* action under 42 U.S.C. § 1983, filed June 2, 2010, plaintiff claims his rights were violated in connection with a criminal prosecution against him. United States Magistrate Judge Andrew T. Baxter has prepared a Report and Recommendation (Dkt. No. 6) granting plaintiff's motion (Dkt. No. 2) for leave to proceed *in forma pauperis* only for the purpose of filing the complaint, and recommending that this Court dismiss the complaint (Dkt. No. 1) pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), (iii). ("[T]he court shall dismiss the case at any time if the court determines that ... (B) the action ... (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.").

Plaintiff has submitted an objection to the Report and Recommendation (Dkt. No. 10). He does not appear to object to dismissal of the claims against defendants Barry M. Donalty, Acting Supreme Court Justice, and Laurie Lisi, Esq., Assistant District Attorney; in any event, they must be dismissed on grounds of judicial and prosecutorial

immunity. *See* 28 U.S.C. § 1915(e)(2)(B)(iii). Plaintiff objects to the recommended dismissal of the claims against the other defendants, and the Court reviews these matters *de novo. See* 28 U.S.C. § 636(b)(1)(C). Upon *de novo* review, the Court agrees with Magistrate Judge Baxter's conclusion that the claims against the other defendants fail to state a claim upon which relief may be granted and must be dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

In objecting to dismissal of his claims, plaintiff alleges that the state criminal trial underlying the instant section 1983 action "is now over" and that he was "found guilty of all the charges brought up against [him.]" [1] Thus, plaintiff's claims in the nature of perjury, slander, evidence-tampering, conspiracy to bring unfounded criminal charges against him, and false imprisonment necessarily implicate the validity of his conviction and are thus barred under *Heck v. Humphrey,* 512 U.S. 477, 486–87 (1994), until such time as the conviction may be vacated or otherwise invalidated. *See Channer v. Mitchell,* 43 F.3d 786, 787–88 (2d Cir.1994); *Jackson v. County of Nassau,* 2010 WL 335581, \*8 (E.D.N.Y.2010). Likewise, plaintiff's claim of ineffective assistance of his assigned trial counsel implicates the validity of his conviction and is barred by *Heck. See Evans v. Nassau County,* 184 F.Supp.2d 238, 243 (E.D.N.Y.2002). For these reasons as well, the complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

[1]     An internet search for plaintiff's name discloses that on June 17, 2010, an Oneida County jury found Rondula Lane guilty of all charges against him, including sexual abuse, burglary, and several counts of criminal sexual act. Sentencing is August 9, 2010. *See* http:// www.wktv.com/news/local/96570104.html.

It is therefore

ORDERED that the Report and Recommendation is accepted; and it is further

ORDERED that for the reasons set forth in the Report and Recommendation and in this Memorandum–Decision and Order, the complaint is dismissed.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 2803468

**End of Document**                                                  © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 4164377
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Royce CORLEY, Plaintiff,

v.

Cyrus R. VANCE, Jr., et al., Defendants.

No. 15 Civ. 1800(KPF).
|
Signed June 22, 2015.

### *ORDER TO AMEND*

KATHERINE POLK FAILLA, District Judge.

**\*1** Plaintiff, proceeding *pro se* and *in forma pauperis,* filed this action under 42 U.S.C. § 1983, alleging false arrest and other claims arising out of his arrest on state charges. He further seeks to proceed under a pseudonym in this matter. Plaintiff is directed to amend his complaint (the "Complaint") for the reasons set forth below. [1]

[1]    Plaintiff filed this complaint in the United States District Court for the Eastern District of New York; that court transferred the matter here. *See Corley v. Vance,* No. 15 Civ. 232 (E.D.N.Y. Mar. 6, 2015).

### STANDARD OF REVIEW

The Court must dismiss a complaint, or portion thereof, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir.2007). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009), and interpret them to raise the "strongest [claims] that they *suggest," Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474–75 (2d Cir.2006) (internal quotation marks and citations omitted) (emphasis in original).

### BACKGROUND

Plaintiff Royce Corley is currently incarcerated at F.C.I. Danbury, having been convicted in this District on federal charges involving sex trafficking of minors and possession of child pornography. *See United States v. Corley,* No. 13 Cr. 48(RPP) (S .D.N.Y. Apr. 21, 2014), *appeal pending,* No. 14–1709 (2d Cir.). [2] In January 2015, Plaintiff filed the Complaint, alleging constitutional violations and violations of the Electronic Communications Privacy Act ("ECPA"), the Stored Communications Act ("SCA"), the Right to Financial Privacy Act ("RFPA"), and the Driver's Privacy Protection Act ("DPPA"). Plaintiff also asserts state law claims over which he asks this Court to exercise diversity and supplemental jurisdiction. Named as defendants are: New York County District Attorney ("DA") Cyrus R. Vance, Jr., and DA's Office personnel David Stuart, John Temples, Greg Weiss, and Elizabeth Pederson; New York Police Department ("NYPD") officers Brian Conroy, Michael Daly, Mark Woods, Jessica Sterling, Giancarlo Cavallo, and Greg Smith; Mayor's Office of Special Enforcement ("OSE") counsel Shari C. Hyman; and various private individuals and entities, including Consolidated Edison ("Con Ed") employees Michael T. Haggerty and Walter Panchyn, Backpage.com, LLC, Sprint Nextel Corp., T–Mobile USA Inc., Facebook Inc., Google Inc., Time Warner Cable Inc. ("TWC"), Research in Motion Ltd. ("RIM"), the Municipal Credit Union ("MCU"), Capital One N.A., JP Morgan Chase Bank N.A., and several John Doe defendants.

[2]    On April 21, 2015, following the death of United States District Judge Robert P. Patterson, Jr., the criminal case was reassigned to United States District Judge Alison Nathan. Pending before her is Plaintiff's *pro se* motion for bail pending appeal.

The Complaint sets forth the following facts: In 2007, Plaintiff "was informally doing business under the nom de guerre 'Ron Iron' providing advertising and web development services to escort, therapeutic and adult-oriented businesses." (Compl.¶ 22). In 2008, Plaintiff began working as a technician for Con Ed. (*Id.* at ¶ 23). In 2009, an individual who had been convicted of promoting prostitution "vindictively" forwarded to law enforcement false information implicating Plaintiff in illegal activity. (*Id.* at ¶ 26). In consequence, law enforcement: (i) induced a minor to work as a confidential

informant and prostitute to manufacture evidence against Plaintiff; (ii) tampered with advertisements appearing on Backpage.com by "altering 'AdOid' posted by other individuals, or created by the defendants"; and (iii) used fabricated evidence to obtain court orders, subpoenas, and warrants. (*Id.* at ¶¶ 27–29, 39–41). Accordingly, "despite using a warrant, defendants had no probable cause" to obtain access to Plaintiff's accounts, search his apartment and Con Ed office, or seize his cell phones, electronic media, and credit cards. (*Id.* at ¶¶ 46–47).

**\*2** Plaintiff asserts that he "has not been provided with any court orders, subpoenas, warrants or notices in relation to any of these disclosures.[3] (Complaint ¶ 26). Backpage.com is alleged to have "aided and abetted" law enforcement "by granting them unlimited access to password-protected accounts without the proper legal authority," and the other private entity defendants are alleged to have provided law enforcement with Plaintiff's records, e-mails, and instant messages. (*Id.* at ¶¶ 24, 38, 60–62). Plaintiff was indicted in this Court on January 22, 2013. *See* No. 13 Cr. 48 (Dkt.# 1). The state charges were dismissed on February 1, 2013, which Plaintiff characterizes as a favorable termination. (*Id.* at ¶¶ 46). Plaintiff was convicted in this District on April 21, 2014.

[3]     Transcripts filed in Plaintiff's criminal case indicate that the New York County District Attorney's Office obtained Plaintiff's records pursuant to court orders and gave the material to federal prosecutors before the state charges were dismissed. *See United States v. Corley,* No. 13 Cr. 48 (S.D.N.Y. Feb. 28, 2013) (Transcript of Pretrial Conference, Dkt. # 5 at 3; Trial testimony, Dkt. # 43 at 29–32 and 44–45, Dkt. # 45 at 14).

Plaintiff asserts federal claims of false arrest, false imprisonment, malicious prosecution, unlawful search and seizure, malicious abuse of process, conspiracy to violate due process, fabrication of evidence, and violations of the rights to a speedy trial and to privacy, as well as state law claims of negligence, intentional infliction of emotional distress, and fraud. (Compl.¶¶ 72–84). Plaintiff alleges that the private defendants conspired with state actors to violate his constitutional rights and also failed to train their employees properly with respect to releasing customer information. Plaintiff further asserts that the private defendants violated federal statutes that limit disclosure of electronic records and communications. (*Id.* at ¶¶ 60–63). Plaintiff seeks money damages. Plaintiff has

also moved to proceed under a pseudonym, "[g]iven the highly sensitive and personal nature of this suit" involving "the prostitution of minors" and the "risk identification poses for retaliation and further personal embarrassment to Plaintiff and innocent nonparties." (Dkt. # 6 at ¶¶ 4–5).

## DISCUSSION

### A. Rule 8 of the Federal Rules of Civil Procedure
As an initial matter, Plaintiff's complaint does not comply with Rule 8 of the Federal Rules of Civil Procedure. Rule 8 requires a plaintiff to make "a short and plain statement of the claim showing that the pleader is entitled to relief." It is not enough for a complaint to state that the defendant unlawfully harmed the plaintiff. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A complaint must include "factual enhancement" of the plaintiff's legal claims; in other words, a complaint must include some background information about how the defendant harmed the plaintiff. *Id.* (citing *Twombly,* 550 U.S. at 557). The Supreme Court has held that this rule requires a plaintiff to plead a claim that is "plausible" in light of the facts alleged. *Twombly,* 550 U.S. at 570. "[T]o present a plausible claim at the pleading stage, the plaintiff need not show that [his or her] allegations ... are more likely than not true." *Anderson News, LLC v. Am. Media, Inc.,* 680 F.3d 162, 184 (2d Cir.2012). Instead, a complaint must include sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929).

**\*3** The Complaint is not a "short and plain" statement of his claims. Any amended complaint that Plaintiff files must include specific facts explaining what each defendant did or failed to do and how those actions violated his rights. Additionally, Plaintiff must address the substantive deficiencies set forth below.

### B. Section 1983 Claims Implicating the Invalidity of Plaintiff's Conviction
As pleaded, Plaintiff's speedy trial, false arrest, false imprisonment, and malicious prosecution claims are barred because his criminal proceedings were not terminated in his favor. *See Heck v. Humphrey,* 512 U.S.

477, 484–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In *Heck,* the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a Section 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 48687. Thus, the putative plaintiff's § 1983 claim must be evaluated on the following basis:

> [The Court] must consider whether a judgment in favor of plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the [Court] determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to suit.

*Id.* at 487; *see also Duamutef v. Morris,* 956 F.Supp. 1112, 1115–18 (S.D.N.Y.1997).

Plaintiff asserts that the dismissal of the state charges brought against him constitutes a favorable termination. However, Plaintiff was prosecuted federally for the same conduct, and later convicted. Where, as here, "the Federal and State actions are inextricably intertwined and substantially related to one another," the *Heck* rule applies to bar Section 1983 claims based on the dismissed state charges. *Bogle v. Melamed,* No. 09 Civ. 1017(RJD), 2012 WL 1117411, at *3 (E.D.N.Y. Mar.30, 2012) (quoting *Thompson v. Delvalle,* No. 07 Civ. 4691(BSJ), 2010 WL 2505638, at *3 (S.D.N.Y. June 21, 2010)); *cf. Thompson v. Grey,* No. 08 Civ. 4499(JBW), 2009 WL 2707397, at *3 (E.D.N.Y. Aug 26, 2009) (finding false arrest claim barred where second grand jury shown new

evidence from subsequent investigation of same crime scene indicted after first grand jury refused to indict); *Peros v. Castano,* No. 01 Civ. 4457(JG), 2002 WL 603042, at *4 (E.D.N.Y. Mar.22, 2002) (holding that termination is favorable to plaintiff if court's reasons for dismissing the criminal charges are not inconsistent with innocence of the accused, *citing Cantalino v. Danner,* 96 N.Y.2d 391, 395, 729 N.Y.S.2d 405, 754 N.E.2d 164 (2001)). In this case, Plaintiff was arrested on federal charges arising out of the same events and conduct underlying the state charges. In this context, the dismissal of the state charges is not a favorable termination. *Thompson,* 2010 WL 2505638, at *3.

**\*4** Given that there has not been a favorable termination, the Court now examines whether any of Plaintiff's Section 1983 claims might be able to proceed notwithstanding the conviction because they do not implicate the validity of that conviction. Plaintiff's Sixth Amendment speedy trial claim necessarily implicates the validity of his conviction. *See Montane v. Pettie,* No. 10 Civ. 4404, 2012 WL 1617713(ARR), at *3 (E.D.N.Y. May 8, 2012); *Davis v. New York,* No. 90 Civ. 6170(MBM), 2003 WL 1787151, at *1 (S.D.N.Y. Apr.2, 2003) (dismissing speedy trial claim where plaintiff could not show that his conviction had been invalidated); *see also Zarro v. Spitzer,* 274 F. App'x 31, 34 (2d Cir.2008) (summary order) (affirming *sua sponte* dismissal of claims raising questions about plaintiff's Sixth Amendment right to counsel because such claims implicate the validity of conviction). That claim is therefore dismissed.

Favorable termination is a prima facie element of a malicious prosecution claim. *See Heck,* 512 U.S. at 484–86. Accordingly, Plaintiff's malicious prosecution claim is dismissed.

Plaintiff may, however, be able to assert certain of his Fourth Amendment claims. In narrow circumstances, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. *Heck,* 512 U.S. at 487 n. 7. "Because of doctrines like independent source and inevitable discovery ... and especially harmless error, ... such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful." *Id.* (citing *Murray v. United States,* 487 U.S. 533, 539, 108 S.Ct. 2529, 101 L.Ed.2d 472

(1988); *Arizona v. Fulminante,* 499 U.S. 279, 307–08, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)).

To determine if a Section 1983 claim alleging an unlawful search would necessarily imply the invalidity of his conviction, the Court must "ascertain whether plaintiff could have been convicted even if the ... evidence [from the allegedly illegal search were] suppressed[.]" *Bibbins v. Nextel Comm., Inc.,* No. 08 Civ. 5075(CM), 2010 WL 4503120, at *4 (S.D.N.Y. Nov.19, 2010); *see also Zarro,* 274 F. App'x at 35–36 (reversing in part the district court's order dismissing plaintiff's claims on *Heck* grounds and holding that plaintiff's illegal search claims would not imply the invalidity of his conviction); *Bogle,* 2012 WL 1117411, at *3; *Jean–Laurent v. Hennessey,* No. 05 Civ. 1105(JFB), 2008 WL 3049875, at *8 (E.D.N.Y. Aug.1, 2008) ("*Heck* does not bar plaintiff's claim for ... unreasonable search and seizure"); *Powell v. Scanlon,* 390 F.Supp.2d 172 (D.Conn.2005) (claims for damages attributable to an allegedly unreasonable search would not necessarily imply the invalidity of a conviction, such as where the "conviction is obtained by independent evidence untainted by the wrongful arrest").

**\*5** Here, the factual record is insufficient to determine whether evidence obtained as a result of the allegedly unlawful arrest was essential to plaintiff's conviction. *See, e.g., Fifield v. Barrancotta,* 353 F. App'x 479, 481 (2d Cir.2009) (summary order) (remanding to the district court to determine the applicability of *Heck* to the appellant's Fourth Amendment claims).[4] However, in this context, "to prove compensatory damages, a § 1983 plaintiff must prove not only that a search was unlawful, but that it caused him actual, compensable injury, which does not encompass the 'injury' of being convicted and imprisoned (until his conviction has been overturned)." *Heck,* 512 U.S. at 487 n. 7 (citing *Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 308, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986)). Plaintiff does not allege that he suffered an actual, compensable injury beyond his conviction and imprisonment. At this early stage, however, Plaintiff's Fourth Amendment claims cannot be dismissed based on *Heck.*

[4] A review of the criminal docket reveals no litigation regarding the validity of warrants or subpoenas or the admissibility of evidence obtained pursuant to court orders.

## C. Other Constitutional Claims

Plaintiff also asserts that Defendants, several of whom are private actors, conspired to violate his constitutional rights. A plaintiff asserting constitutional violations under Section 1983 must allege a deprivation of federally protected rights by persons acting under color of state law. 42 U.S.C. § 1983; *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155–57, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). The Court may dismiss a complaint that fails to allege *state* action. *DeMatteis v. Eastman Kodak Co.,* 511 F.2d 306, 311 (2d Cir.) (affirming dismissal of complaint where plaintiff failed to include allegations of state action in complaint), *modified on other grounds,* 520 F.2d 409 (2d Cir.1975). In addition, to obtain damages, Plaintiff must allege facts showing each Defendant's personal involvement in violating his constitutional rights. *See Patterson v. County of Oneida,* 375 F.3d 206, 229 (2d Cir.2004) ("[A] plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity under § 1983.").

To state a Section 1983 conspiracy claim, a plaintiff must allege facts showing (i) an agreement between two or more state actors or between a state actor and a private entity (ii) to act in concert to inflict an unconstitutional injury, and (iii) an overt act done in furtherance of that goal causing damages. *See Ciambriello v. County of Nassau,* 292 F.3d 307, 324–25 (2d Cir.2002) ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."); *see also Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993) ("A private individual may be subject to liability under [Section 1983] if he or she willfully collaborated with an official state actor in the deprivation of the federal right ."); *Deskovic v. City of Peekskill,* 894 F.Supp.2d 443, 465 (S.D.N.Y.2012).

**\*6** Conspiracy claims are "so easily made and can precipitate such protracted proceedings with such disruption of governmental functions" that detailed fact pleading is required. *Bender v. City of New York,* No. 09 Civ. 3286(BSJ), 2011 WL 4344203, at *1 (S.D.N.Y. Sept.14, 2011) (quoting *Angola v. Civiletti,* 666 F.2d 1, 4 (2d Cir.1981)). "Assertions lacking factual foundation ... are merely conclusory allegations and are insufficient to state a claim." *See Jackson v. County of Rockland,* 450 F. App'x 15, 19 (2d Cir.2011) (summary order) (quoting *Kirch v. Liberty Media Corp.,* 449 F.3d 388, 398 (2d Cir.2006)); *Gallop v. Cheney,* 642 F.3d 364, 369 (2d

Cir.2011) (finding that plaintiff's allegations of conspiracy were "baseless" where plaintiff "offer[ed] not a single fact to corroborate her allegation of a 'meeting of the minds' among the coconspirators."); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir.1997) (dismissing complaint in part because claims were "unsupported, speculative, and conclusory" (internal quotation marks omitted)).

Plaintiff wholly fails to allege specific facts that would plausibly show the existence of an agreement or concerted action among the named Defendants. The Complaint does not describe either the nature of the purported agreement or the specific acts in which Defendants allegedly engaged in furtherance of an agreement. *See Martinez v. Queens Cty. Dist. Atty.*, No. 12 Civ. 6262(RRM), 2014 WL 1011054, at *15 (E.D.N.Y. Mar.17, 2014) (dismissing Section 1983 conspiracy claims against Verizon N.Y. and T–Mobile). Indeed, Plaintiff's allegations against private defendants consist primarily of conclusory accusations that they provided law enforcement with records in response to allegedly invalid court orders, subpoenas, or warrants, or that they illegally ("without proper legal authority") provided access to his account information.

Mere compliance with court orders does not constitute action under color of state law. *See, e.g., Martinez*, 2014 WL 1011054, at *15 ("Plaintiff's bald assertions that there was a conspiracy between state actors and Verizon N.Y. and T–Mobile to illegally wiretap him, without more, are insufficient to plausibly allege that these private defendants were acting under the color of state law."); *Barroga–Hayes v. Susan D. Settenbrino, P.C.*, No. 10 Civ. 5298(RJD), 2012 WL 1118194, at *8 (E.D.N.Y. Mar.30, 2012) (noting that *pro se* plaintiff "suggests erroneously that the issuance of and compliance with" a subpoena transforms private defendants into state actors); *Melnitzky v. HSBC Bank USA*, No. 06 Civ. 13526(JGK), 2007 WL 1159639, at *9 (S.D.N.Y. Apr.18, 2007). Moreover, there are no allegations suggesting that the private defendants knew the subpoenas or other court orders were invalid or had reason to question their validity. *Cf. Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) ("A search warrant that has been issued by a neutral magistrate is presumptively valid."). Accordingly, these allegations do not state a claim for relief.

**\*7** Additionally, Plaintiff's allegations that the private defendants failed to train their employees properly

regarding the release of customer records do not state a claim. As just discussed, Plaintiff alleges no facts suggesting the private defendants had reason to question the legality of the court orders under which Plaintiff's information was released. In any event, failure to train is a theory of municipal liability under Section 1983, not of private liability; a "municipality can be liable for failing to train its employees where it acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir.2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 387–90, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). There is no analogous failure-to-train theory that would apply to the private defendants and, in any event, Plaintiff has failed to allege facts showing that the private Defendants violated his constitutional rights by releasing his data.

### D. Statutory Claims

Plaintiff asserts claims for civil damages under federal statutes governing access to wire, oral, and electronic communications. But the cited statutes contain defenses for releasing records pursuant to a court order and/or explicitly provide that such releases do not state a cause of action. The Federal Wiretap Act, 18 U.S.C. § 2520, contains an exception for service providers that assist law enforcement pursuant to a court order, *id.* § 2511(2)(a)(ii), and also provides that a good faith reliance on a court order is a complete defense to civil or criminal charges, *id.* § 2520(d)(1). Both the DPPA, 18 U.S.C. § 2721(b)(1), and the RFPA, 12 U.S.C. § 3402, contain law enforcement exceptions, and the ECPA, 18 U.S.C. § 2703(c)(1), provides that a governmental entity seeking information from a service provider must comply with specific legal process or obtain the subscriber's consent.

Plaintiff alleges not that the private Defendants turned material over without a warrant or subpoena, but that they did so in response to allegedly invalid court orders. However, Plaintiff fails to provide any facts suggesting that the private Defendants either violated the cited statutes or would not be protected under the statutory defenses. Without supporting facts, these allegations do not state a claim for relief.

### E. State Law Claims

2015 WL 4164377

Plaintiff purports to assert state law claims under both the Court's diversity jurisdiction, 28 U.S.C. § 1332, and its supplemental jurisdiction, 28 U.S.C. § 1367. To establish diversity jurisdiction under Section 1332, the plaintiff must allege to a "reasonable probability," that the claim is in excess of the sum or value of $75,000—the statutory jurisdictional amount. *See Colavito v. N. Y. Organ Donor Network, Inc.,* 438 F.3d 214, 221 (2d Cir.2006). Moreover, diversity of citizenship must be complete; in other words, "no plaintiff and no defendant [may be] citizens of the same State." *Wis. Dep't of Corr. v. Schacht,* 524 U.S. 381, 388, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998).

**\*8** For purposes of determining the Court's diversity of citizenship subject matter jurisdiction, a prisoner retains his pre-incarceration domicile, rather than establishing a new domicile where he is incarcerated. *See LoCurto v. LoCurto,* No. 07 Civ. 8238(NRB), 2008 WL 4410091, at \*5 (S.D.N.Y. Sept.25, 2008); *Poucher v. Intercounty Appliance Corp.,* 336 F.Supp.2d 251, 253 (E.D.N.Y.2004); *Waste Recovery Corp. v. Mahler,* 566 F.Supp. 1466, 1468 (S.D.N.Y.1983). *But see Housand v. Heiman,* 594 F.2d 923, 926 n. 5 (2d Cir.1979) (*per curiam* ) (noting prisoner is allowed an opportunity to show that he has satisfied the prerequisites for establishing domicile in his place of incarceration).

Plaintiff is currently incarcerated in Connecticut, but it is not clear where Plaintiff was domiciled before his incarceration or that he intended to change his domicile. All Defendants appear to be citizens of New York. If Plaintiff was domiciled in New York before his incarceration, and he has not manifested an intention to change his domicile, diversity is lacking in this case.

The Court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see Martinez v. Simonetti,* 202 F.3d 625, 636 (2d Cir.2000) (directing dismissal of supplemental state-law claims where no federal claims remained). Plaintiff's original pleading fails to state federal claims against the private Defendants. Should Plaintiff's amended complaint fail to remedy the deficiencies discussed in this Order, the Court may decline to exercise its supplemental jurisdiction over any state law claims against the private Defendants and dismiss them from the action entirely.

### F. Motion to Proceed Pseudonymously

Rule 10(a) of the Federal Rules of Civil Procedure provides that "[t]he title of [a] complaint must name all the parties[.]" "This requirement ... serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 188–89 (2d Cir.2008). The use of a pseudonym by a plaintiff in civil litigation "must be balanced against both the public interest in disclosure and any prejudice to the defendant." *Id.* at 189. When determining whether a litigant can proceed under a pseudonym, the following nonexhaustive list of factors should be considered:

> [i] whether the litigation involves matters that are highly sensitive and [of a] personal nature[;][ii] whether identification poses a risk of retaliatory physical or mental harm to the ... party [seeking to proceed anonymously] or even more critically, to innocent nonparties[;] [iii] whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity[;][iv] whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age[;][v] whether the suit is challenging the actions of the government or that of private parties[;][vi] whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court[;][vii] whether the plaintiff's identity has thus far been kept confidential[;] [viii] whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose

his identity[;][ix] whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities[;] and [x] whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

**\*9** *Id.* at 190 (internal citations and quotation marks omitted (alterations in original). "[T]his factor-driven balancing inquiry requires a district court to exercise its discretion in the course of weighing competing interests[.]" *Id.*

Plaintiff's conviction is a matter of public record. While arguments may be made as to some of the factors mentioned above, figuratively speaking, the cat is already out of the bag. Moreover, Plaintiff asserts in the Complaint that government officials and entities violated his rights and contributed to an unjust conviction and a miscarriage of justice. Such allegations are a matter of public concern. Accordingly, the Court concludes that the circumstances here are not sufficiently extraordinary to outweigh the presumption in favor of public access. Therefore, Plaintiff's motion is denied, and the Clerk of Court is directed to terminate docket entry 6. [5]

[5]  On May 19, 2015, before the Court ruled on Plaintiff's motion to proceed under a pseudonym, Plaintiff submitted a "complaint supplement" containing personal data. (Dkt.# 13). The Clerk of Court docketed that document as "court view only." The Court will either consider restricting access to individual documents or revisit this issue as needed.

### G. Leave to Amend

Plaintiff is granted leave to amend the Complaint to detail his claims. In the statement of claim, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant named in the amended complaint. The naming of John Doe defendants does *not* toll the three-year statute of limitations period governing this action and Plaintiff shall

be responsible for ascertaining the true identity of any "John Doe" defendants and amending his complaint to include the identity of any "John Doe" defendants before the statute of limitations period expires. Should Plaintiff seek to add a new claim or party after the statute of limitations period has expired, he must meet the requirements of Rule 15(c) of the Federal Rules of Civil Procedure. Plaintiff's amended complaint will completely replace, not supplement, the Complaint; therefore, any facts or claims that Plaintiff wishes to maintain must be included in the amended complaint.

### CONCLUSION

The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket. The motion to proceed under a pseudonym is denied without prejudice, and the Clerk of Court is directed to terminate docket entry 6. Plaintiff is directed to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within 60 days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 15–CV–1800 (KPF). An Amended Complaint for Civil Rights is attached to this order for Plaintiff's convenience. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

**\*10** SO ORDERED.

### All Citations

Not Reported in F.Supp.3d, 2015 WL 4164377

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

**End of Document**                                      © 2019 Thomson Reuters. No claim to original U.S. Government Works.